UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.: 3:22-cv-174

VANESSA TREMINIO,

       Plaintiff,

vs.

CROWLEY MARITIME CORPORATION,
and JUAN EMILIO BLANCO,

       Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff VANESSA TREMINIO, by and through her undersigned counsel, and hereby files this Complaint for damages and Demand for Jury Trial against Defendants CROWLEY MARITIME CORPORATION and JUAN EMILIO BLANCO.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action asserts violations of 18 U.S.C. § 1591, *et seq.*, and therefore raises federal questions regarding the deprivation of Plaintiff's rights. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

2.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because a substantial part of the events or omissions giving rise to this action occurred in this district.

## PARTIES

3.     Plaintiff Vanessa Treminio is a former employee of Crowley Maritime Corporation and a citizen and resident of the country of El Salvador.

4.     Defendant Crowley Maritime Corporation is a Delaware corporation with a principal place of business located in Jacksonville, Florida.

5.     Defendant Juan Emilio Blanco is a former employee of Crowley Maritime Corporation and, upon information and belief, a citizen and resident of the country of El Salvador.

## FACTUAL ALLEGATIONS

### I.     Mrs. Treminio Joins Crowley Maritime Corporation

6.     Mrs. Treminio began working for Crowley in March of 2012, when she was 21 years old. Mrs. Treminio was hired by Crowley Shared Services, S.A., a wholly owned subsidiary of Crowley Maritime Corporation.[1]

7.     Crowley maintains a large presence in El Salvador where it employs hundreds of workers through wholly owned subsidiaries.

---

[1] https://www.sec.gov/Archives/edgar/data/1130194/000095012307003017/y30961exv21.htm

8.     Due to her talents, experience, and her ability to speak both English and Spanish, Mrs. Treminio initially was hired by Crowley as a "credit and collections coordinator." Her daily tasks included sending billing statements to Crowley customers in the United States and interfacing with those clients regarding payments and reconciliations for transportation services provided by Crowley.

9.     After approximately 2.5 years with Crowley, due to superior performance, Mrs. Treminio received her first promotion and subsequently began handling top Crowley customer accounts, such as those of General Motors, Toyota, and Chiquita. In this role, Mrs. Treminio was responsible for alerting these companies of when they were reaching their credit limits, and delivering notifications of when the clients' bills for transportation services were becoming due.

## II.   Mrs. Treminio Travels to Miami and Is Later Promoted to the Inland Department

10.    In 2015, Crowley sent Mrs. Treminio on her first international business travel assignment. Crowley flew Mrs. Treminio from her home in El Salvador to Miami, Florida where she spent 3 weeks working on a project to integrate a new business unit Crowley had acquired in South Florida.

11.    In 2017 Mrs. Treminio received another promotion and was transferred to Crowley's "Inland Department" where she became a member of a team of

3

approximately 15 Crowley employees. Her direct supervisor at the Inland Department was Defendant Juan Emilio Blanco.

12. As soon as Mrs. Treminio began working for Juan Emilio Blanco, Blanco began subjecting her to a pattern of workplace sexual terror. Mr. Blanco's sexual harassment and sexual abuse of Mrs. Treminio and others within the Crowley offices were severe and pervasive, and his outrageous conduct fostered a hostile, abusive, and offensive work environment.

**III.   Crowley Knew Juan Emilio Blanco Was a Sexual Predator**

13. Most troublingly, Crowley was well aware of Mr. Blanco's abhorrent workplace behavior even before assigning Mrs. Treminio to his team. It was well known by all Inland Department team members, as well as by members of Crowley HR and other senior leaders at Crowley, that Mr. Blanco had been transferred to the Inland Department after several subordinates from his former department filed claims against him for workplace sexual harassment and sexual assault. However, because Mr. Blanco was a "star performer," and because of his ability to drive profits for Crowley, Crowley simply transferred Blanco to a new team instead of terminating his employment.

14. Mr. Blanco used a group chat on the WhatsApp messenger service to communicate with his subordinates in the Inland Department, including Mrs. Treminio. In this Crowley group chat, Mr. Blanco unleashed a staggering number of

sexually inappropriate comments. To mention only one example, on a Friday, as the Inland Department team was preparing for the weekend, Mr. Blanco directed disgusting homophobic remarks to a male member of the team named "Juan." Mr. Blanco believed that Juan was "gay," and wrote to the team, "*Juan, it's Friday, tonight you can go suck some dicks and look for those she-males that you like.*"

IV.   **Mrs. Treminio is Notified By Crowley that She Will Be Required to Travel to Jacksonville, Florida on a Business Trip with Juan Emilio Blanco, Her Supervisor**

15.   In mid-October of 2017 Crowley notified Mrs. Treminio that she would be required to travel to Crowley corporate headquarters in Jacksonville, Florida on a business trip. She was told by Crowley that she would be accompanying her supervisor, Juan Emilio Blanco, and one other female Crowley employee on the trip. Mrs. Treminio was told that she would receive an email from Crowley's corporate travel department with her travel itinerary within the next few days.

16.   On October 24, 2017 Mrs. Treminio received her travel itinerary for the trip to Jacksonville from Crowley Travel Services. The itinerary stated Mrs. Treminio was scheduled to depart El Salvador on November 5, 2017 and return to El Salvador on November 10, 2017.

**V.**   **Juan Emilio Blanco Sexually Assaults Mrs. Treminio In the Crowley Office**

17.     After Mrs. Treminio was told that she would be required to travel to Jacksonville with Mr. Blanco, but before she departed on the trip, Mr. Blanco sexually assaulted Mrs. Treminio in the Crowley offices.

18.     On the day she was sexually assaulted by Mr. Blanco, Mrs. Treminio left her desk and went downstairs and outside to smoke a cigarette. When she finished, she returned inside the building and walked into the elevator with Mr. Blanco, who was coming back to the office after his lunch break. The only occupants of the elevator were Mrs. Treminio and Mr. Blanco.

19.     Mrs. Treminio had recently achieved significant success in collecting bills from clients, and inside the elevator Mr. Blanco congratulated her professional success, but in a completely disgusting manner. Mr. Blanco said, "*Vanessa, I saw you billed over $25,000! You deserve the 'Vitamin-D*." When Mrs. Treminio asked Mr. Blanco what he meant by "Vitamin-D," he responded "*You know, the vitamin of my dick.*"

20.     As he made these disgusting remarks to Mrs. Treminio, Mr. Blanco reached out, grabbed one of her breasts, and then shook her breast up and down as if he were shaking someone's hand. Mrs. Treminio jumped away from Blanco and said "*Do you think I'm some kind of whore? You can't do that to me.*" Mr. Blanco simply laughed at her in response.

**VI.**   **Mrs. Treminio Immediately Reports the Sexual Assault to Crowley HR Manager Jaqueline Najera**

21.     After being sexually assaulted in Crowley's elevator by Mr. Blanco, Mrs. Treminio was furious and afraid. She went directly from the elevator to the Human Resources office and told Jaqueline Najera, the Crowley Human Resources manager, that she wanted to make a formal HR claim against Juan Blanco. Mrs. Treminio even lowered her shirt and showed Jaqueline Najera the visible impressions of Mr. Blanco's fingers, still imprinted upon her breast.

22.     Instead of expressing outrage that a Crowley supervisor had sexually assaulted a young woman in the Crowley office, and instead of helping Mrs. Treminio file an HR complaint, Najera began intimidating Mrs. Treminio and gaslighting her.

23.     First, Jaqueline told Mrs. Treminio that the cameras in the elevator did not actually work, and therefore "*it will be your word against his.*" When Mrs. Treminio told Jaqueline that she still wanted to file the HR complaint, Jaqueline responded by saying, "*Vanessa, you have to understand that we live in a 'Latin culture,' and so if you file a HR complaint, the people higher up at Crowley headquarters who review your complaint will not believe you, and they will think that you must have done something that provoked him.*"

24.     When Mrs. Treminio was not dissuaded from filing a complaint by this intentional gaslighting from the HR manager, Jaqueline then began to threaten Mrs.

Treminio. Jaqueline warned Mrs. Treminio that she "*needed to be careful*," because Crowley senior leadership in the United States "*loved*" Juan Emilio Blanco.

25.     Then, in no uncertain terms, Jaqueline Najera explicitly threatened retaliation if Mrs. Treminio continued to talk about being sexually assaulted by Mr. Blanco. Jaqueline said, "*Vanessa, you need to remember that you are a single mom, and you need to think about your son. Do you want him to know mommy for her successful career, or for getting fired for talking about a sexual situation that cannot be proven?*"

26.     Mrs. Treminio was shaken, confused, and terrified by her interactions with Crowley HR Manager Jaqueline Najera. But Mrs. Treminio then told Najera that did not feel safe traveling to Jacksonville, Florida with Mr. Blanco, and asked Najera to at least make an accommodation for her safety and replace her on the trip with someone else.

27.     Mrs. Najera told Mrs. Treminio that, despite the sexual assault, she was still required to go on the trip to Jacksonville with Mr. Blanco, and that her only other options were to go on the trip to Jacksonville or be fired.

28.     Mrs. Treminio backed down, and left the HR office in order to return to her own office on the 5th floor. When Mrs. Treminio arrived at her work station, she was shocked to find Juan Emilio Blanco sitting on her desk. Crowley HR had

8

already alerted Mr. Blanco about the sexual assault allegation, and Blanco was now stalking Mrs. Treminio.

29.    As Mrs. Treminio approached her desk, Mr. Blanco began to interrogate her and mock her. "*Vanessa, what did you gain by getting HR involved?*" he asked her. Mr. Blanco was relaxed and laughing at Mrs. Treminio. "*Remember, Vanessa,*" Blanco threatened, "*you're a single mom. When your kid goes hungry, remember that. You better cooperate, or you will get fired in a snap.*" Finally, Mr. Blanco told Mrs. Treminio that he was not someone she wanted for an "*enemy,*" and he then continued laughing as he turned and walked away from Mrs. Treminio's desk.

## VII.    Crowley Forces Mrs. Treminio to Accompany Juan Emilio Blanco on a Business Trip to Jacksonville, Florida Despite Her Protestations That She Did Not Feel Safe

30.    After Mr. Blanco sexually assaulted Mrs. Treminio in the elevator, there were still several days remaining before she was scheduled to leave on the business trip to Jacksonville. Mrs. Treminio remained terrified of the prospect of traveling overseas with her abuser, a man she had already reported to HR for sexually assaulting her in the Crowley offices. In a desperate attempt to avoid the trip, Mrs. Treminio again pleaded with Jaqueline Najera and the Crowley HR department. She again told Najera that she did not feel safe traveling with Mr. Blanco because he had already sexually harassed and assaulted her.

31.     The response of the HR manager was cold. The HR manager told Mrs. Treminio that she was required to travel according to Crowley's needs, and that refusing to make the trip with Mr. Blanco would be a violation of her employment contract with Crowley. When Mrs. Treminio responded that safety was Crowley's "number one core value," and reiterated that she did not feel safe going on the trip with Blanco, the Crowley HR manager then responded with a merciless and dangerous threat. The HR manager made it clear that there would be no discussion, and again told Mrs. Treminio she had 2 options: 1) go on the trip to Crowley headquarters in Jacksonville, Florida with Mr. Blanco; or 2) have her employment with Crowley terminated.

32.     Mrs. Treminio could not afford to lose her job and was forced to comply. Despite the known threat and danger of traveling with Mr. Blanco, Crowley threw Mrs. Treminio to the lions and forced her to accompany her supervisor, who had already sexually harassed and assaulted her, on the trip to Jacksonville.

## VIII.   Mr. Blanco Rapes Mrs. Treminio at their Hotel in Jacksonville, Florida

33.     Mrs. Treminio left El Salvador and arrived in Jacksonville, Florida on Sunday November 5, 2017, on United Airlines flight UA2101. In Jacksonville Mrs. Treminio was directed by Crowley to stay in the same hotel as Mr. Blanco. Blanco paid for all the hotel rooms—including Mrs. Treminio's—using his Crowley

corporate credit card. The hotel was the "Courtyard by Marriott Jacksonville I-295/East Beltway," located at 9815 Lantern St., Jacksonville, FL 32225.

34.     Thursday November 9, 2017 was the final night of the business trip. That evening after dinner, Mrs. Treminio returned to her hotel room alone to pack, relax, and then get a good night's sleep. After watching television alone in her room, Mrs. Treminio turned off the lights and went to sleep. She had not consumed any alcohol that night and was completely sober.

35.     Mr. Blanco's final night in Jacksonville was very different. He went out drinking with other Crowley employees, including Jose Lopez, his friend and supervisor, who worked out of Crowley's corporate headquarters in Jacksonville. These Crowley employees stayed out late, and Juan Blanco returned to the hotel intoxicated. Upon his arrival, Mr. Blanco went to the hotel's front desk and told the hotel staff that he had lost the access card to his room. When the staff asked for his room number, Blanco told them Mrs. Treminio's room number instead of his own. When asked for proof that it was his room, Blanco showed the hotel staff the Crowley corporate credit card he had used to pay for the room. The hotel staff then gave Mr. Blanco an access card to Mrs. Treminio's hotel room.

36.     Mr. Blanco proceeded to Mrs. Treminio's hotel room and used the access card to gain entry. As Blanco entered the darkened room, Mrs. Treminio was asleep on her stomach in her bed. The first thing she remembers is being awoken by

the feeling of someone on top of her, and then realizing that her vagina was being roughly penetrated. When she looked up, she saw that Mr. Blanco on top of her, violently raping her.

37.    Juan Emilio Blanco forcibly raped Mrs. Treminio.  She screamed out in pain for Mr. Blanco to stop and get off of her. She tried to use her right hand to move Blanco off of her, and tried to move her body away, but he forcefully pinned her to the bed with the weight of his body and with his arms, preventing her from escaping.

38.    Mr. Blanco told Mrs. Treminio to stop screaming and then pressed his hand over her mouth to silence her as he continued to forcibly rape her. As tears streamed down Mrs. Treminio's face, she bit Mr. Blanco's hand as hard as she could, causing him to scream in pain and momentarily remove his hand from her mouth. Mrs. Treminio was begging and pleading for Blanco to stop. She told him that she was a mother, she reminded him that he also had a child, and she told him that he was hurting her.

39.    Suddenly, Mr. Blanco jumped off of Mrs. Treminio and began apologizing. "*I'm sorry, I'm sorry, I got confused, please, my friend I'm so sorry,*" he said to her. Mr. Blanco then quickly put on his underwear and pants, and continued apologizing to her, calling her his friend, and telling her that he was confused. After he finished dressing, he dashed out of her room.

**IX.** **Mrs. Treminio Goes to Crowley's Corporate Headquarters to Report the Rape And Is Threatened to Remain Silent About the Assault By Crowley Managers**

40.     The morning after being raped, which was Friday November 10, 2017, Mrs. Treminio left the hotel and went directly to Crowley's corporate headquarters in Jacksonville to report the attack. It had only been a matter of hours since the rape. Mrs. Treminio was distraught and in tears, and she asked to have her manager and a Crowley HR representative in the room for the meeting. In the meeting were Jose Lopez, a senior Crowley manager, and a female Crowley employee.

41.     The first time Mrs. Treminio reported to Crowley that Mr. Blanco had sexually assaulted her in the elevator, Crowley HR had not taken her seriously, had used gaslighting tactics against her, and threatened to fire her if she did not remain silent about the attack. But Mrs. Treminio naively believed that this time, inside of Crowley's corporate headquarters in Jacksonville, Florida, she would be taken seriously and the company would be on her side. Sadly, she was wrong.

42.     In the meeting, while struggling through tears and breaking down sobbing, Mrs. Treminio informed Jose Lopez and the female Crowley employee who was present that Juan Emilio Blanco had broken into her hotel room and raped her the previous evening. After listening to her story, Jose Lopez, who had been out drinking with Blanco the night of the rape, began to gaslight Mrs. Treminio by saying, "*Oh Vanessa, it's really not a big deal. You should thank Juan for noticing*

*a woman like you. It's not like you were a virgin girl. You already have a kid, you know*?" As Mrs. Treminio squirmed in shock, Lopez continued to ridicule her with unbelievable and offensive analogies, such as comparing Mrs. Treminio to a "*used car*," because she already had a child, and saying that it wasn't as if she was a "*new car*." Jose Lopez and the female Crowley HR manager both also told Mrs. Treminio that no one was ever going to believe her story.

43.    Per Crowley's worldwide HR playbook, after thoroughly gaslighting her, the two senior Crowley employees then began directing threats and intimidation at Mrs. Treminio. Lopez warned Mrs. Treminio that she should "*shut up*" about being raped if she wanted to keep her job. Lopez threatened that if she ever told anyone else in the company about being raped, or if she talked about the attack publicly, she would be fired for spreading false rumors about a Crowley manager designed to damage the company's reputation.

**X.    Crowley and Jose Lopez Obstructed Mrs. Treminio in Reporting the Rape to Law Enforcement, Failed to Report the Rape to Law Enforcement, And Assisted Juan Emilio Blanco in Fleeing from the United States Following His Rape of Mrs. Treminio**

44.    Mrs. Treminio left Crowley headquarters in tears, completely distraught, and terrified. She was raped on Thursday night, she reported the rape in a meeting at Crowley headquarters in Jacksonville, Florida on Friday morning, and late on Friday afternoon Mrs. Treminio was scheduled to board United Airlines flight UA1979 for her flight back to El Salvador. Mrs. Treminio wanted to report the

rape to the police, but without the support of her employer, reporting the crime to law enforcement in Jacksonville seemed impossible and dangerous.

45.     Mrs. Treminio was alone in a foreign country. She had already been threatened to stay silent about the attack inside Crowley's headquarters, she had no place to stay, knew no one who could help her, and did not have money to support herself in Jacksonville and did not have the money to buy her own return ticket to El Salvador. So, on the afternoon of Friday November 10, 2017, less than 24 hours after being violently raped by Juan Emilio Blanco, Mrs. Treminio was forced to board her return flight to El Salvador.

46.     With the help of Jose Lopez and Crowley, Juan Emilio Blanco also departed on a flight from Jacksonville on the afternoon of Friday November 10, 2017 and returned to El Salvador. Crowley never reported the rape to law enforcement.

## XI.   Less Than 72 Hours After Being Raped, Crowley Forced Mrs. Treminio to Fly to Puerto Rico on Another Business Trip

47.     On Monday November 13, 2017, less than 72 hours after she was raped on a Crowley business trip by her supervisor, Crowley again forced Mrs. Treminio into an international business trip. This time she was required to fly to Crowley's offices in Puerto Rico to assist with Crowley's disaster recovery efforts following the devastation caused by hurricanes Maria and Irma in September 2017. Crowley had been awarded contracts for the relief effort by the U.S. Federal Emergency

Management Agency in excess of $100 million, and Mrs. Treminio was sent to help fulfill Crowley's contracts with the U.S. government.

48.     Despite reporting the rape at Crowley headquarters in Jacksonville on the morning after the assault, Crowley never offered Mrs. Treminio any kind of medical assistance for her trauma. Instead, Crowley insisted that she keep her feelings bottled up inside and carry on working and traveling in the aftermath of a violent rape by a Crowley manager.

49.     As she prepared to depart El Salvador, Mrs. Treminio's father drove her to the airport for her flight to Puerto Rico, less than 72 hours after being raped in Jacksonville. Mrs. Treminio will never forget that car ride. She cried all the way to the airport, but she could not bring herself to tell her father the true reason why she was crying. When they arrived at the airport, Mrs. Treminio was still crying as her father took her baggage out of the car. When her father embraced her in an innocent, tender hug, Mrs. Treminio was overcome with a feeling of disgust. It was a feeling of overwhelming disgust that she had never felt in her life.

50.     Her father believed that she was crying because she was leaving her young son behind during her extended business trip. While hugging his daughter, her father candidly said, "*baby, please stop crying. Your son will be OK with us.*" Mrs. Treminio desperately wanted to tell her father the real reason she was crying, but when she tried to speak, she began to experience all of the physical sensations

and emotions associated with the original trauma. She was forced to hold the terrible truth of what happened in Jacksonville inside of herself, unable to tell even her own father.

## XII.   <u>Mrs. Treminio Tells Her Supervisor in Puerto Rico About the Rape</u>

51.     In Puerto Rico, Mrs. Treminio began working to support Crowley's hurricane relief efforts for the U.S. government. Her boss was Ms. Ayesha Diaz, the General Manager. Mrs. Treminio and Ms. Diaz had previously worked together, and Ms. Diaz immediately knew that something was negatively affecting Mrs. Treminio.

52.     Ms. Diaz told Mrs. Treminio that she had seen her frequently breaking down in tears, and she had noticed that Mrs. Treminio seemed very afraid of the male employees in the office, especially male managers. When asked what was wrong, Mrs. Treminio broke down crying and told Ayesha Diaz that she was raped by Juan Emilio Blanco in Jacksonville. She told Ms. Diaz about the rape, and also told her how she had been mocked, gaslit, silenced, and threatened inside Crowley's headquarters while reporting the rape.

53.     Ms. Diaz told Mrs. Treminio that she was going to help her. At that point, Mrs. Treminio had completely lost trust in Crowley to do the right thing, and she told Ms. Diaz that she feared losing her job if she reported the rape again. But Ayesha Diaz believed Mrs. Treminio, and she insisted that she could help. Ms. Diaz advised Mrs. Treminio to report the rape and the treatment she had endured at

Crowley headquarters to Arthur LaMoureaux, Crowley's Vice President of Ethics and Compliance. Ayesha Diaz assured Mrs. Treminio that, unlike many other people within Crowley, Arthur LaMoureaux was a trustworthy person. But Mrs. Treminio was afraid of retaliation if she called LaMoureaux, and was non-committal.

### XIII.   Crowley Begins Two Separate Sexual Misconduct Investigations into Juan Emilio Blanco

54.     Meanwhile, back in Crowley's toxic office in El Salvador that Mrs. Treminio had temporarily escaped, Juan Emilio Blanco continued his pattern of disgusting workplace misbehavior toward his employees on the Inland Department team. While Blanco was on his trip to Jacksonville where he raped Mrs. Treminio, numerous Inland Department team members decided they had endured enough of Blanco's workplace abuse.

55.     Inland Department team members had begun gathering and organizing evidence against Juan Emilio Blanco by printing out the wildly inappropriate comments he made in group chats, in emails, and in other documents as proof of his behavior. Armed with this evidence, several of Blanco's team members filed a formal complaint against Juan Emilio Blanco with the Crowley corporate ethics department.

56.     A team from Crowley headquarters in Jacksonville, Florida then flew to El Salvador to investigate the complaints that had been made by these team members against Juan Emilio Blanco. Everyone on the Inland Department team was

interviewed, and the investigators called Mrs. Treminio in Puerto Rico to ask her if she had anything to report regarding Mr. Blanco. Confused and afraid, on the phone call with the investigator Mrs. Treminio said that she had nothing to report. But the fact that an investigation into Blanco's sexual misconduct had begun gave Mrs. Treminio the confidence she needed to call Arthur LaMoureaux to report her rape.

57.    The same day that she received a call from a Crowley ethics officer involved in the investigation of the Inland Department claims against Juan Emilio Blanco, and following the advice of Ayesha Diaz, Mrs. Treminio called Arthur LaMoureaux, Crowley's Vice President of Ethics and Compliance. Mrs. Treminio reported being raped by Juan Emilio Blanco, and also detailed how she had been treated by Jose Lopez and a female Crowley employee when she went to Crowley headquarters to report the rape.

58.    On the call, Mr. LaMoureaux asked Mrs. Treminio for her permission to conduct an investigation. Mr. LaMoureaux specifically asked Mrs. Treminio if she would give him permission to go to the hotel in Jacksonville where she was raped to check the hotel's files, to interview employees, check the hotel's security cameras, and complete other necessary investigatory steps. Mrs. Treminio gave LaMoureaux her permission, and Crowley and LaMoureaux then began conducting an internal investigation into Mrs. Treminio's rape allegations.

**XIV.    Crowley's Internal Ethics Investigation Confirms Mrs. Treminio's Allegations of Rape Against Juan Blanco and Uncovers At Least 5**

19

**Additional Crowley Employees Who Had Been Sexually Assaulted By
Blanco**

59.     About two weeks after she reported her rape and the aftermath to Arthur
LaMoureaux, Mrs. Treminio was still in Puerto Rico when she received a call from
LaMoureaux. First, LaMoureaux apologized for what had happened to her in
Jacksonville. Then LaMoureaux told Mrs. Treminio that Crowley's investigation
was able to prove that Mrs. Treminio was telling the truth about being raped by Juan
Emilio Blanco. Accordingly, Crowley had decided to terminate the employment of
Juan Emilio Blanco and two additional employees.

60.     According to LaMoureaux, as a result of Crowley's ethics
investigation, Crowley also fired Jose Lopez, who had intimidated Vanessa into
silence inside the Crowley headquarters, compared Mrs. Treminio to a used car, told
Mrs. Treminio that she should be grateful Juan Emilio Blanco had raped her, and
then helped Mr. Blanco flee the United States in an effort to escape justice.

61.     According to LaMoureaux, as a result of Crowley's ethics
investigation, Crowley also fired HR Manager Jaqueline Najera because she had
forced Mrs. Treminio to travel with Juan Emilio Blanco to Jacksonville despite Mrs.
Treminio's protestations that she did not feel safe traveling with Blanco, and because
Najera had been instrumental in covering up other instances of Blanco's sexual
misconduct towards Inland Department team members, including the sexual assault
of Mrs. Treminio in the office elevator.

62.     After apologizing to Mrs. Treminio and telling her the steps Crowley was taking as a result of the internal ethics investigation, Mr. LaMoureaux thanked Mrs. Treminio for having the courage to come forward. LaMoureaux then told Mrs. Treminio that as a result of her courageous action, Crowley was able to substantiate claims of sexual assault that had been made against Juan Blanco by 5 additional female Crowley employees.

## XV.     Arthur LaMoureaux Intimidates Mrs. Treminio Into Silence

63.     LaMoureaux admonished Mrs. Treminio not to file a complaint with Crowley HR regarding her rape or the cover up, and he told her that his investigation would be the final word on the matter. He refused to provide Mrs. Treminio a copy of the investigation report, any paperwork relating to the investigation, or any proof of the action Crowley had taken as a result of the investigation. LaMoureaux told Mrs. Treminio that she was not entitled to any of those documents and that she had "no rights under the ethics investigation process."

64.     Before Mr. LaMoureaux ended his call with Mrs. Treminio, he had a final intimidating message. He told Mrs. Treminio that if her story ever became public, it could severely damage the company's reputation and tarnish its relationship with the U.S. government, which was one of the company's largest and most important customers. In that call, Mr. LaMoureaux specifically mentioned Crowley's "Defense Freight Transportation Services (DFTS)" contracts, which were

21

worth billions of dollars, and the emergency response contracts for hurricane relief in Puerto Rico.

65.    Mr. LaMoureaux inelegantly explained that these contracts paid Mrs. Treminio's salary and the salaries of many other Crowley employees, and that a clean public image was very important to Crowley in maintaining those contracts and the relationships they were built on. The message to Mrs. Treminio was clear: keep quiet about the rape, or else. Mr. LaMoureaux's thinly-veiled threats of retaliation prevented Mrs. Treminio from talking about what happened to her for years. In fact, Mrs. Treminio was so afraid of retaliation from LaMoureaux and Crowley that she did not even tell her future husband about her rape until after they were married.

66.    On the call, LaMoureaux offered Mrs. Treminio zero assistance or advice. Even though an internal investigation had substantiated her rape allegation and resulted in the firing of the rapist and two additional Crowley employees who were implicated in a cover up, no one from Crowley ever offered Mrs. Treminio any help to support her recovery from a heinous act of sexual violence that was completely preventable. Instead, she was threatened into silence about the rape and abandoned to deal with it on her own.

XVI.    **As a Result of Being Denied Treatment and Support By Crowley, Mrs. Treminio's Mental Health Begins to Deteriorate in the Wake of Being Raped by Juan Emilio Blanco**

22

67.     Over time, the sexual abuse trauma that Crowley forced Mrs. Treminio to internalize began to eat away at her soul and to destroy her mental health. The inevitable effects of sexual assault and rape trauma on victims are well-documented. In the aftermath of the multiple workplace sexual attacks that Mrs. Treminio suffered at Crowley, Mrs. Treminio experienced excruciatingly painful emotions, flashbacks, nightmares, depression, anxiety, and suicidal thoughts and attempts. She felt completely abandoned by Crowley in her healing process, and also remained afraid of retaliation from Crowley if she were to take steps to deal with the trauma or to speak to anyone about what happened to her in Jacksonville.

68.     In 2020 Mrs. Treminio began to fall into a deep depression, but she did not understand why. She told herself that she had gotten married, graduated from university, and was continuing to have success in her career at Crowley, and yet she wondered why she was so unhappy.

69.     After repressing any thoughts about the sexual assaults and rape she had endured for two years, Mrs. Treminio suddenly found herself unable to think about anything else. For more than an entire week she felt as if she were living in an on-and-off movie, constantly reliving the rape during the day, and having nightmares about the attack any time she was able to sleep.

## XVII.    Mrs. Treminio Attempts Suicide

70.     Finally, in November of 2020, Mrs. Treminio felt that she could no longer endure the anguish and pain she was experiencing, and she decided to take her own life by crashing her car into a concrete wall. She left her house and began driving. As she drove, she prayed. In her prayers she asked God for only one thing: to ensure that she died immediately in the crash, rather than remain paralyzed in a wheelchair or in a coma.

71.     As she was preparing to take her own life, Mrs. Treminio looked in the passenger's seat and saw her baby's little shoes and some of her son's toys. She thought about the fact that she had been a single mom when she was raped and began to wonder what would happen to her son after she died. She knew that her baby, which was the product of her recent marriage, would be taken care of by the father, but she wondered if her husband would also take care of her son after she was gone. "*What if my husband doesn't take care of him?*" she began asking herself.

72.     Consumed with emotion, grief, and guilt, Mrs. Treminio began to pray again. This time she asked God for forgiveness. She decided not to kill herself, and she returned home. She stayed awake all night, and the next day she called "911" to Crowley's 24/7 psychological assistance number. Mrs. Treminio spoke with a Crowley "Health Advocate" and described the rape and the feelings and physical symptoms she was struggling with. It was the first time since her rape that she had sought professional help.

73.     The Health Advocate connected Mrs. Treminio with a therapist, and she began treatment immediately. Mrs. Treminio began taking 3-4 sessions per week with the psychologist who told her, "*It's the rape that has you depressed. You never told anyone, and you never received the help that you needed, and that's why you are so depressed. It's like a wound that needed stitches, and instead of getting proper treatment, you applied a band-aid and moved on. Now the wound is infected, and the pus needs to come out, and you need treatment.*"

XVIII.   **In a State of Desperation Mrs. Treminio Contacts Senior Crowley Executive Arthur LaMoureaux and Asks Him for Help. Lamoreaux Refers Her to Claudia Moran**

74.     Soon after beginning treatment, and while still a Crowley employee, in December of 2020 Mrs. Treminio again contacted Arthur Lamoreaux, the senior Crowley executive who had conducted the rape investigation into Juan Blanco, confirmed the veracity of Mrs. Treminio's claims, and subsequently threatened Mrs. Treminio into silence.

75.     Mrs. Treminio told Arthur LaMoureaux that she had become very depressed as a result of being raped and she begged LaMoureaux to help her. In response, Arthur LaMoureaux directed Mrs. Treminio to contact Claudia Moran, a Crowley HR Director, about the problems she was having. LaMoureaux reassured Mrs. Treminio that Claudia Moran would help her.

76.     On December 16, 2020, Mrs. Treminio sent an email to Claudia Moran asking for help as Arthur Lamoreaux had instructed. In her email to Moran, Mrs. Treminio wrote: "*Good afternoon Claudia. I hope this email finds you in good health. I would like to express to you that due to the sexual abuse that I suffered from my former supervisor in 2017 (a member of Crowley Shared Services at that time) I have reached a breaking point where my emotional and psychological health are being compromised. I am currently receiving psychological and neurological help to be able to cope with the trauma and to understand why I can no longer control the trauma and the consequences that this situation left me in. The specialists who are treating me have given me medications to control depression, and anxiety (including controlled medications and not covered by PALIC) since I am in a very delicate emotional state that has been affecting me for a while. I've been down, frustrated, unmotivated, sad and it is affecting both my personal and work life. That is why I would like to request your intervention and to find out how the company can help me with the expenses that come over me both for medication and to continue my psychological treatment. I bring this up because I do not know how long or how much medication I will need in the process of treatment I am taking.*

77.     Following her conversation with Arthur LaMoureaux and her email to Claudia Moran, Mrs. Treminio never received any response to her pleas for help.

Despite this lack of assistance, Mrs. Treminio continued working hard and performing well in her job while continuing her treatment plan.

## XIX. Crowley Cruelly Retaliates Against Mrs. Treminio For Seeking Treatment to Deal with Her Sexual Trauma And Terminates Her Employment

78.   On January 13, 2021, less than a month after asking Arthur LaMoureaux for help, Erick Ramirez, Mrs. Treminio's supervisor, made a highly unusual visit to Mrs. Treminio's house around 8:00 PM. Because of the Covid-19 public health crisis, Mrs. Treminio and other Crowley employees had been working remotely from their homes. When Mrs. Tremenio's supervisor arrived at her home, Mrs. Treminio asked him why he was there. Her supervisor replied that he was there to tell her that Crowley was going to fire Mrs. Treminio the next day. Mrs. Treminio asked him "*why*?," and her supervisor replied that the official reason would be for "*low performance*."

79.   Mrs. Treminio knew that low performance was a ridiculous reason for Crowley to fire her. Since beginning treatment she had been performing well, working harder than ever, and had never received any warnings from Crowley for low performance. When Mrs. Treminio stated these facts to her supervisor, he agreed with Mrs. Treminio and he acknowledged that low performance was merely a pretext for her firing and that it was a farce. The real reason Crowley was firing her, he told her, was because the treating psychologist sent a report to Crowley explaining that

Mrs. Treminio was experiencing a deep depression because she had not begun receiving mental health treatment after being raped by her supervisor on a business trip to Jacksonville, Florida.

80.     The Crowley manager told Mrs. Treminio that after receiving the report from the psychologist, which included details about her rape in Jacksonville, HR Director Claudia Moran had begun investigating the matter. then escalated the matter to senior leaders at Crowley, including Arthur Lamoreaux, the man Mrs. Treminio had gone to for help. The Crowley manager told Mrs. Treminio that during the investigation, Crowley realized the company had never obtained any type of confidentiality agreement from Mrs. Treminio regarding the rape or the subsequent investigations into Juan Emilio Blanco, and upon receiving the psychologist's report Crowley executives became worried about the fact that Mrs. Treminio was talking about the rape and possibly the subsquent coverups.

81.     The Crowley manager also told Mrs. Treminio at her home on the evening of January 13, 2021 that Crowley senior management had decided that Mrs. Treminio was at fault for her mental health crisis because she had waited too long to begin treatment. Crowley was essentially blaming Mrs. Treminio for getting raped by a man Crowley had known was a sexual predator.

82.     At about 6:00AM the next morning, January 14, 2021, Mrs. Treminio received a very unusual call from Beatriz Ayala of Crowley HR, and Erick Ramirez,

Mrs. Treminio's supervisor at Crowley. On the call, Beatriz and Erick told Mrs. Treminio to report to the office as soon as possible and to bring her Crowley-issued computer and other Crowley property and documents in her possession. When Mrs. Treminio arrived at Crowley, she was whisked into a small office where Beatriz Ayala and an attorney from an outside law firm were waiting for her. The outside counsel's name was Brian Duran.

## XX. Crowley Attempts to Strongarm Mrs. Treminio Into Signing a Confidentiality Agreement and Refuses to Give Her the Final Paycheck She is Owed

83.     In the small office, legal counsel Brian Duran first made it very clear to Mrs. Treminio that he was an attorney there to fire her, and Duran attempted to create an intimidating, claustrophobic climate in the small room. Duran and Beatriz Ayala told Mrs. Treminio she was being fired. They also told her they had prepared Mrs. Treminio's final paycheck, and added $600 in addition to the amount she was owed in salary. Beatriz and Brian Duran then placed the check, a pen, and a settlement agreement in front of Mrs. Treminio and told her that she had to sign it.

84.     In the settlement agreement, Crowley offered Mrs. Treminio the extra $600 in exchange for giving up her rights to talk about the sexual harassment, sexual assaults, and rape that she had endured, and in exchange for giving up her right to bring suit against Crowley. Mrs. Treminio refused to sign the agreement, and asked Brian Duran and Beatriz to give her the money the company owed her. Crowley

29

refused to give Mrs. Treminio the money she was owed unless she also accepted the $600 and signed the settlement agreement. Mrs. Treminio again refused to sign the confidentiality agreement and left the office.

85.     In order to receive her last paycheck from Crowley, Mrs. Treminio was forced to obtain assistance from a governmental labor authority in El Salvador. After investigating the matter, this labor authority forced Crowley to pay Mrs. Treminio the salary she was owed and also fined Crowley for unfair labor practices.

## XXI.   **After Firing Mrs. Treminio Crowley Continues Their Campaign to Silence and Intimidate Her Through Baseless Legal Threats**

86.     If Crowley had simply listened to Mrs. Treminio when she reported the first sexual assault committed by Juan Emilio Blanco against her, or listened to Mrs. Treminio when she begged Crowley not to send her on the trip to Jacksonville with her sexual predator, or listened to the many other women within Crowley who had already reported Juan Emilio Blanco, Mrs. Treminio would never have been raped. She would never have been raped if Crowley had simply listened to her and acknowledged her value as a woman and as a human.

87.     Crowley obtained Mrs. Treminio's medical record and used the information against her. Crowley fired her in retaliation for talking about the rape and left her without a job when she desperately needed the job to continue receiving psychological treatment and medication for severe depression and anxiety brought on by workplace sexual abuse. But Crowley did not stop there.

88.     After Crowley fired her, Mrs. Treminio began speaking out against the sexual abuse she had endured at Crowley on her private social media accounts. Despite the fact that Mrs. Treminio never signed a confidentiality agreement with Crowley regarding the sexual abuse she endured, Crowley's lawyers continued to hound, harass, and threaten her against speaking about the rape on social media. In response to her private social media posts, Crowley outside counsel Jennifer Mejía and William Canahuati of international law firm Mayora & Mayora sent Mrs. Treminio written legal threats warning her that she would face severe legal action from Crowley's lawyers if she continued to post about her rape on social media. These fraudulent and despicable legal tactics were designed to further traumatize and intimidate a rape victim who had already been traumatized by Crowley for years.

## XXII.   Mrs. Treminio Pleads With Senior Crowley Executives to Help Her Bring Her Rapist To Justice But Receives No Response or Help

89.     In an email sent to senior Crowley officers on June 11, 2021, Mrs. Treminio wrote of the sexual abuse and humiliation she lived through at Crowley. That email, which featured the subject line "Sexual abuse crime suffered in Crowley Maritime Corporation," was sent to Thomas Crowley, William Pennella, Jim Pennella, Arthur Lamoreaux, Claudia Kattan, Parker Harrison, Matthew Yacavone, Michael G. Roberts, Brett Bennet, Shiju Zacharia, and Tiffany King.

90.     In that email to Thomas Crowley, Arthur Lamoreaux, Parker Harrison, and others, Mrs. Treminio wrote, "*I know I was only an employee for you, but I'm*

*[also] a woman, mom, student, wife, sister, and overall I'm a human being. An animal [rights] group would have done more for a raped dog than your company did for me.*"

91.     Regrettably, yet unsurprisingly, Mrs. Treminio's pleas to the people at the top of Crowley fell on deaf ears, and she received no response from anyone.

92.     Following the rape and the subsequent threats made to her by Crowley, Mrs. Treminio felt disempowered and frozen. The trauma of what she endured at Crowley shattered her life and her self-image. Mrs. Treminio still feels used, violated, and like a shell of the woman she once was.

## FIRST CAUSE OF ACTION
(Sex Trafficking under 18 U.S.C. § 1591, et seq.)
Against JUAN EMILIO BLANCO

93.     Plaintiff incorporates the allegations in paragraphs 1 through 92, as if fully set forth herein.

94.     In violation of 18 U.S.C. § 1591, Juan Emilio Blanco knowingly, in or affecting interstate or foreign commerce, did recruit, entice, or solicit Plaintiff knowing that means of force, threats of force, fraud, or coercion (or any combination thereof) would be used to cause Plaintiff to engage in any sex act on account of which anything of value would be given to or received by any person.

95.     The statute of limitations for violations of the sex trafficking statute is 10 years. 15 U.S.C. § 1595. The Plaintiff was affected within the 10 years prior to filing suit.

96.     Juan Emilio Blanco's actions knowingly affected interstate or foreign commerce when he, while serving as her supervisor, transported Plaintiff from San Salvador, El Salvador to Jacksonville, Florida on an official Crowley business trip while knowing that he planned to sexually attack Plaintiff in the United States.

97.     Juan Emilio Blanco personally recruited Plaintiff to be one of his Crowley Inland Department subordinate team members required to travel with him from San Salvador, El Salvador to Jacksonville, Florida on the Crowley business trip.

98.     When Blanco recruited Plaintiff to accompany him on the trip, he did so knowing that he would use fraud, physical force or coercion, or a combination thereof (as he had done many times before with other Crowley employees, including with Plaintiff), to sexually attack Plaintiff in the United States.

99.     Juan Emilio Blanco knowingly coerced Plaintiff into his sex trafficking venture when he conspired with Crowley HR Manager Jaqueline Najera and other Crowley employees in the United States to use coercion and threats of serious harm to force Mrs. Treminio to travel from San Salvador, El Salvador to Jacksonville,

Florida for a business trip, despite Mrs. Treminio's strong protestations that she did not feel safe traveling with Blanco.

100.   When Plaintiff strenuously objected to the order to travel with Juan Emilio Blanco to Jacksonville, Blanco conspired with Jaqueline Najera and other Crowley employees in the United States to cause Plaintiff to reasonably believe that her failure to travel to Jacksonville with Blanco would result in serious harm to herself and to her child. As part of that plan, Plaintiff was told by Blanco and Najera that, if she did not travel to Jacksonville with Blanco, her employment with Crowley would be terminated.

101.   As Plaintiff was a young, single mother in a developing country where equivalent office jobs were extremely difficult to obtain, Plaintiff reasonably feared that she would suffer serious professional reputational harm and serious, potentially ruinous financial harm if she did not comply with the order to travel to Jacksonville with Blanco. The threats and coercion directed at Plaintiff by Blanco, Najera, and other Crowley employees led Plaintiff to reasonably fear for the safety and security of herself and her child if she did not comply with the order to travel to Jacksonville with Blanco.

102.   In exchange for agreeing to participate in what Juan Emilio Blanco knew was an international business trip in which he would use force, threats of force, fraud, coercion (or any combination thereof) to cause Plaintiff to engage in a

commercial sex act, Plaintiff benefitted financially and received something of great value to her: She was allowed to continue her employment with Crowley and allowed to continue receiving her salary and benefits.

103.   In Jacksonville, Juan Emilio Blanco used fraud when, on the evening of Thursday November 9, 2017, he lied to front desk employees at the "Courtyard by Marriott Jacksonville I-295/East Beltway," hotel and fraudulently claimed that he was staying in Plaintiff's room in order to obtain an access key card, which he then used to unlawfully gain entry to her room and violently rape her.

104.   Before and during Juan Emilio Blanco's brutal sexual assault of Plaintiff in Jacksonville, Blanco used physical force to restrain Plaintiff in order to brutally rape her. Blanco used the weight of his body and brute force to pin Plaintiff to the bed, thus preventing her from escaping from him during the sexual attack. Blanco used brute force to cover Plaintiff's mouth with his hand, thus preventing Plaintiff from crying out for help as he forcefully and repeatedly raped her.

WHEREFORE, by virtue of these violations of 18 U.S.C. §§ 1591, 1595, Plaintiff respectfully requests this Court to enter judgment against Defendant Juan Emilio Blanco for compensatory damages, consequential damages, and punitive damages in an amount to be determined at trial, as well as interest, costs, and for such further and other relief as this Court deems appropriate and demands a trial by jury.

## SECOND CAUSE OF ACTION
(Sex Trafficking under 18 U.S.C. § 1591, et seq.)
Against CROWLEY MARITIME CORPORATION

105.   Plaintiff incorporates the allegations in paragraphs 1 through 92, as if fully set forth herein.

106.   In violation of 18 U.S.C. § 1591, Crowley Maritime Corporation ("Crowley") knowingly, in or affecting interstate or foreign commerce, did recruit, entice, transport, solicit, or obtain Plaintiff knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, or coercion (or any combination thereof) would be used to cause Plaintiff to engage in any sex act on account of which anything of value would be given to or received by any person.

107.   The statute of limitations for violations of the sex trafficking statute is 10 years. 15 U.S.C. § 1595. The Plaintiff was affected within the 10 years prior to filing suit.

108.   Crowley's actions knowingly affected interstate or foreign commerce when Crowley knowingly recruited and then transported Plaintiff from San Salvador, El Salvador to Jacksonville, Florida for an official Crowley business trip with Crowley employee Juan Emilio Blanco.

109.   Crowley's actions knowingly affected interstate or foreign commerce because Plaintiff's travel to Jacksonville, Florida was arranged and paid for by Crowley employees at Crowley corporate headquarters in Jacksonville. Plaintiff's

November 2017 travel itinerary states the flight and hotel were arranged by "Crowley Travel Services" with a listed address of 9487 Regency Square Blvd., Jacksonville, FL 32225, which is the address of Crowley's corporate headquarters.

110.  When Crowley recruited and then transported Plaintiff from El Salvador to the United States with Juan Emilio Blanco, Crowley knew, or was in reckless disregard of the fact, that Juan Emilio Blanco would use force or threats of force to sexually attack Plaintiff on the business trip, because multiple female Crowley employees had already notified Crowley that Juan Emilio Blanco had sexually harassed and sexual assaulted them in the Crowley offices. Based on these reports, Crowley knew, or was in reckless disregard of the fact, that Juan Emilio Blanco was a sexual predator.

111.  When Crowley recruited and then transported Plaintiff from El Salvador to the United States with Juan Emilio Blanco, Crowley's knew, or was in reckless disregard of the fact, that Juan Emilio Blanco would use force or threats of force to sexually attack Plaintiff on the business trip, because Plaintiff had already reported to Crowley that Juan Emilio Blanco had sexually assaulted her in the elevator at the Crowley offices.

112.  When Crowley recruited and then transported Plaintiff from El Salvador to the United States with Juan Emilio Blanco, Crowley knew, or was in reckless disregard of the fact, that Juan Emilio Blanco would use force or threats of

force to sexually attack Plaintiff on the business trip, because Plaintiff begged Crowley not to send her on the trip with Juan Emilio Blanco, explicitly told Crowley that she did not feel safe traveling with Blanco, and told Crowley that she was afraid for her own safety around Blanco because he had already sexually assaulted her in the elevator at the Crowley offices.

113.   When Plaintiff strenuously objected to complying with Crowley's order to travel with Juan Emilio Blanco to Jacksonville over concerns that Juan Emilio Blanco would once again sexually attack her, Crowley threatened and coerced Plaintiff into making the trip by telling Plaintiff that if she did not travel to Jacksonville with Blanco, her employment with Crowley would be terminated.

114.   Crowley recruited and then transported Plaintiff to Jacksonville while knowing, or in reckless disregard of the fact, that Crowley, Juan Emilio Blanco, Jaqueline Najera, and other Crowley employees in the United States had used a plan of coercion and threats of serious harm to force Plaintiff to accompany Juan Emilio Blanco on the business trip to Jacksonville.

115.   Crowley's use of coercion and threats of loss of employment caused Plaintiff to reasonably believe that her failure to perform the act of traveling to Jacksonville with Blanco would result in serious harm to herself and to her child. As Plaintiff was a young, single mother in a developing country where equivalent office jobs were extremely difficult to obtain, Plaintiff reasonably feared that she would

suffer serious professional and reputational harm as well as serious, potentially ruinous financial harm if she did not comply with the order to travel to Jacksonville with Blanco.

116.   The threats and coercion directed at Plaintiff by Crowley led Plaintiff to reasonably fear for the safety and security of herself and her child if she did not comply with the order to travel to Jacksonville with Blanco.

117.   In exchange for agreeing to participate in what Crowley knew, or was in reckless disregard of the fact, was a business trip in which force, threats of force, fraud, coercion (or any combination thereof) would be used to cause Plaintiff to engage in a commercial sex act, Plaintiff benefitted financially and received something of great value to her: She was allowed to continue her employment with Crowley and allowed to continue receiving her salary and benefits.

118.   In violation of 18 U.S.C. § 1591, Crowley knowingly, in or affecting interstate or foreign commerce, did recruit, entice, transport, solicit, or obtain Plaintiff knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, or coercion (or any combination thereof) would be used to cause Plaintiff to engage in any sex act on account of which anything of value would be given to or received by any person.

WHEREFORE, by virtue of these violations of 18 U.S.C. § 1591, 1595, Plaintiff respectfully requests this Court to enter judgment against Defendant

Crowley Maritime Corporation for compensatory damages, consequential damages, and punitive damages in an amount to be determined at trial, as well as interest, costs, and for such further and other relief as this Court deems appropriate and demands a trial by jury.

### THIRD CAUSE OF ACTION
(Sexual Battery)
Against JUAN EMILIO BLANCO

119.   Plaintiff incorporates the allegations in paragraphs 1 through 92, as if fully set forth herein.

120.   Juan Emilio Blanco entered Plaintiff's hotel room in Jacksonville, Florida and engaged in intentional, nonconsensual sexual intercourse with Plaintiff.

121.   Juan Emilio Blanco's tortious conduct was harmful and offensive and caused Plaintiff injury, damage, loss, and harm.

122.   Under Florida law, an action for assault, battery, false arrest, malicious prosecution, malicious interference, false imprisonment, or any other intentional tort must be commenced within 4 years. Fla. Stat. § 95.11.

123.   Florida law provides that the applicable 4 year statute of limitations is tolled by the absence from the state of the person to be sued. Fla. Stat. § 95.051.

124.   After raping Plaintiff at a hotel in Jacksonville, Florida on November 9, 2017, Juan Emilio Blanco fled the State of Florida and the United States and flew

to the country of El Salvador on November 10, 2017. Defendant Crowley Maritime

Corporation assisted Juan Emilio Blanco in his flight from the state and from justice.

125.   Upon information and belief, Juan Emilio Blanco has remained in the

country of El Salvador since November 10, 2017. Therefore, the statute of

limitations for civil claims against Juan Emilio Blanco arising out of his violent rape

of Plaintiff have been tolled since November 10, 2017.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment

against Defendant Juan Emilio Blanco for compensatory damages, consequential

damages, and punitive damages in an amount to be determined at trial, as well as

interest, costs, and for such further and other relief as this Court deems appropriate

and demands a trial by jury.

### FOURTH CAUSE OF ACTION
(False Imprisonment.)
Against Juan Emilio Blanco

126.   Plaintiff incorporates the allegations in paragraphs 1 through 92, as if

fully set forth herein.

127.   Without privilege or authority, Juan Emilio Blanco intentionally and

physically restrained and confined Plaintiff by use of his hands, arms and other body

parts for the purpose of, and with the knowledge that his actions would result in,

Plaintiff being confined and restrained in her hotel room in Jacksonville, Florida.

128.   Juan Emilio Blanco acted with the intent to restrain and deprive Plaintiff of her liberty, against Plaintiff's will and despite her protests, screams, and physical resistance.

129.   Throughout Defendant's restraint and confinement of her person, Plaintiff had no reasonable means or avenue of escape.

130.   Plaintiff in no way consented to being so restrained or confined by Defendant.

131.   Defendant's acts of restraining and confining Plaintiff were wholly without authority and completely unreasonable in light of the foregoing facts and circumstances.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment against Defendant Juan Emilio Blanco for compensatory damages, consequential damages, and punitive damages in an amount to be determined at trial, as well as interest, costs, and for such further and other relief as this Court deems appropriate and demands a trial by jury.

## FIFTH CAUSE OF ACTION
(Forced Labor under 18 U.S.C. § 1589, et seq.)
Against CROWLEY MARITIME CORPORATION

132.   Plaintiff incorporates the allegations in paragraphs 1 through 92, as if fully set forth herein.

133.   In violation of 18 U.S.C. § 1589, Crowley did knowingly obtain the labor or services of Plaintiff by, or by a combination of, threats of force, threats of serious harm to Plaintiff and to Plaintiff's child, or by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that, if she did not perform such labor or services, she would suffer serious harm.

134.   The statute of limitations for violations of the forced labor statute is 10 years. 15 U.S.C. § 1595. The Plaintiff was affected within the 10 years prior to filing suit.

135.   After Crowley manager Juan Emilio Blanco sexually assaulted Plaintiff in the elevator of the Crowley's offices in October 2017, Plaintiff notified Crowley that she did not want to accompany Juan Emilio Blanco on the official Crowley business trip to Jacksonville, Florida. Plaintiff told Crowley she did not feel safe traveling with Blanco because she was afraid Blanco would sexually assault her again on the business trip.

136.   Plaintiff pleaded with Crowley not to force her to perform the labor or services of a week-long business trip to Jacksonville with her abuser. Plaintiff knew that performing such labor or services would place her in grave danger.

137.   Crowley knew Plaintiff did not want to perform the labor or services of a business trip to Jacksonville with Blanco, and Crowley knew Plaintiff feared she would face serious harm on the business trip at the hands of Juan Emilio Blanco.

138.   Crowley used threats of serious harm to Plaintiff in order to obtain the labor or services of Plaintiff when Crowley HR manager Jaqueline Najera said to Plaintiff, after plaintiff reported to Najera that Blanco had sexually assaulted her and after Plaintff told Najera she did not feel safe traveling with Blanco, "*Vanessa, you need to remember that you are a single mom, and you need to think about your son. Do you want him to know mommy for her successful career, or for getting fired for talking about a sexual situation that cannot be proven?*"

139.   Crowley used threats of serious harm to Plaintiff in order to obtain the labor or services of Plaintiff when Crowley HR manager Jaqueline Najera said to Plaintiff, after Plaintiff reported to Najera that Blanco had sexually assaulted her and after Plaintff pleaded with Najera not to force her to accompany Blanco on the trip to Jacksonville, that Plaintiff's only choices were to go on the trip with Blanco or be fired from her job.

140.   Crowley used threats of serious harm to Plaintiff when Crowley manager Juan Emilio Blanco told Plaintiff, following Plaintiff's report of sexual assault to Jaqueline Najera and Plaintiff's initial plea not to be sent on the trip to Jacksonville with Blanco, "*Vanessa, what did you gain by getting HR involved? Remember, Vanessa, you're a single mom. When your kid goes hungry, remember that. You better cooperate, or you will get fired in a snap.*"

141.   Crowley used a combination of threats of force and threats of serious harm to Plaintiff when Crowley manager Juan Emilio Blanco told Plaintiff, immediately following Plaintiff's report of sexual assault to Jaqueline Najera and Plaintiff's initial plea not to be sent on the trip to Jacksonville with Blanco, that Blanco was not someone Plaintiff wanted for an "*enemy*."

142.   Crowley's threats of loss of employment caused Plaintiff to reasonably believe that her failure to perform the labor or services of traveling to Jacksonville with her abuser would result in serious harm to herself and to her child. As Plaintiff was a young, single mother in a developing country where equivalent office jobs were extremely difficult to obtain, Plaintiff reasonably feared that she would suffer serious professional and reputational harm as well as serious, potentially ruinous financial harm if she did not comply with the order to travel to Jacksonville with Blanco.

WHEREFORE, by virtue of these violations of 18 U.S.C. § 1589, 1595, Plaintiff respectfully requests this Court to enter judgment against Defendant Crowley for compensatory damages, consequential damages, reasonable attorneys' fees, and punitive damages in an amount to be determined at trial, as well as interest, costs, and for such further and other relief as this Court deems appropriate and demands a trial by jury.

## SIXTH CAUSE OF ACTION

(Negligence for sexual misconduct, assault, and violence in the workplace)
Against CROWLEY MARITIME CORPORATION

143.   Plaintiff incorporates the allegations in paragraphs 1 through 92, as if fully set forth herein.

144.   At all material times, Plaintiff was employed by Crowley, was an invitee of Crowley, and Crowley owed her the enhanced duties owed invitees.

145.   At all material times, Crowley also owed her duties of care as her employer, including the duty to provide a safe and secure workplace for her workplace activities (such as those she undertook in the furtherance of Crowley's business purposes); a duty to protect employees from people with a known dangerous propensity; the duty to train and retain managers who exercise their supervisory and other powers in a reasonable manner; the duty to design, implement, and maintain effective training, reporting, recordkeeping, and disciplinary processes to identify, prevent, discourage, report, eliminate, and remediate sexual misconduct, assault, and violence in the workplace for all Crowley employees; and the duty to design, implement, and maintain functional systems of oversight of its supervisors who wielded authority over subordinates like Plaintiff.

146.   Crowley breached the duties owed to Plaintiff for the following reasons:

a. at the time of Plaintiff's employment, Crowley had actual and constructive knowledge of Defendant Juan Emilio Blanco's predisposition to harass and assault female subordinates and abuse his supervisory capacity over female employees, and took no steps to curtail, regulate, remove, or otherwise supervise Blanco's authority over Crowley subordinates;

b. Crowley failed to ensure that its working environment was safe and secure for its employees and invitees, including via insufficient security protocols such as the quantity and placement of surveillance cameras;

c. Crowley failed to design, implement, and maintain effective training, reporting, recordkeeping, and disciplinary processes to identify, prevent, discourage, report, eliminate, and remediate sexual misconduct, assault, and violence in the workplace, including after receiving actual and constructive notice that Blanco was abusing his powers to harass and sexually assault subordinates; and

d. Crowley failed to warn Plaintiff of Blanco's dangerous propensity toward harassment and sexually abusive behavior, and instead knowingly forced her to travel on an overnight business trip with Blanco, during which she was forcibly raped.

147.    Crowley's knowledge and conduct created and broadened a foreseeable zone of risk posing a general threat of harm to Plaintiff and other employees at Crowley's workplace, which created a duty of care toward Mrs. Treminio, an employee and invitee of Crowley who was within this foreseeable zone of risk. Crowley breached this duty of care.

148.    All or some of the above acts and/or omissions caused and/or contributed to the Plaintiff being raped by Crowley employee Juan Emilio Blanco.

149.    Defendant knew of the foregoing dangerous condition in the workplace and did not correct it, and the condition existed for a sufficient length of time so that Crowley, in the exercise of reasonable care under the circumstances, should have learned of and corrected it.

150.    Crowley's breach of the duty of care was the direct and proximate cause of the Plaintiff's physical and emotional injuries.  Moreover, these breaches were so reckless as to constitute a conscious disregard and indifference to the human rights, safety, and privacy of Mrs. Treminio.

151.    As a result of Crowley's negligence, Plaintiff was raped in the workplace.  She suffered and continues to suffer physical pain, mental anguish, loss of enjoyment of life, and incurred psychiatric expenses.  The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment against Defendant Crowley for compensatory damages, consequential damages, and punitive damages in an amount to be determined at trial, as well as interest, costs, and for such further and other relief as this Court deems appropriate and demands a trial by jury.

**SEVENTH CAUSE OF ACTION**
(Negligent Supervision and Retention)
Against CROWLEY MARITIME CORPORATION

152.   Plaintiff incorporates the allegations in paragraphs 1 through 92, as if fully set forth herein.

153.   At all material times, Blanco was under the direction, supervision, and control of Crowley as an employee of Crowley.

154.   Crowley had a continuing duty to use reasonable care in defining the scope of Blanco's duties and powers and to reasonably protect employees such as Mrs. Treminio working under Blanco's supervision.

155.   At all material times, Crowley had no effective training, oversight, or reporting protocols in place to protect its employees from workplace sexual misconduct, assault, and violence.   Moreover, Crowley's remedial protocols to respond to acts of sexual misconduct in the workplace were ineffective or nonexistent during Mrs. Treminio's tenure at Crowley.

156.   Crowley had actual knowledge and constructive knowledge that Blanco had previously engaged in sexual misconduct, assault, and violence in the workplace, but did not remove Blanco, reduce his powers, or implement effective policies or procedures to prevent further misconduct by Blanco.

157.   Crowley knew or should have known that Blanco was dangerous and likely to commit further sexual misconduct, assault, and violence in the workplace.

158.   Once Crowley became aware of Blanco's overtly dangerous, inappropriate, and offensive behavior in the workplace, Crowley failed to take appropriate corrective action through retraining, reassignment or discharge of Blanco as an employee.

159.   Crowley tolerated sexual misconduct, assault, and violence in the workplace and continued to retain Blanco as an employee after Crowley became aware of his dangerous propensities.

160.   Blanco's acts of sexual misconduct, assault, and violence toward Mrs. Treminio in the workplace were foreseeable, and preventable.

161.   Crowley's negligent supervision and retention of Blanco in the workplace despite prior knowledge and warnings about sexual misconduct, assault, and violence in the workplace were the direct and proximate causes of the physical and emotional harms suffered by Plaintiff.  If Crowley had implemented reasonable and appropriate oversight, reporting, and training procedures after learning of prior

sexual misconduct, assault, and violence by Blanco in the workplace, toward one or more subordinates at Crowley, his sexual assault, battery, and rape of Mrs. Treminio would never have occurred.  Crowley's breach was so reckless as to constitute a conscious disregard and indifference to the human rights, safety, and privacy of Mrs. Treminio and other Crowley employees and invitees.

162.   As a result of Crowley's negligence, Plaintiff was raped in the workplace. She suffered and continues to suffer physical pain, mental anguish, loss of enjoyment of life, and incurred psychiatric expenses.  The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment against Defendant Crowley for compensatory damages, consequential damages, and punitive damages in an amount to be determined at trial, as well as interest, costs, and for such further and other relief as this Court deems appropriate and demands a trial by jury.

### EIGHTH CAUSE OF ACTION
(Negligent Misrepresentation)
Against CROWLEY MARITIME CORPORATION

163.   Plaintiff incorporates the allegations in paragraphs 1 through 92, as if fully set forth herein.

164.   Crowley and LaMoureaux' internal investigation confirmed that Mrs. Treminio was telling the truth about being raped by her supervisor, Blanco, during a Crowley business trip in Jacksonville, Florida.

165.   Initially, LaMoureaux thanked Mrs. Treminio for having the courage to speak up about her rape.

166.   Crowley and LaMoureaux made statements concerning material facts to Plaintiff, including statements that Crowley maintained a safe workplace and that harassment was not tolerated.

167.   Crowley and LaMoureaux knew these statements were false.

168.   The following public statements also show, in part, the extent of Crowley's misrepresentations to Plaintiff:

    a.   "We obey the law. We go beyond to protect our employees and our environment."  Tom Crowley, Chairman and CEO.



"While we operate in many parts of the world, with different cultures our core value of Integrity remains constant in all our businesses and areas of operation. It is the foundation for our other core values of Safety and High Performance. This means that we operate our businesses honestly and ethically wherever we are. We obey the law. We go beyond to protect our employees and our environment. We leverage our diversity of people and ideas. We treat everyone as we would want to be treated ourselves and we sustain our businesses and the environments where we operate."

– Tom Crowley, Chairman and CEO

Available at https://www.crowley.com/company-overview/ethics/

b. "Crowley is committed to providing a work environment free from harassment of any kind."



**Appropriate Conduct**

Harassment & Sexual Harassment

Crowley is committed to providing a work environment free from harassment of any kind. Harassment in the workplace is behavior that is unwelcome and offensive to specific individuals or groups or that unreasonably disrupts their work. Harassment can take many different forms and may include verbal or physical conduct that denigrates or shows hostility toward an individual and can reasonably be perceived as threatening, offensive, and/or insulting.

Anyone that experiences harassment or sees others being harassed should immediately:

- Tell the harasser to stop, and/or;
- Report the action to his/her Crowley representative and/or;
- Report the action to the Ethics Hotline at www.EthicsPoint.com.

Available at https://www.crowley.com/code-of-conduct/#harassment-amp-sexual-harassment

c. "At Crowley, women are empowered and encouraged to lead despite transportation being historically male-dominated," said Stephanie Johnson, director of operations integrity, Crowley Logistics. "Our company provides opportunities for contribution and leadership with a commitment to equity and inclusion. I'm proud to work at Crowley and encourage other women to grow in their career with Crowley."

53

Available at https://www.crowley.com/news-and-media/press-releases/women-in-transportation/

    d. "I encourage all employees to think about how their knowledge, background and experiences can contribute to Crowley's success and encourage them to share their ideas with their peers and leaders of this organization."  Tom Crowley Jr., Chairman and CEO.



*The diversity of thought, experience, culture, attitude and background brought forth by our employees allows us to develop unique, innovative solutions for our customers and keeps us at the forefront of our industry.*

*I encourage all employees to think about how their knowledge, background and experiences can contribute to Crowley's success and encourage them to share their ideas with their peers and leaders of this organization*

*Because although we are all different, we are stronger together as One Crowley, One Team.*

Tom Crowley Jr., Chairman and CEO

Available at https://www.crowley.com/careers/diversity-inclusion/

e.



*(Chairman and CEO Tom Crowley posing for a picture with Plaintiff.)*



*(Plaintiff with Fellow Members of Crowley's "Diversity & Inclusion Committee"*
*at Crowley corporate headquarters in Jacksonville, Florida)*

169.   Crowley knew these statements to be false.

170.   Crowley and LaMoureaux used their ability to affect Plaintiff's quality of life and financial security in making these misrepresentations.

171.   Crowley intended and expected that Plaintiff would rely on its statements.

172.   These statements induced Plaintiff to trust Crowley and LaMoureaux and continue employment at Crowley.

173.   Plaintiff justifiably relied on Crowley's false statements to her detriment.

174.   These false statements directly and proximately harmed the Plaintiff.

175.   Crowley and LaMoureaux ultimately threatened and intimidated the Plaintiff into silence because they were concerned about the Plaintiff discussing the rape and the subsequent coverups with others.

176.   Lamoureux and Crowley stifled Mrs. Treminio's attempts to share her ideas with her peers and leaders of the Crowley organization.

177.   LaMoureaux intimidated Mrs. Treminio not to file a complaint with Human Resources and suggested to Mrs. Treminio that maintaining Crowley's image was crucial to her continued job security.

178.   Contrary to Crowley's statement in its code of conduct, Crowley was not "committed to providing a work environment free from harassment of any kind" in Mrs. Treminio's case.

179.   Contrary to Crowley's statements to the Plaintiff and the public, Crowley did not obey the law.   Crowley did not "go beyond" to protect its employees.

180.   Crowley did not offer the Plaintiff any support or counseling, and she fell into a downward spiral of depression.

181.   In January 2021, Crowley terminated Mrs. Treminio's employment because she was seeking psychological and neurological treatment to cope with the trauma of being raped by her supervisor in the workplace and being bullied into silence.

182.   As a result of Crowley's negligent misrepresentations to the Plaintiff, she was lured into a false sense of trust following her rape in the workplace.   Upon realizing the extent of the misrepresentations, she became horrified and depressed, and Crowley fired her.   She suffered and continues to suffer physical pain, mental anguish, loss of enjoyment of life, and incurred psychiatric expenses.   The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment against Defendant Crowley for compensatory damages, consequential damages, and punitive damages in an amount to be determined at trial, as well as interest, costs, and for such further and other relief as this Court deems appropriate and demands a trial by jury.

## NINTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)
Against CROWLEY MARITIME CORPORATION

183.   Plaintiff incorporates the allegations in paragraphs 1 through 92, as if fully set forth herein.

184.   Crowley had a duty to protect its employees, and the Plaintiff in particular, from people with a known dangerous propensity for sexual misconduct, assault, and violence in the workplace, such as Juan Blanco.

185.   Crowley's employee, Blanco, forcibly raped Plaintiff on a business trip in Jacksonville, Florida.

186.   Mrs. Treminio followed Crowley protocol, as expressed in the code of conduct:

a.   Tell the harasser to stop, and/or;

b.   Report the action to his/her Crowley representative and/or;

c.   Report the action to the Ethics Hotline at www.EthicsPoint.com

187.   Crowley and LaMoureaux threatened and intimidated the Plaintiff into silence because they were concerned about the Plaintiff talking about the rape and the subsequent coverups to others.

188.   LaMoureaux and Crowley stifled Mrs. Treminio's attempt to speak up about her rape in the workplace and the subsequent trauma.

189.   LaMoureaux intimidated Mrs. Treminio not to file a complaint with Human Resources and suggested to Mrs. Treminio that maintaining Crowley's image was crucial to her continued job security.

190.   The Plaintiff spiraled into a state of depression.

191.   In January 2021, Crowley terminated Mrs. Treminio's employment because she was seeking psychological and neurological treatment to cope with the trauma of being raped by her supervisor in the workplace and being bullied into silence.

192.   Crowley offered Mrs. Treminio $600 to sign a settlement and confidentiality agreement agreeing to keep quiet about the sexual misconduct, assault, and violence in the workplace and to waive her right to sue Crowley.

193.   Mrs. Treminio refused to sign such an agreement.

194.   Crowley withheld her last paycheck unless she signed Crowley's settlement and confidentiality agreement.

195.    A labor authority in El Salvador intervened and compelled Crowley to pay Mrs. Treminio's unpaid salary and fined Crowley for its abusive labor practices.

196.    After Crowley fired Mrs. Treminio, she posted about the sexual abuse and her ordeal at Crowley on her private social media accounts.

197.    Mrs. Treminio received written threats and harassing messages from Crowley's counsel which further traumatized and intimidated Mrs. Treminio.

198.    On or about January 2021, Crowley and/or its agents, servants, and/or employees intentionally and deliberately inflicted mental and emotional distress on Mrs. Treminio by and through, but not limited to, all of the above acts and omissions.

199.    Crowley's retaliatory conduct was outrageous.

200.    Crowley's withholding of Plaintiff's final paycheck was outrageous.

201.    Crowley's coercion of Plaintiff to remain silent was outrageous.

202.    Crowley's badgering and threats to take down her private social media posts were outrageous.

203.    The combined effect of Crowley's acts and omissions was extreme and outrageous under the circumstances.

204.    Crowley acted intentionally and/or recklessly in a manner calculated to inflict severe emotional distress and mental suffering upon Mrs. Treminio, who was already severely depressed due to the psychological trauma of having been raped by her supervisor.

205.   As a direct and proximate result of Crowley's conduct, Mrs. Treminio suffered severe emotional distress in the form of psychiatric and psychological harm, emotional pain, mental anguish, depression, insomnia, humiliation, loss of dignity, loss of enjoyment of life, past and future medical expenses, and her reputation was tarnished.  These losses are continuing and will continue in the future.

206.   Crowley wantonly and knowingly subjected Mrs. Treminio to the mental anguish referenced herein.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment against Defendant Crowley for compensatory damages, consequential damages, and punitive damages in an amount to be determined at trial, as well as interest, costs, and for such further and other relief as this Court deems appropriate and demands a trial by jury.

## TENTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)
Against CROWLEY MARITIME CORPORATION

207.   Plaintiff incorporates the allegations in paragraphs 1 through 92, as if fully set forth herein.

208.   Crowley and LaMoureaux intimidated Mrs. Treminio not to file a complaint with Human Resources and suggested to Mrs. Treminio that maintaining Crowley's image was crucial to her continued job security.

209.   On or about January 2021, Plaintiff suffered severe emotional distress from being subjected to threats and intimidation by Crowley after she was raped by her supervisor on a business trip in Jacksonville, Florida, bullied into keeping quiet about the ordeal, and fired.

210.   Crowley offered Mrs. Treminio $600 to sign a settlement and confidentiality agreement agreeing to keep quiet about the sexual misconduct, assault, and violence in the workplace and to waive her right to sue Crowley.

211.   Mrs. Treminio refused to sign such an agreement.

212.   Crowley withheld her last paycheck unless she signed Crowley's settlement and confidentiality agreement.

213.   A labor authority in El Salvador intervened and compelled Crowley to pay Mrs. Treminio's unpaid salary and fined Crowley for its abusive labor practices.

214.   After Crowley fired Mrs. Treminio, she posted about the sexual abuse and her ordeal at Crowley on her private social media accounts.

215.   Mrs. Treminio received written threats and harassing messages from Crowley's counsel which further traumatized and intimidated Mrs. Treminio.

216.   Mrs. Treminio suffered severe emotional distress because she was subjected to severe mental anguish and emotional harm after reporting that she was raped by her supervisor in the workplace.

217.   At all material times, Plaintiff was undergoing psychological treatment for the trauma of being raped in the workplace and was further placed in immediate risk of harm by Crowley's conduct.

218.   Crowley's negligence caused Plaintiff severe mental anguish and emotional harm by being subjected to threats, intimidation, salary withholding, and being pressured to sign a $600 settlement and confidentiality agreement.

219.   At all material times, Crowley knew or should have known that it was inflicting severe emotional distress to Plaintiff who was emotionally vulnerable following the trauma of being raped by her supervisor.

220.   As a direct and proximate result of Crowley's negligent infliction of emotional distress, Mrs. Treminio suffered psychiatric and psychological harm, emotional pain, mental anguish, depression, insomnia, humiliation, loss of dignity, loss of enjoyment of life, past and future medical expenses, and inconvenience in the normal pursuits and pleasures of life.   These losses are continuing and will continue in the future.

WHEREFORE, Plaintiff respectfully requests this Court to enter judgment against Defendant Crowley for compensatory damages, consequential damages, and punitive damages in an amount to be determined at trial, as well as interest, costs, and for such further and other relief as this Court deems appropriate and demands a trial by jury.

## DEMAND FOR JURY TRIAL

221.   Plaintiff respectfully demands a trial by jury for all issues so triable in

this action.

Dated February 15, 2022

Respectfully submitted,

/s/  Adria G. Notari
**ADRIA G. NOTARI**
Florida Bar No. 87272
NOTARI  LAW, P.A.
1820 SW 14th Court
Fort Lauderdale, Florida 33312
Telephone: (954) 257-9028
Fax: (954) 231-1128
E-mail: anotari@NotariLaw.com

/s/  J. Ryan Melogy
**J. RYAN MELOGY**\*
Maritime Legal Solutions, PLLC
276 Fifth Ave., Suite 704-1454
New York, NY 10001
Telephone: (302) 827-3890
E-mail: maritimelegalsolutions@pm.me
\**pro hac vice* application forthcoming