## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

VANESSA TREMINIO,

       Plaintiff,

vs.                                  Case No.  3:22-cv-174-MMH-PDB

CROWLEY MARITIME
CORPORATION and JUAN
EMILIO BLANCO,

       Defendants.

_____/

## <u>O R D E R</u>

**THIS CAUSE** is before the Court on Defendant Crowley Maritime

Corporation's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 18;

Crowley's Motion), filed April 13, 2022, and Defendant Juan Emilio Blanco's

Motion to Dismiss Plaintiff's Amended Complaint (Doc. 31; Blanco's Motion),

filed June 16, 2022.  In their respective motions, Defendant Crowley Maritime

Corporation (Crowley) and Defendant Juan Emilio Blanco request that the

Court dismiss Plaintiff Vanessa Treminio's Amended Complaint and Demand

for Jury Trial (Doc. 14; Amended Complaint) pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure (Rule(s)).  Treminio timely filed responses in

opposition to both motions.  <u>See</u> Plaintiff's Response in Opposition to Crowley

Maritime Corporation's Motion to Dismiss (Doc. 26; Response to Crowley's

Motion), filed May 4, 2022; Plaintiff's Response in Opposition to Juan Emilio Blanco's Motion to Dismiss (Doc. 32; Response to Blanco's Motion), filed July 7, 2022. Accordingly, this matter is ripe for review.

## I.   Legal Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The "plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## II.    Background[1]

Treminio began working for Crowley in 2012 in El Salvador.  Amended Complaint ¶¶ 6–7.  In 2017, Crowley transferred Treminio to the Inland Department where Blanco supervised her.  Id. ¶ 11.  According to Treminio, Crowley had transferred Blanco to the Inland Department after several female

---

[1]    In considering the Motions, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to Treminio, and accept all reasonable inferences that can be drawn from such allegations.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa County, 21 F.3d 1531, 1534 (11th Cir. 1994).  As such, the facts recited here are drawn from the Amended Complaint and may well differ from those that ultimately can be proved.

subordinates in Blanco's former department alleged that he had sexually harassed and sexually assaulted them.  Id. ¶ 13.  Treminio alleges that, in late 2017, Blanco sexually assaulted her by grabbing her breast in a Crowley office.  Id. ¶ 23.  Treminio immediately reported this sexual assault to the human resources manager at the office, Jacqueline Najera.  Id. ¶ 24.  As alleged in the Amended Complaint, Najera threatened Treminio to stay silent about the assault and warned Treminio that she still must go on an upcoming business trip to Jacksonville, Florida, with Blanco.  Id. ¶¶ 27–31.  Treminio maintains that Blanco also threatened her to stay silent about the assault.  Id. ¶¶ 33–36.  Treminio alleges that, on November 9, 2017, during the business trip in Jacksonville, Blanco fraudulently gained access to her hotel room and forcibly raped her.  See id. ¶¶ 41–46.

The next day, Treminio reported the rape to Blanco's supervisor Jose Lopez and another employee in Crowley's headquarters.  Id. ¶¶ 47–49.  According to Treminio, Lopez told her to "shut up" about the rape if she wanted to keep her job.  Id. ¶ 50.  Sometime later, Treminio contacted Crowley's Vice President of Ethics and Compliance Arthur LaMoureaux and reported Blanco's rape and Lopez's threat.  Id. ¶ 64.  After about two weeks, LaMoureaux told Treminio that Crowley had decided to fire Blanco, Lopez, and Najera.  Id. ¶¶ 66–68.  Treminio asserts that LaMoureaux also instructed her not to file a complaint with the human resources department regarding the rape and said

that, if the story became public, Crowley's reputation would be severely damaged, potentially resulting in lost business and the layoffs of Treminio and many others.  Id. ¶¶ 70–72.

In November 2020, Treminio began receiving mental health treatment for the severe trauma that she had suffered from Blanco's rape.  Id. ¶¶ 77, 79–80. Treminio alleges that, in January 2021, after Crowley learned that she was talking to her psychologist about the rape and Crowley's cover-up, Treminio's supervisor Erick Ramirez told her that Crowley was going to fire her under the pretense of low performance.  Id. ¶¶ 85–86.  According to Treminio, Ramirez said that Crowley really was firing her because she was talking about the rape and Crowley's actions.  Id. ¶¶ 86–87.  On January 14, 2021, an attorney for Crowley offered Treminio $600 in exchange for signing a settlement and confidentiality agreement regarding the rape.  Id. ¶¶ 90–91.  Treminio maintains that, after she refused to sign the agreement, Crowley fired her and withheld her final paycheck.  Id. ¶¶ 91–92.  Subsequently, Treminio began speaking on social media about her experiences at Crowley.  Id. ¶ 96.  Treminio asserts that attorneys contacted her on behalf of Crowley and threatened severe legal action in response to her social media posts.  Id.

Treminio initiated this action on February 15, 2022, by filing her Complaint and Demand for Jury Trial (Doc. 1).  Treminio filed the currently operative Amended Complaint on March 30, 2022.  In the Amended Complaint,

Treminio asserts three claims against Blanco.  In the First Cause of Action (Count I), Treminio alleges that Blanco committed sex trafficking in violation of the Trafficking Victims Protection Act of 2000 (TVPA), 18 U.S.C. § 1591.  See Amended Complaint ¶¶ 101–13.  In the Third Cause of Action (Count III), Treminio raises a Florida law tort claim against Blanco for sexual battery.  See id. ¶¶ 140–46.  And, in the Fourth Cause of Action (Count IV), Treminio alleges a false imprisonment claim against Blanco under Florida law.  See id. ¶¶ 147–52.  Treminio also brings seven claims against Crowley.  In the Amended Complaint's Second Cause of Action (Count II), Treminio asserts a claim for sex trafficking in violation of the TVPA.  See id. ¶¶ 114–39.  In the Fifth Cause of Action (Count V), Treminio alleges that Crowley obtained forced labor in violation of the TVPA, 18 U.S.C. § 1589.  See Amended Complaint ¶¶ 153–69.  In the Sixth Cause of Action (Count VI), Treminio brings a negligence claim.  See id. ¶¶ 170–83.  In the Seventh Cause of Action (Count VII), Treminio asserts that Crowley was negligent in its supervision and retention of Blanco.  See id. ¶¶ 184–99.  In the Eighth Cause of Action (Count VIII), Treminio alleges a claim for negligent misrepresentation.  See id. ¶¶ 200–23.  In the Ninth Cause of Action (Count IX), Treminio raises a claim for the intentional infliction of emotional distress.  See id. ¶¶ 224–47.  And, in the Tenth Cause of Action (Count X), Treminio alleges that Crowley is liable for the negligent infliction of emotional distress.  See id. ¶¶ 248–61.

## III.  Discussion

Upon review of the Amended Complaint, the parties' arguments, and the applicable law, the Court finds that Blanco's Motion is due to be denied and Crowley's Motion is due to be granted, in part, and denied, in part.

### A.     Counts I and II (Sex Trafficking)

In Counts I and II, Treminio brings claims of sex trafficking in violation of 18 U.S.C. § 1591 against Blanco and Crowley, respectively.  See Amended Complaint ¶¶ 101–39.  In § 1591, the TVPA provides:

> (a) Whoever knowingly—
>> (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act . . . shall be punished . . . .

§ 1591(a).  The Trafficking Victims Protection Reauthorization Act of 2003 (TVPRA) provides a civil remedy for a violation of § 1591.  See 18 U.S.C. § 1595(a).

### 1.     Commercial Sex Act

Crowley and Blanco argue that the sex trafficking claims should be dismissed because Treminio has not plausibly alleged that a "commercial sex act" occurred.  Crowley's Motion at 5–6; Blanco's Motion at 2–3.  According to

the Defendants, none of Treminio's allegations suggest that "anything of value" was given "on account of" the sex acts.  Crowley's Motion at 5–7; Blanco's Motion at 2–3.  In her responses, Treminio argues that she has adequately alleged that a commercial sex act occurred because she asserts that going on a business trip with a man who had previously assaulted her was a "twisted forced bargain." Response to Crowley's Motion at 2; Response to Blanco's Motion at 2.  Treminio maintains that she alleges a casual relationship between the thing of value and the sex act because Blanco and Crowley's employees made threats to Treminio's job.  See Response to Crowley's Motion at 3.  Treminio contends that, because of these threats, she went on the business trip despite reasonably fearing that she would be assaulted during the trip.  Id. at 2–3.

The TVPA defines a "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(e)(3) (emphasis added).  Courts have viewed the meaning of "anything of value" broadly.  See United States v. Raniere, 55 F.4th 354, 362 (2d Cir. 2022) ("Bearing in mind these textual clues, we conclude that, as it is used in Section 1591, the phrase 'anything of value' need not have a monetary or financial component."); United States v. Rivera, No. 6:12-CR-121-ORL-37, 2012 WL 6589526, at *5 (M.D. Fla. Dec. 18, 2012) (finding that ordination as a prophet was a thing of value), aff'd, 551 F. App'x 531 (11th Cir. 2014); David v. Weinstein

Co. LLC, 431 F. Supp. 3d 290, 303–04 (S.D.N.Y. 2019) (finding that a career opportunity is a thing of value).[2]

Here, Treminio alleges that she received several things of value: continued employment, relief from the threats that Crowley would give extremely negative feedback when contacted for references, and career advancement that would not have happened without the trip to Jacksonville. See Amended Complaint ¶¶ 31, 101, 111, 114, 126. Based on the allegations in the Amended Complaint, the Court cannot say that Treminio fails to plausibly allege that her receipt of these things of value was "on account of" Blanco's alleged rape. Treminio alleges Blanco selected her for the trip because of his plan to sexually assault her. See id. ¶¶ 104–05, 111, 126. Treminio further alleges that receiving continued employment motivated her to go on the trip despite her fear that Blanco would assault her. See id. ¶¶ 29–30, 37, 122. Blanco's alleged plan to use a business opportunity to lure Treminio into a vulnerable position where he could sexually assault her raises a reasonable inference that the things of value were received on account of the sex act. See Eckhart v. Fox News Network, LLC, No. 20-CV-5593 (RA), 2021 WL 4124616, at *3, *9 (S.D.N.Y. Sept. 9, 2021), on reconsideration in part, No. 20-CV-5593

---

[2] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

(RA), 2022 WL 4579121 (S.D.N.Y. Sept. 29, 2022); <u>David</u>, 431 F. Supp. 3d at 303–04, 305 n.5; <u>Roe v. Howard</u>, No. 1:16-CV-562, 2018 WL 284977, at *2 (E.D. Va. Jan. 3, 2018), <u>aff'd</u>, 917 F.3d 229 (4th Cir. 2019).

In addition, Treminio alleges that she received continued employment in exchange for staying silent about the sexual assault in El Salvador and the rape in Jacksonville. Amended Complaint ¶¶ 33, 50. This allegation appears to raise an inference of a causal relationship between the thing of value and the sex acts. <u>See</u> <u>Rivera</u>, 2012 WL 6589526, at *5 (finding that a thing of value was received on account of sex acts where the victim was told that she had to "keep her mouth shut" about the sex acts to receive the thing of value). Consequently, the Court is not convinced that Treminio has failed to plausibly allege a "commercial sex act." Because Blanco argued for the dismissal of Count I on this basis only, Blanco's Motion is due to be denied as to Count I.

## 2. **Principal Liability**

Crowley raises additional arguments in support of its contention that Count II should be dismissed. Crowley represents that it has found no authority for using <u>respondeat</u> <u>superior</u> to establish a corporation's liability for the actions of its employees under the TVPRA. <u>See</u> Crowley's Motion at 13. According to Crowley, even if a vicarious liability theory is viable under the statute, Treminio has not plausibly pled that Crowley is liable because she has not plausibly alleged that Crowley's agents are liable. <u>Id.</u> at 14. In her Response to Crowley's

Motion, Treminio contends that multiple Crowley employees, acting within the scope of their employment, assisted Blanco in forcing her into a commercial sex act.  Response to Crowley's Motion at 10–12.

Upon review of the relevant authority, the Court declines to find that the TVPRA precludes vicarious liability.  Indeed, "[w]hile the TVPRA is silent on the issue of indirect liability, numerous district courts have rejected the argument that the TVPRA does not permit agency liability."  J.L. v. Best W. Int'l, Inc., 521 F. Supp. 3d 1048, 1064–65 (D. Colo. 2021) (collecting cases); see A.B. v. Hilton Worldwide Holdings Inc., 484 F. Supp. 3d 921, 939 (D. Or. 2020); see also Meyer v. Holley, 537 U.S. 280, 285–86 (2003) ("[T]he Court has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules.").

In addition, the Court finds that Treminio has sufficiently alleged that Crowley's employees violated the TVPA.  Crowley argues that the allegations in the Amended Complaint do not show that Crowley's agents violated the TVPA because the allegations do not show that Crowley's employees knew that Blanco would "break into [Treminio's] hotel room, sexually assault her during their business trip to the United States, and that the assault would constitute a commercial sex act."  Crowley's Motion at 9–10.  In the Amended Complaint, however, Treminio alleges that Crowley employees knew that Blanco had

sexually assaulted women in his previous department and had recently sexually assaulted Treminio.  See Amended Complaint ¶ 117.  These allegations of sexual assaults permit the reasonable inference that Crowley knew that Blanco had committed sex acts using some level of force.  In addition, Treminio alleges that Crowley employees offered Treminio continued employment in exchange for her silence about the sex acts and for her travel to Jacksonville where she feared that she would again be subjected to an assault.  Id. ¶ 126.  These allegations are sufficient to raise a reasonable inference that Crowley knew or acted in reckless disregard of the fact that any future sex act would be commercial in nature because something of value was being given on account of the sex act.  Indeed, this inference is strengthened by Treminio's allegation that Lopez did, in fact, offer Treminio continued employment in exchange for silence about Blanco's rape in Jacksonville.  See id. ¶ 50.  Based on these allegations about Blanco, Najera, and Lopez's conduct, the Court finds that Treminio's allegations, taken as true, raise a reasonably plausible inference that Crowley knew or acted in reckless disregard of the fact that Blanco would use force to cause Treminio to engage in a commercial sex act.  See United States v. Townsend, 521 F. App'x 904, 907 (11th Cir. 2013) (per curiam) ("The jury could infer from [defendant's] prior use of force that he intended, and therefore knew,

that he would use it to make [the victims] engage in commercial sex.");[3] <u>United States v. Todd</u>, 627 F.3d 329, 333–34 (9th Cir. 2010) (holding that the evidence of the defendant's "established practice" allowed the jury reasonably to conclude that the defendant knew that "force, fraud, or coercion would be used" to cause the victims to engage in commercial sex); <u>David</u>, 431 F. Supp. 3d at 301 (finding that the plaintiff's allegations about the defendant's "pattern of doing the same with other women over decades" led to the "plausible inference" that the defendant "knew that force and fraud would be used to cause Plaintiff to engage in a commercial sex act").

Count II is not due to be dismissed because Treminio has at least stated a plausible claim that Crowley is liable as a principal for the alleged violation of the TVPA. The Court recognizes that Crowley also raises arguments about Treminio's allegations of venture liability under Count II. However, given the significant overlap in factual allegations between the principal liability theory and the venture, or beneficiary, liability theory, the Court is of the view that these arguments are best addressed at summary judgment on a more developed

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

factual record.  As such, Treminio may proceed under both theories of liability at this time.[4]  Consequently, Crowley's Motion as to Count II is due to be denied.

### B.    Count V (Labor Trafficking)

In Count V, Treminio alleges that Crowley obtained forced labor in violation of 18 U.S.C. § 1589 when it used threats of financial and reputational harm to force her to go on the business trip to Jacksonville.  See Amended Complaint ¶¶ 153–69.  Crowley argues that the complaint fails to plausibly allege that the business trip to Jacksonville was forced labor because the threat of termination was more of a legitimate warning than a threat of serious harm.  Crowley's Motion at 16.  Crowley asserts that the threats to give negative feedback about Treminio's character and job performance were not sufficiently serious to constitute a violation of § 1589 considering that Treminio was not being severely underpaid, confined, beaten, or threatened with something "objectively harmful" like a criminal action or deportation.  Id. at 16–17 (quoting Mallela v. Cogent Infotech Corp., No. 2:19-CV-1658-NR, 2020 WL 2541860, at *4 (W.D. Pa. May 19, 2020)).  In her Response to Crowley's Motion, Treminio argues that she alleges sufficiently serious harm: the threat of being fired,

---

[4]  While declining to discuss in detail Crowley's arguments concerning the venture liability claim at this time, the Court notes that Treminio likely does not need to allege that Crowley's venture with Blanco was primarily or solely engaged in sex trafficking or that Crowley benefitted specifically from the sex trafficking that occurred.  See Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 724–25 (11th Cir. 2021); id. at 729–30 (Jordan, J., concurring).

unemployable, and unable to provide for her child.  Response to Crowley's

Motion at 13.

> Under 18 U.S.C. § 1589,
>
> Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
> . . .
>> (2) by means of serious harm or threats of serious harm to that person or another person;
>> . . . or
>> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
>
> shall be punished . . . .

§ 1589(a); see § 1595 (establishing a civil cause of action).  The statute defines

"serious harm" as

> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

§ 1589(c)(2).

While a panel of the Eleventh Circuit has noted that a run-of-the-mill

threat of termination is not a threat of serious harm, see Roman v. Tyco Simplex

Grinnell, 732 F. App'x 813, 817 (11th Cir. 2018) (per curiam), Treminio has

alleged more here.  Treminio alleges that multiple Crowley employees (1)

threatened her with termination; (2) threatened her that Crowley "would make

it impossible for [her] to secure a new job at a different company" and would falsely provide "extremely negative feedback about [her] character and job performance" to any potential employers; and (3) specifically mentioned Treminio's circumstance as a single mother whose child would go hungry if she were unemployed.  Amended Complaint ¶¶ 24, 28, 30–31, 33.  Treminio further asserts that these threats were especially serious because she was a "young, single mother in a developing country where equivalent office jobs were extremely difficult to obtain."  Id. ¶ 167.  In addition, according to Treminio, Crowley employees made these threats while Treminio was "furious and afraid" and "shaken, confused, and terrified" after being sexually assaulted.  Id. ¶¶ 24, 29.  Although Treminio's allegations may not be as egregious as some cases brought under § 1589, the Court cannot say that her allegations fail to raise a plausible inference that she was threatened with harm that was "sufficiently serious, under all the surrounding circumstances, to compel a reasonable person" of her background and in her circumstances to perform labor or services.  § 1589(c)(2); see United States v. Dann, 652 F.3d 1160, 1171–73 (9th Cir. 2011) (finding that a reasonable juror could conclude that threats of severe financial harm, false accusations of theft, immigration consequences, and harm to children would have compelled a reasonable person in the victim's position to provide labor); Panwar v. Access Therapies, Inc., 975 F. Supp. 2d 948, 957–58 (S.D. Ind. 2013) (finding that the plaintiff plausibly alleged serious harm

when he faced being in debt $20,000 and having his visa revoked).  As such, the Court will deny Crowley's Motion as to Count V.[5]

### C.    Statute of Limitations

All of Treminio's state law claims are subject to a four-year statute of limitations.  See Fla. Stat. § 95.11(3)(a), (j), (o); Miranda v. Young, 19 So. 3d 1100, 1103 n.1 (Fla. 2d DCA 2009).  Under Florida law, "a statute of limitations period runs from the time the cause of action accrues.  'A cause of action accrues when the last element constituting the cause of action occurs.'  Put another way, the limitations period begins to run when the action 'may be brought.'"  City of Riviera Beach v. Reed, 987 So. 2d 168, 170 (Fla. 2d DCA 2008) (internal citations and quotations omitted); see also Fla. Stat. § 95.031(1); Lewis v. Asplundh Tree Expert Co., 305 F. App'x 623, 626–27 (11th Cir. 2008); Fla. Power & Light Co. v. Allis Chalmers Corp., 85 F.3d 1514, 1518 (11th Cir. 1996). Florida Statutes section 95.051(1) "delineates an exclusive list of conditions that can 'toll' the running of the statute of limitations."  Major League Baseball v.

---

[5] Crowley also argues that Count V is due to be dismissed because there are no allegations that Crowley "knowingly benefitted" from its participation in forced labor. Crowley's Motion at 18.  However, this argument is irrelevant because Treminio pleads that Crowley directly violated § 1589(a), not that Crowley benefited from participating in a venture in violation of § 1589(b).  See Amended Complaint ¶ 155.  To establish a violation of § 1589(a), Treminio must allege that Crowley obtained labor or services.  She does not need to plead that the labor or services actually benefited Crowley.  See § 1589(a).  Treminio alleges that she provided the labor and services of a week-long business trip to Jacksonville where she assisted with the implementation of a contract.  Amended Complaint ¶¶ 15, 159.

Morsani, 790 So. 2d 1071, 1075 (Fla. 2001);[6] see also Fla. Stat. § 95.051(2) ("A disability or other reason does not toll the running of any statute of limitations except those specified in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law.").  Thus, "in order for a doctrine to 'toll' the statute of limitations, it must be included in the exclusive list of conditions set forth in section 95.051(1)." HCA Health Servs. of Fla., Inc. v. Hillman, 906 So. 2d 1094, 1100 (Fla. 2d DCA 2004).

---

[6]  Specifically,

[t]he running of the time under any statute of limitations except ss. 95.281, 95.35, and 95.36, is tolled by:
(a) Absence from the state of the person to be sued.
(b) Use by the person to be sued of a false name that is unknown to the person entitled to sue so that process cannot be served on the person to be sued.
(c) Concealment in the state of the person to be sued so that process cannot be served on him or her.
(d) The adjudicated incapacity, before the cause of action accrued, of the person entitled to sue. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.
(e) Voluntary payments by the alleged father of the child in paternity actions during the time of the payments.
(f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.
(g) The pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action.
(h) The period of an intervening bankruptcy tolls the expiration period of a tax certificate under s. 197.482 and any proceeding or process under chapter 197.
(i) The minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue; except with respect to the statute of limitations for a claim for medical malpractice as provided in s. 95.11.  In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

Fla. Stat. § 95.051(1) (emphasis added).

The Eleventh Circuit Court of Appeals has explained that the statute of limitations is "an affirmative defense" that plaintiffs are "not required to negate" in their complaint. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845–46 (11th Cir. 2004) (quoting Tregenza v. Great Am. Comms. Co., 12 F.3d 717, 718 (7th Cir. 1993)). Thus, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." Id. (quoting Omar v. Lindsey, 334 F.3d 1246, 1251 (11th Cir. 2003)).

### 1. Count III (Sexual Battery) and Count IV (False Imprisonment)

Blanco argues that the statute of limitations bars Counts III (sexual battery) and IV (false imprisonment) of the Amended Complaint because Treminio did not commence this action within four years of the alleged rape. See Blanco's Motion at 3–4. In the Amended Complaint, Treminio alleges that "Blanco has remained in the country of El Salvador since November 10, 2017." Amended Complaint ¶ 146. Blanco argues that this allegation is untrue. Blanco's Motion at 4. But, because the Court must accept Treminio's factual allegations as true when ruling on a motion to dismiss, the Court finds that Treminio plausibly alleges that Blanco's absence from the state tolled the running of time under the statute of limitations. See Fla. Stat. § 95.051(1)(a). Therefore, Blanco's Motion is due to be denied as to Counts III and IV.

**2.      Count VI (Negligence) and Count VII (Negligent Supervision and Retention)**

Crowley argues that Counts VI (Negligence) and VII (Negligent Retention and Supervision) are barred by the statute of limitations.  Crowley's Motion at 18.  According to Crowley, Treminio's cause of action accrued on November 9, 2017, "at the time she suffered injury as a result of the alleged sexual assault." Id. at 19–20.  In her Response to Crowley's Motion, Treminio contends that Crowley engaged in tortious conduct from 2017 through 2021 and that, under the continuing tort doctrine, her cause of action did not accrue until the tortious conduct ceased.  Response to Crowley's Motion at 16.  In addition, Treminio argues that Crowley "is estopped from pursuing any argument that Plaintiff's claims are untimely due to its psychological manipulation and threats against the Plaintiff for years."  Id.  Finally, Treminio argues that dismissal would be improper because "the Court cannot determine that Plaintiff's negligence and negligent supervision/retention claims are not subject to statutory or equitable tolling."  Id. at 17.

In Counts VI and VII, Treminio alleges that Crowley's negligence caused her to be raped by Blanco on November 9, 2017.  See Amended Complaint ¶ 180 ("All or some of the above acts and/or omissions caused and/or contributed to the Plaintiff being raped by Crowley employee Juan Emilio Blanco."); id. ¶ 193 ("If Crowley had implemented reasonable and appropriate oversight, reporting,

and training procedures after learning of prior sexual misconduct, assault, and violence by Blanco in the workplace, toward one or more subordinates at Crowley, his sexual assault, battery, and rape of Mrs. Treminio would never have occurred."); id. ¶¶ 183, 199 ("As a result of Crowley's negligence, Plaintiff was raped in the workplace."). Thus, under the ordinary accrual rule, the limitations period began to run on November 9, 2017, when Treminio could have brought an action for the damages that she suffered as a result of the rape. See Reed, 987 So. 2d at 170. Because Treminio did not file this action within four years of November 9, 2017, her negligence claims are barred unless saved by a special accrual rule, equitable estoppel, or tolling. See Fla. Stat. § 95.11(3)(a).

When the continuing tort doctrine applies, "the cause of action accrues when the tortious conduct ceases." Effs v. Sony Pictures Home Ent., Inc., 197 So. 3d 1243, 1244 (Fla. 3d DCA 2016). Because of this modified accrual rule, the statute of limitations will not bar the entire claim, and "a plaintiff may recover damages for tortious acts committed within the limitations period prior to the filing of suit." Suarez v. City of Tampa, 987 So. 2d 681, 685 (Fla. 2d DCA 2008). Under Florida law, "[a] continuing tort is 'established by continual tortious acts, not by continual harmful effects from an original, completed act.'" Chakra 5, Inc. v. City of Miami Beach, 254 So. 3d 1056, 1065 (Fla. 3d DCA 2018) (quoting Effs, 197 So. 3d at 1245). "When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even

progressively worsening damages, does not present successive causes of action accruing because of a continuing tort." Id. (quoting Suarez, 987 So. 2d at 686). Indeed, a continuing tort is "perhaps best understood as a tort in which the wrong cannot be described as a discrete event." Id.; cf. Seaboard Air Line R. Co. v. Holt, 92 So. 2d 169, 170 (Fla. 1956) (per curiam) (finding the continuing tort doctrine to be applicable when the plaintiff was continually exposed to an unsafe condition at work). In Chakra 5, the plaintiffs alleged that the defendant had engaged in eleven different allegedly wrongful actions at various dates over the course of five years. See 254 So. 3d at 1060–61. Based on these allegations, the court found that the plaintiffs "have not alleged a continuing tort, but instead a series of discrete acts of varying kinds." Id. at 1065.

Here, the continuing tort doctrine does not save Treminio's negligence claims. In Counts VI and VII, all of the alleged breaches of the duty of care necessary to support a negligence claim occurred in 2017 and led to Blanco's alleged rape of Treminio in 2017. See Amended Complaint ¶¶ 173–74, 176, 190–91, 196 (alleging breaches of the duty of care); id. ¶¶ 11, 13–15, 20–36 (alleging that the various breaching actions occurred in 2017); id. ¶¶ 180, 183, 193, 199 (alleging that these breaches proximately caused Treminio to be raped). Thus, even if the continuing tort doctrine applied, Treminio's cause of action would still have accrued in 2017 when the last alleged breach occurred, and her action here would be time-barred.

Treminio asserts that she incorporates allegations about other negligent actions into Counts VI and VII and that she "was a repeat victim of Crowley's continual negligence from 2017 to 2021." Response to Crowley's Motion at 16. But the Court finds that she has not alleged similar tortious acts (such as retaining and failing to supervise a known sexual predator) that led to a similar injury (such as another sexual assault). Therefore, to the extent that any later negligent acts are properly incorporated into Counts VI and VII, the alleged acts are "a series of discrete acts of varying kinds" that do not warrant the application of the continuing tort doctrine.[7] Chakra 5, 254 So. 3d at 1065.

Treminio also argues that Crowley should be equitably estopped from asserting a statute of limitations defense. See Response to Crowley's Motion at 16. The Florida Supreme Court has instructed,

> The doctrine of estoppel is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury.

Major League Baseball, 790 So. 2d at 1076 (quoting State ex rel. Watson v. Gray, 48 So. 2d 84, 87–88 (Fla. 1950)). Consequently, "[e]quitable estoppel can

---

[7] The Court also notes that these allegations of later negligent acts would be the same as the allegations that support Treminio's claim for negligent infliction of emotional distress in Count X. See Amended Complaint ¶¶ 249–56. Thus, if in Counts VI and VII Treminio were seeking a recovery for Crowley's alleged negligence between 2018 and 2021, these counts would be due to be dismissed for the same reasons that the Court will dismiss Count X, as discussed below.

be raised to bar a defendant from unfairly claiming the benefit of the statute of limitations where a plaintiff can show that the defendant willfully induced the plaintiff to forego suit until after the limitations period has ended." Fox v. City of Pompano Beach, 984 So. 2d 664, 667 (Fla. 4th DCA 2008). To establish that estoppel is warranted, "the following elements must be shown: 1) a representation as to a material fact that is contrary to a later-asserted position; 2) reliance on that representation; and 3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." State Dep't of Revenue v. Anderson, 403 So. 2d 397, 400 (Fla. 1981); see United Auto. Ins. Co. v. Chiropractic Clinics of S. Fla., PL, 322 So. 3d 740, 743 (Fla. 3d DCA 2021). The Florida Fourth District Court of Appeal has instructed,

> The case law makes clear that an equitable estoppel claim raised in response to a statute of limitations defense must allege that the defendant acted with an intent to mislead or deceive the plaintiff into filing late, and that the plaintiff's failure to timely file is directly attributable to the defendant's misconduct.

Fox, 984 So. 2d at 667–68. As such, "[t]here can be no estoppel when the party seeking the estoppel was aware of the true facts and thus was not misled by the other party's conduct." Winans v. Weber, 979 So. 2d 269, 274–75 (Fla. 2d DCA 2007).

Here, Treminio has not alleged that Crowley misled her as to any material fact about whether she could or should file a lawsuit, asserted a position inconsistent to Crowley's position now, or otherwise lulled her into

foregoing filing within the statutory time period.  Relying on <u>Bianco v. Warner</u>, 562 F. Supp. 3d 526, 533–34 (C.D. Cal. 2021), Treminio argues that Crowley should be estopped from asserting the statute of limitations because of Crowley's threats to her.  <u>See</u> Response to Crowley's Motion at 16–17.  But Treminio has cited no authority, and the Court has found none, suggesting that Florida law recognizes this "estoppel by duress" theory when the plaintiff is aware of the true facts.  Moreover, even in jurisdictions that recognize this theory, the plaintiff must allege that the duress was continuous throughout the statutory period, which Treminio has not done.  <u>See</u> <u>Baye v. Diocese of Rapid City</u>, 630 F.3d 757, 762 (8th Cir. 2011); <u>Overall v. Estate of Klotz</u>, 52 F.3d 398, 404 (2d Cir. 1995); <u>One Star v. Sisters of St. Francis</u>, 2008 S.D. 55, ¶¶ 36–37, 752 N.W.2d 668, 683.   Indeed, Treminio does not allege that Crowley continuously threatened her throughout the four years following the alleged rape; she asserts only that Lopez threatened her the day after the rape and that LaMoureaux implicitly threatened her on one occasion sometime later.  <u>See</u> Amended Complaint ¶¶ 50, 71–72.  To the extent that Treminio was threatened, she was threatened with the loss of her job.  <u>See</u> <u>id.</u> ¶¶ 70–72.  Notably, Treminio lost her job in January 2021, <u>id.</u> ¶¶ 91–92, and she has not alleged that Crowley engaged in wrongful conduct that kept her from filing a suit between her termination and the expiration of the limitations period in November 2021.

Therefore, Treminio has not plausibly alleged that equitable estoppel bars Crowley from asserting the statute of limitations.

Finally, to the extent that Treminio argues that statutory or equitable tolling may apply, she has not pointed to any allegations in the Amended Complaint that would support a reasonable inference that tolling may be available. None of the allegations suggest that one of the provisions of section 95.051(1) of the Florida Statutes could apply as to the claims against Crowley. In addition, because section 95.051 "delineates an exclusive list of conditions that can 'toll' the running of the statute of limitations," Major League Baseball, 790 So. 2d at 1075, the Florida Supreme Court likely would not permit equitable tolling in this kind of civil action. See Hillman, 906 So. 2d at 1099. For all of these reasons, Counts VI and VII are due to be dismissed as barred by the statute of limitations, and the Court will grant Crowley's Motion as to these two counts.

### D.   Count VIII (Negligent Misrepresentation)

In Count VIII, Treminio asserts a claim for negligent misrepresentation against Crowley. See Amended Complaint ¶¶ 200–23. Specifically, Treminio asserts that "[a]t all material times, Crowley stated that it maintained a safe workplace" and that, after she reported being raped to LaMoureaux, he assured her "that Crowley maintained a safe workplace and that harassment was not tolerated." Id. ¶¶ 203, 205. Treminio also alleges that several public

statements "show, in part, the extent of Crowley's misrepresentations" about how the company follows the law, is committed to providing a harassment-free workplace, supports women, and encourages employees to share their ideas with their peers and leaders. Id. ¶ 209.

Crowley argues that the Court should dismiss Count VIII because Treminio fails to adequately allege the misrepresentation of a material fact, justifiable reliance on such a misrepresentation, and damages resulting from the misrepresentation. See Crowley's Motion at 22–27. First, Crowley asserts that the alleged misrepresentations are "at most . . . opinions and/or promises of future action," not misrepresentations of material fact. Id. at 24. Next, Crowley maintains that Treminio could not justifiably rely on Crowley's promises to obey the law, especially in light of Treminio's allegations about Crowley's wrongful conduct. Id. at 26. Finally, Crowley contends that Treminio's alleged injury is her termination and that the termination was not caused by Treminio's alleged reliance on Crowley's misrepresentations. Id. at 27. In her Response to Crowley's Motion, Treminio argues that her allegations are sufficient to state a claim for negligent misrepresentation because her allegations are similar to those found to be sufficient in Doe v. Grand Villa of New Port Richey, 540 F. Supp. 3d 1168 (M.D. Fla. 2021). See Response to Crowley's Motion at 18–19.

Under Florida law, a claim for negligent misrepresentation requires:

> (1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.

Gilchrist Timber Co. v. ITT Rayonier, Inc., 127 F.3d 1390, 1393–94 (11th Cir. 1997) (quoting Baggett v. Electricians Local 915 Credit Union, 620 So. 2d 784, 786 (Fla. 2d DCA 1993)); see also Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc., 607 F.3d 742, 747 (11th Cir. 2010).  "Generally, the false statement of material fact necessary to establish fraud must concern a past or existing fact."  Prieto v. Smook, Inc., 97 So. 3d 916, 917–18 (Fla. 4th DCA 2012).  In addition, "an unspecific and false statement of opinion such as occurs in puffing generally cannot constitute fraud."  Cavic v. Grand Bahama Dev. Co., Ltd., 701 F.2d 879, 883 (11th Cir. 1983).

Here, most, if not all, of Crowley's alleged statements are not misrepresentations of material facts.  Several of the statements are unspecific opinions and puffing that cannot form the basis of a misrepresentation claim. See Amended Complaint ¶ 209.a. ("We go beyond to protect our employees and our environment.  We leverage our diversity of people and ideas.  We treat everyone as we would want to be treated ourselves.").  In addition, for at least one of the statements, Treminio has not plausibly alleged that the statement was untrue.  See id. ¶ 209.d. ("'I encourage all employees to think about how

their knowledge, background and experiences can contribute to Crowley's success and encourage them to share their ideas with their peers and leaders of this organization.' <u>Tom Crowley Jr.</u>, Chairman and CEO." (emphasis added)).

Even if statements that Crowley obeys the law, maintains a safe workplace, and does not tolerate harassment are sufficiently concrete to form the basis of a misrepresentation claim, the Court finds that Treminio does not plausibly allege that she justifiably relied on those statements.  In a conclusory fashion, Treminio alleges that she "relied on Crowley's statement in accepting[8] and continuing employment with Crowley" and that she "justifiably relied on Crowley's false statements to her detriment."  <u>Id.</u> ¶¶ 206, 214.  On their own, these allegations do not raise an inference of justifiable reliance.[9]  <u>See</u> <u>Roberts v. Rayonier, Inc.</u>, 135 F. App'x 351, 361–62 (11th Cir. 2005) (per curiam) ("The general statement in a policy manual of an intent to follow the law does not create any new, specific expectations based upon which it would be reasonable for an employee to change positions.").  In addition, Treminio's conclusory

---

[8] Treminio does not allege that Crowley made any of these statements before she accepted employment with Crowley.  Rather, she specifically alleges that Crowley made statements <u>after</u> Blanco attacked her.  <u>See</u> Amended Complaint ¶ 223 ("[Treminio] was lured into a false sense of trust <u>following her rape</u> in the workplace." (emphasis added)).

[9] Treminio cannot have relied on one of the statements, a comment made by Stephanie Johnson, as it appears that this statement was published after Crowley terminated Treminio.  <u>See</u> Amended Complaint ¶ 209.c. (citing a press release dated November 1, 2021); <u>Foreline Sec. Corp. v. Scott</u>, 871 So. 2d 906, 910 (Fla. 5th DCA 2004) ("In order to prevail, [plaintiff] must have known about and relied upon a misrepresentation of fact; she cannot rely on any statement . . . about which she had no knowledge.").  Notably, Treminio does not actually allege that she saw any of the public statements while she worked at Crowley.

allegations are insufficient when placed alongside her specific factual allegations.  In the paragraphs incorporated into Count VIII, Treminio asserts that Crowley and LaMoureaux made their statements after her supervisor Blanco had raped her and harassed her and others in her office, Najera had intimidated her into not pursuing a claim against Blanco, and Crowley employees in Jacksonville had threatened her into not pursuing a human resources complaint or a police investigation.  Amended Complaint ¶¶ 12–14, 23, 25, 43, 49–50, 53, 200.  Treminio also alleges that even LaMoureaux, the Crowley employee who told her that Crowley maintains a safe workplace and does not tolerate harassment, "intimidated Mrs. Treminio not to file a complaint with Human Resources."  Id. ¶ 218.  Accepting these specific factual allegations as true, the Court finds that Treminio has not plausibly alleged that she justifiably relied on the alleged representations that Crowley follows the law, maintains a safe workplace, and does not tolerate harassment.

The Court further notes that Treminio's reliance on Doe is misplaced.  In Doe, the court analyzed whether the plaintiff's allegations met the heightened pleading requirements of Rule 9.  See 540 F. Supp. 3d at 1174.  Unlike the undersigned, the court in Doe did not have to analyze whether the plaintiff's allegations were sufficiently pled to state a plausible claim under Florida law.  Therefore, Treminio's reliance on Doe is unavailing.  As such, the Court finds that Count VIII is due to be dismissed.

### E.    Count IX (Intentional Infliction of Emotional Distress)

In Count IX, Treminio asserts a claim of intentional infliction of emotional distress against Crowley.    Treminio maintains that Crowley threatened her with the loss of her job if she talked about her rape or filed a complaint with human resources.    Amended Complaint ¶¶ 228–30.    Treminio also asserts that Crowley ended up firing her because she was seeking psychological treatment and talking about her rape during the treatment.    Id. ¶ 232.    According to Treminio, Crowley offered her $600 to sign a settlement and confidentiality agreement, id. ¶ 233, and withheld her final paycheck because she would not do so, id. ¶ 235.    Finally, Treminio alleges that Crowley's lawyers threatened her with legal action for posting on social media about her rape.    Id. ¶ 96, 238.    Treminio asserts that Crowley's retaliatory conduct, withholding of her final paycheck, coercion to stay silent about being raped, and badgering and threats to take down her private social media posts were outrageous.    Id. ¶¶ 240–43.

Crowley argues that this claim should be dismissed because Treminio's allegations do not "rise to the level of being 'outrageous' behavior."    Crowley's Motion at 28.[10]    Crowley maintains that the "touchstone" of viable claims of

---

[10]    Crowley also contends that the alleged acts of LaMoureaux cannot support the intentional infliction of emotional distress claim because they are time-barred.    See Crowley's Motion at 27.    However, the dates of LaMoureaux's conversations with Treminio are not apparent from the face of the Amended Complaint.    Therefore, the Court cannot determine that a claim based on LaMoureaux's statements would be barred by the statute of limitations.

intentional infliction of emotional distress in the workplace is "repeated verbal abuse coupled with repeated offensive physical contact." Id. at 29 (quoting Johnson v. Thigpen, 788 So. 2d 410, 412 (Fla. 1st DCA 2001)). In her Response to Crowley's Motion, Treminio argues that she has adequately pled outrageous conduct because she alleges repeated verbal abuse and threats combined with Blanco's sexual assaults. Response to Crowley's Motion at 19–20.

In order to state a claim for intentional infliction of emotional distress under Florida law, Treminio must allege: "(1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." Hart v. United States, 894 F.2d 1539, 1548 (11th Cir. 1990) (citing Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278 (Fla. 1985)). The outrageous conduct element of an intentional infliction of emotional distress claim can only be met by conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Metro. Life Ins. Co., 467 So. 2d at 278–79 (quoting Restatement (Second) of Torts § 46 Comment (d) (1965)). "When reviewing the sufficiency of the complaint to state a cause of action, the trial court must determine in the first instance whether the alleged conduct was extreme and outrageous enough to permit recovery." McAlpin v. Sokolay, 596 So. 2d 1266, 1269 (Fla. 5th DCA 1992). Further, "[a] privilege exists as a matter

of law to engage in reckless or even outrageous conduct if there is sufficient evidence that shows the defendant 'did no more than assert legal rights in a legally permissible way.'" Canto v. J.B. Ivey & Co., 595 So. 2d 1025, 1028 (Fla. 1st DCA 1992) (quoting Metro. Life Ins. Co., 467 So. 2d at 279).

A review of Florida case law, as well as cases in this Circuit applying Florida law, reveals that "[t]he standard for 'outrageous conduct' is particularly high in Florida." Clemente v. Horne, 707 So. 2d 865, 867 (Fla. 3d DCA 1998) (quoting Patterson v. Downtown Med. & Diagnostic Ctr., Inc., 866 F. Supp. 1379, 1383 (M.D. Fla. 1994)); Foreman v. City of Port St. Lucie, 294 F. App'x 554, 557 (11th Cir. 2008); see also Golden v. Complete Holdings, Inc., 818 F. Supp. 1495, 1499 (M.D. Fla. 1993) ("Although there is no definitive example of what constitutes 'outrageous conduct' for the purposes of maintaining a cause of action for intentional infliction of emotional distress, Florida case law on the subject has evidenced a comparatively high standard."). And, "Florida and federal courts are generally reluctant to recognize outrageous conduct in the employment context." Khan v. Rundle, No. 05-23123-CIV, 2006 WL 8433501, at *2 (S.D. Fla. Apr. 28, 2006) (quoting Paraohao v. Bankers Club, Inc., 225 F. Supp. 2d 1353, 1361 (S.D. Fla. 2002)), aff'd sub nom. Khan v. Fernandez-Rundle, 287 F. App'x 50 (11th Cir. 2007); Johnson, 788 So. 2d at 413 (observing that Florida courts "have been hesitant to find sufficiently outrageous conduct based solely on alleged acts of verbal abuse in the workplace"). Applying Florida

law, the Court finds that Treminio's allegations are not sufficiently outrageous to state a claim for intentional infliction of emotional distress.

Treminio contends that her claim is viable because Blanco's assaults constituted repeated offensive physical contact. <u>See</u> Response to Crowley's Motion at 19–20. In support of this argument, Treminio cites <u>Drury v. Volusia County</u>, where the court found that assisting a child abuser and failing to report the sexual abuse of a child were outrageous. <u>See</u> No. 6:10-CV-1176-ORL-28, 2011 WL 1625042, at *10–11 (M.D. Fla. Apr. 28, 2011). However, as discussed above, any claim against Crowley based on Blanco's sexual assaults is barred by the statute of limitations. With regard to the timeframe relevant here because of the statute of limitations, Treminio does not allege that Crowley helped Blanco to assault her. Rather, based on the allegations, it appears that Crowley fired Blanco. <u>See</u> Amended Complaint ¶ 66. Thus, <u>Drury</u> is not helpful to her argument.

Treminio's remaining allegations do not meet the "particularly high" standard for outrageous conduct in Florida. <u>Clemente</u>, 707 So. 2d at 867. First, Treminio alleges that LaMoureaux implicitly threatened that she could lose her job if her story became public. <u>See</u> Amended Complaint ¶¶ 70–72, 230. Relatedly, she asserts that Crowley fired her for seeking psychological treatment. <u>Id.</u> ¶ 232. Courts in Florida have found that threatening to fire a plaintiff, terminating a plaintiff for unlawful reasons, and otherwise taking

retaliatory action for an employee's protected activities are not outrageous.  See Khan, 2006 WL 8433501, at *2–3 (finding that the plaintiff's termination was not outrageous despite plaintiff's allegations about the immoral and illegal reasons for his termination); Johnson v. Knupp, No. 5:99-CV-50-OC-10C, 2000 WL 1238976, at *3–4 (M.D. Fla. Mar. 28, 2000) (finding that the plaintiff failed to state a claim when the plaintiff alleged that "the Defendant discriminated against her on the basis of sex, fired her in retaliation for protected activity, and subjected her to arbitrary discipline").  Indeed, courts have been reluctant to find even the most horrendous verbal abuse in the workplace to be sufficiently outrageous on its own.  See Williams v. Worldwide Flight SVCS., Inc., 877 So. 2d 869, 870–71 (Fla. 3d DCA 2004) (per curiam) (finding that conduct was not sufficiently outrageous to state a claim when supervisors and coworkers repeatedly called the plaintiff racial epithets, created a false disciplinary record, falsely accused the plaintiff of stealing, repeatedly threatened the plaintiff with job termination, and directed the plaintiff to perform dangerous tasks); Lay v. Roux Labs., Inc., 379 So. 2d 451, 452 (Fla. 1st DCA 1980) (per curiam) (finding that threatening the plaintiff with the loss of her job and using "humiliating language, vicious verbal attacks, [and] racial epithets" were not sufficiently outrageous).

Moreover, while Treminio alleges that Crowley wrongly withheld her final paycheck, Amended Complaint ¶ 235, this action does not rise to the level

of outrageousness required under Florida law.  See Vamper v. United Parcel Serv., Inc., 14 F. Supp. 2d 1301, 1306–07 (S.D. Fla. 1998) (finding that the plaintiff had not alleged outrageous conduct where the plaintiff asserted that the defendants failed to give him "pay and bonuses other drivers received," "fabricated a reckless driving charge," referred to the plaintiff with a racial epithet, "unjustifiably suspended and demoted" him, and struck him on the ankle); Golden, 818 F. Supp. at 1499–1500 (finding that allegations that the defendant had "terminated Plaintiff [without warning] despite his satisfactory performance, systematically eliminated older employees, . . . and refused for months to pay Plaintiff severance pay and other entitlements" were insufficient to state a cause of action for intentional infliction of emotional distress).  Next, the Court finds that, while offering $600 in exchange for signing a settlement and confidentiality agreement may be reprehensible under the circumstances alleged here, Amended Complaint ¶ 233, Treminio does not plausibly allege that it goes "beyond all possible bounds of decency." Metro. Life Ins. Co., 467 So. 2d at 278–79.  Finally, with regard to Crowley's threats of legal action in response to Treminio's social media posts, Amended Complaint ¶ 238, Treminio does not allege specific facts showing that these threats were outrageous or that the conduct was repeated and harassing.  See McGinity v. Tracfone Wireless, Inc., 5 F. Supp. 3d 1337, 1339, 1341–42 (M.D. Fla. 2014) (finding that the defendant's approximately 6,000 phone calls to the plaintiff within two months

and repeated threats to kill plaintiff and her whole family, with detail about how he would kill her, were not sufficiently outrageous to form the basis of an intentional infliction of emotional distress claim when there were "no allegations of physical contact, and the threats came over the phone from someone whom Plaintiff believed was located in another country"). Even considered all together, Crowley's alleged conduct does not rise to the high level of outrageousness required under Florida law. As a consequence, Crowley's Motion is due to be granted as to Count IX.

### F.     Count X (Negligent Infliction of Emotional Distress)

In Count X, Treminio alleges that Crowley negligently inflicted emotional distress upon her by its actions after the rape. See id. ¶¶ 250, 257–58, 260 ("On or about January 2021, Plaintiff suffered severe emotional distress from being subjected to threats and intimidation by Crowley after she was raped by her supervisor on a business trip in Jacksonville, Florida, bullied into keeping quiet about the ordeal, and fired."). Specifically, Treminio asserts that

> Crowley and LaMoureaux intimidated Mrs. Treminio not to file a complaint with Human Resources and suggested to Mrs. Treminio that maintaining Crowley's image was crucial to her continued job security.
> . . .
> Crowley offered Mrs. Treminio $600 to sign a settlement and confidentiality agreement agreeing to keep quiet about the sexual misconduct, assault, and violence in the workplace and to waive her right to sue Crowley.
> . . .

> Crowley withheld her last paycheck unless she signed Crowley's settlement and confidentiality agreement.
>
> . . .
>
> Mrs. Treminio received written threats and harassing messages from Crowley's counsel which further traumatized and intimidated Mrs. Treminio.

Id. ¶¶ 249, 251, 253, 255.

Crowley argues that Count X should be dismissed because Treminio has not alleged a physical impact (other than the sexual assaults which are outside of the statute of limitations period) or a serious physical injury. See Crowley's Motion at 30. In her Response to Crowley's Motion, Treminio argues that she has alleged a physical impact because of the sexual assault and rape and that she can recover damages for later actions through the "continuing tort doctrine theory." Response to Crowley's Motion at 20–21.

In cases in which a plaintiff seeks damages for mental pain and anguish, Florida recognizes the "impact rule." Willis v. Gami Golden Glades, LLC, 967 So. 2d 846, 850 (Fla. 2007) (per curiam). Because of this rule, "[i]f the plaintiff has suffered an impact, Florida courts permit recovery for emotional distress stemming from the incident during which the impact occurred, and not merely the impact itself." Id. (emphasis added) (quoting Eagle–Picher Industries, Inc. v. Cox, 481 So. 2d 517, 526 (Fla. 3d DCA 1985)). However, if the plaintiff did not experience an impact, then the plaintiff's mental distress "must be 'manifested by physical injury,' the plaintiff must be 'involved' in the incident

by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical impairment 'within a short time' of the incident." Id. (quoting Eagle–Picher Industries, 481 So. 2d at 526).   While the Florida Supreme Court has recognized exceptions to this rule, the exceptions "have been narrowly created and defined in a certain very narrow class of cases." Rowell v. Holt, 850 So. 2d 474, 478 (Fla. 2003).

Treminio does not assert that she suffered a physical injury as the result of witnessing something traumatic happen to another.  She also does not argue that an exception to the impact rule applies.  Rather, she maintains that she has stated a claim against Crowley because she suffered a physical impact when Blanco raped her.  Response to Crowley's Motion at 20–21.  However, for the reasons discussed above, recovery for the emotional distress resulting from the rape is barred by the statute of limitations.  Contrary to Treminio's argument, the continuing tort doctrine does not apply because Treminio has alleged "a series of discrete acts of varying kinds," not a continuing tort. Chakra 5, 254 So. 3d at 1065.  None of Crowley's alleged actions after the rape resulted in a physical impact. See Amended Complaint ¶¶ 249, 251, 253, 255.  Because Treminio has not alleged that a physical impact occurred within the limitations period, that she suffered a physical injury after witnessing a traumatic event,

or that an exception to the impact rule applies, the Court will dismiss her claim for negligent infliction of emotional distress in Count X.

## IV.   Conclusion

Having reviewed the arguments, the allegations in the Amended Complaint, and the law, the Court finds that Blanco's Motion is due to be denied, and Crowley's Motion is due to be denied, in part, and granted, in part. As such, the Court will not dismiss Counts I–V.  However, the Court will dismiss Counts VI–X of the Amended Complaint.  Accordingly, it is

**ORDERED:**

1.   Defendant Juan Emilio Blanco's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 31) is **DENIED**.

2.   Defendant Crowley Maritime Corporation's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 18) is **GRANTED, in part**, and **DENIED, in part**.

   A.   The Motion is **GRANTED** to the extent that the Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action in the Amended Complaint (Doc. 14) are **DISMISSED**.

B.     Otherwise, the Motion is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, on January 5, 2023.

MARCIA MORALES HOWARD
United States District Judge

lc30
Copies to:

Counsel of Record
Pro Se Parties