UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VANESSA TREMINIO,

    *Plaintiff*,

v.                        CASE NO.: 3:22-cv-174-MMH-PDB

CROWLEY MARITIME CORPORATION,
and JUAN EMILIO BLANCO,

    *Defendants*.
_____/

## PLAINTIFF'S MOTION TO COMPEL

Pursuant to Rule 37(a)(3)(B)(iv), Plaintiff Vanessa Treminio ("Treminio" or "Plaintiff"), moves for entry of an Order overruling Defendant's Crowley Maritime Corporation ("Crowley" or "Defendant") objections to **Interrogatories Nos. 8(a) and 13** ("Interrogatories") and **Request No. 41 of Plaintiff's First Request for Production and Request No. 2 of Plaintiff's Fifth Request for Production** ("Requests"), requiring a complete response to the Interrogatories, compelling the production of all non-privileged documents responsive to the Requests, awarding Plaintiff the fees incurred in bringing this Motion, and granting all further relief the Court deems just and proper.

## FACTS AND PROCEDURAL HISTORY

Treminio has sued Crowley for sex trafficking and forced labor under the Trafficking Victims Protection Act 18 U.S.C. § 1595, which provides for a civil

action against the "perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)" *i.e.*, for violations of 18 U.S.C. Chapter 77. 18 U.S.C. § 1581 *et seq. See* DE 14. As she alleges, after her supervisor Defendant Juan Emilio Blanco ("Blanco") harassed, assaulted, and ultimately raped her during a business trip, Crowley's Human Resources manager Jacqueline Najera ("Najera") and Blanco's immediate supervisor Jose Lopez ("Lopez") forced her to remain silent and continue working for Crowley. DE 14, ¶¶ 14, 21, 24-32, 49-50.

Crowley contends it "did not have actual or constructive knowledge" of its employees' acts or omissions, which it claims "were outside the scope of their employment and the individuals' alleged conduct was not ratified by Crowley." Crowley's Affirmative Defenses Nos. 1 and 7, DE 38, pp. 12, 14. Crowley also asserts it "maintains a well-publicized policy and practice prohibiting the conduct alleged by Plaintiff, which policy is communicated, distributed, and enforced"; and that the "good faith efforts of Crowley to follow the laws, and to inform and train managers and employees regarding such laws, prevents Plaintiff from recovering punitive damages . . . ." Crowley's Affirmative Defense No. 19, DE 38, p. 16.

Because Crowley insists it neither knew nor ratified the actions of its employees, Treminio is entitled to learn what Crowley knew, what it should have known if it had been exercising reasonable care, and what it did upon learning of these events. Crowley's defenses also entitle Treminio to conduct discovery as to what Crowley did and learned regarding sexual abuse and exploitation in the workplace and the policies and compliance programs in effect during Blanco, Najera, and Lopez's employment.

A few documents produced to date—which relate to Crowley's investigation into Blanco—shed light on his inappropriate conduct and Crowley's inaction in response to employee complaints. *See* Ex. 1. Treminio is entitled to discover when Crowley first knew of these actions and the culture that allowed Blanco to continue sexual misconduct in the workplace.

- Female staff reported that Juan Blanco makes inappropriate jokes and sexual comments. They were very explicit on the comments he makes to them. They feel offended and harassed. They have been afraid of losing their jobs. Two mentioned that this was reported to local HR.
- Several people reported that Luis Santamaria was bullied by Juan Blanco. Luis was the only person I couldn't talk to since he was on vacation and not reachable. They said that Luis is constantly offended by Juan Blanco's comments.
- Part of the group have the perception that Jose Lopez (Juan Blanco's Supervisor) might be aware of some of the situations, but not of all and they don't feel he will take actions with Juan Blanco since they are very close.
- Employees under PIP process reported that follow up sessions were not done as established in the PIP and that information has been manipulated to make them look as underperformers employees.

> Here are some of the literal comments and inappropriate things he has told the employees:
>
> Referring to other co-workers:
> - Nicknames of Pornstars, he said: "she looks like a pornstar"
> - He calls Carla Seran "Fuck face"
> - He frequently said on Friday, for all of you is "Viernes de Puterias" – referring to "For you today is Slutty Friday"
> - When one of them was with a sick-leave, when she returned, he said
> - "your illness might be part of a "prohibit illness"
> - Other girl got flowers from her boyfriend and he said: "Prepare your throat for tonight, you have to pay the price of those flowers"
> - When one of them came with a ponytail, he said: "I am sure you like it that way and your boyfriend too, it's easier to grab you"
> - He also has mentioned that boyfriends like to put their girls on their knees.

To avoid critical discovery, Crowley relies on generalized, boilerplate relevance and proportionality objections. Exs. 2-3. It has unilaterally decided to limit discovery to the policies and procedures in effect at the time Blanco allegedly raped Treminio and has refused to disclose similar incidents of sexual harassment and sexual assault occurring *after* the date alleged in the Complaint.

## APPLICABLE LAW

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses."

4

*Schwanke v. JB Med. Mgmt. Sols., Inc.*, 5:16-cv-597-OC-30PRL, 2017 WL 3034039, at *5–6 (M.D. Fla. July 18, 2017).

A party objecting to discovery must "state with specificity the grounds for objecting to the request, including the reasons". *Dejesus v. CIGNA Corp.*, 6:17–cv–1208–Orl–41TBS, 2017 WL 6536579, at *4 (M.D. Fla. Dec. 21, 2017); *see e.g., Millennium Labs., Inc. v. Am. Clinical Sols., LLC*, 6:11-cv-1299-Orl-36DAB, 2012 WL 13103116, at *1 (M.D. Fla. July 13, 2012)("To even merit consideration, 'an objection must show specifically how a discovery request is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden.'"); *Liberty Int'l Underwriters v. Landstar Ranger, Inc.*, 3:08-CV-1079-J-25JRK, 2009 WL 10670944, at *3 (M.D. Fla. Aug. 10, 2009) (overruling proportionality objection where objecting party made no showing as to why responding to an interrogatory would be "burdensome or expensive" and "provided no information with respect to the volume of information it would have to provide or the expense that would be incurred to provide it") (*citing Coker v. Duke & Co.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998) (stating that "a party seeking to avoid discovery on a burdensomeness argument must substantiate that position with detailed affidavits or other evidence establishing an undue burden").

When faced with improper objections, a party may move to compel discovery pursuant to Federal Rule of Civil Procedure 37(a). Fed. R. Civ. P.

37(a)(1), (3). Generally, "[t]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Bright v. Frix*, 8:12-CV-1163-T-35MAP, 2016 WL 1011441, at *1 (M.D. Fla. Jan. 22, 2016). "When the discovery sought appears relevant on its face, the party resisting it must show the lack of relevance by demonstrating that it: (1) does not come within the broad scope of relevance as defined under discovery rule; or (2) is of such marginal relevance that the potential harm the discovery may cause would outweigh the presumption in favor of broad disclosure." *Yergey v. Brinker Florida, Inc.*, 6:20-cv-917-Orl-37LRH, 2020 WL 10817752, at *1 (M.D. Fla. Dec. 9, 2020).

## ARGUMENT

### I. EVIDENCE OF SIMILAR INCIDENTS IS DISCOVERABLE.

Interrogatories Nos. 8(a) and 13 and Request for Production No. 41 ask for evidence of other instances of sexual harassment and abuse:

> **INTERROGATORY NO. 8(a):**
> Please identify each and every report or statement made by Crowley regarding the facts of Plaintiffs allegations of:
> a. sexual harassment or other sexual misconduct committed by Juan Emilio Blanco in El Salvador or in Jacksonville;
>
> **INTERROGATORY NO. 13:** Please list any and all complaints of workplace sexual harassment, sexual assault, sexual abuse, sexual misconduct, and/or rape by employees, officers, or directors of "Crowley and all entities affiliated therewith" for the three-year period of time prior to November 2017 and for the one year time period following November 2017. For each such complaint, please list the following: (a) the date of the alleged incident; (b) the name of the alleged assaulter; (c) the alleged victim; (d) a brief description of

the alleged incident; and, (e) any actions taken in response. Complaints include verbal complaints, written complaints, lawsuits, agency filings, and any other means by which employees have complained about sexual assault.

**1st REQUEST FOR PRODUCTION NO. 41:** Any and all complaints of sexual assault or rape at "Crowley and all entities affiliated therewith," from the time Juan Blanco was hired through the present.

**5th REQUEST FOR PRODUCTION NO. 2:** Complete contents of former Crowley Vice President of Internal Audit, Ethics, and Compliance Arthur LaMoureaux's e-mail account, including but not limited to all sent, received, deleted, and draft messages, from November 1, 2017 through February 1, 2018.

Crowley failed to provide complete responses and asserted, without justification, that "[a]ny allegations of sexual harassment or sexual misconduct by Defendant Blanco that purportedly occurred after the alleged encounter between Plaintiff and Defendant Blanco on November 9 or 10, 2017 are not relevant to Plaintiff's claims or the defenses in this case. Plaintiff alleges sex trafficking (Count II) against Crowley, which requires Crowley to have "knowingly benefitted from participation in the venture." Therefore, allegations of sexual harassment or sexual misconduct occurring after the alleged events in November 2017 are not relevant to the claims or defenses in this matter.

Plaintiff requests a ruling that allegations of sexual harassment or sexual misconduct occurring after the alleged events in November 2017 are not irrelevant to the claims or defenses in this matter. Therefore, Crowley should be compelled to provide a full and complete response.

7

With regard to Arthur LaMoureaux's emails during the requested four-month period, Crowley has refused to produce any responsive documents, and asserted an unsubstantiated objection that the request is supposedly overly broad, unduly burdensome, not relevant as defined by Rule 26, Federal Rules of Civil Procedure, and purportedly not proportional to the needs of this case. Crowley also objects to producing information that is protected by the attorney client privilege or work product doctrine.

Separately, in sworn responses to other interrogatories, Crowley has stated:

> Therefore, from the time of the alleged sexual assault until the time Defendant Blanco was terminated, there is one individual, Arthur LaMoureaux, c/o Alexander DeGance Barnett P.A., who became aware of Plaintiff's allegation that she was sexually assaulted by Defendant Blanco while on a trip to Jacksonville. Plaintiff disclosed this information to Mr. LaMoureaux in or around December 2017 or January 2018 and asked him to keep it confidential and not to disclose it to Human Resources.

Crowley's sworn Response to Interrogatory No. 10. Crowley's position is that Crowley did not investigate Treminio's allegations that she was raped by her supervisor, even though it was a violation of company policy, because Ms. Treminio supposedly asked Mr. LaMoureaux to keep it confidential and not to disclose it to Human Resources. In the Amended Complaint, Plaintiff alleges that Mr. LaMoureaux did, in fact, conduct an investigation and confirm the veracity of Plaintiff's claims. Am. Compl., DE 14 ¶¶63-73. Plaintiff now reasonably requests Mr. LaMoureaux's emails for the four-month period following the alleged rape

8

because these emails are relevant and probative of the allegations in the complaint. They would also be probative of what Crowley knew or should have known and of Crowley's coverups.

> A. *Evidence of similar incidents is relevant and probative of Vanessa's sex trafficking and forced labor claim and Crowley's actual or constructive knowledge.*

Evidence of similar incidents, including Crowley's response, bears on a critical element of Treminio's sex trafficking claim and which Crowley denies: that Crowley "knew or should have known" of the sex trafficking. 18 U.S.C.A. § 1595 (a). "The phrase 'knew or should have known,' echoes common language used in describing an objective standard of negligence." *A.B. v. Marriott Int'l, Inc.*, No. 19-CV-5770, 2020 WL 3642485, at *3 (E.D. Pa. July 6, 2020). "Section 1595 'opened the door for liability against facilitators who did not directly traffic the victim, but benefitted from what the facilitator should have known was a trafficking venture.'" *Id.*

The Eleventh Circuit has recently defined the knowledge element in a Section 1595 claim:

> the defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA as to the plaintiff. Section 1595(a) requires that the defendant "knew or should have known [that the venture] has engaged in an act in violation of this chapter." Knowledge requires "[a]n awareness or understanding of a fact or circumstance." *Knowledge,* Black's Law Dictionary (11th ed. 2019). Constructive knowledge, on the other hand, is that knowledge which

> "one using reasonable care or diligence should have." *Constructive Knowledge,* Black's Law Dictionary (11th ed. 2019).

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). Thus, Crowley may be liable under the TVPRA if it has either actual or constructive knowledge that the venture in which it participated with Blanco and from which Crowley benefited violated the TVPRA as to the Plaintiff. *See id.*

Also, Fed. R. Evid. 415(a) allows "[i]n a civil case involving a claim for relief based on a party's alleged sexual assault" the admission of "evidence that the party committed any other sexual assault," as defined in Federal Rule of Evidence 413. *See* Fed. R. Evid. 413, 415(a). Evidence admitted under Rule 415 "may be considered on any matter to which it is relevant, including the defendant's propensity to commit the alleged acts." *Boyce v. Weber,* 19-CV-3825 (JMF), 2021 WL 2821154, at *8 (S.D.N.Y. July 7, 2021) (cleaned up). Crowley does not dispute that Plaintiff's claims are based on sexual assault. Evidence of other complaints of workplace sexual harassment, sexual assault, sexual abuse, sexual misconduct, and/or rape tends to show a defendant's "ultimate goal" was to "bring his hands or other parts of his anatomy in contact with" the witness's sex organs. *Carroll v. Trump,*---F. Supp. 3d. ---, 2023 WL 2441795, at *6-7 (S.D.N.Y. Mar. 10, 2023). The jury can consider whether to infer that the "ultimate goal" of Defendant's intentions toward other employees was to sexually assault or attempt to sexually assault them as provided for in Rule 413.

As the Court found in denying Crowley's Motion to Dismiss, "evidence that Crowley employees knew that Blanco had sexually assaulted women in his previous department and had recently sexually assaulted Treminio . . . permit the reasonable inference that Crowley knew that Blanco had committed sex acts using some level of force." DE 34, pp. 11-12 (rejecting Crowley's claim that the allegations in the Amended Complaint do not show that Crowley's employees knew that Blanco would "break into [Treminio's] hotel room, sexually assault her during their business trip to the United States, and that the assault would constitute a commercial sex act.").

Here, as in other causes of action requiring evidence of actual or constructive knowledge, evidence concerning other instances of sexual harassment, abuse, or misconduct and the actions Crowley took in response bear on Plaintiff's claim that Crowley knew or should have known that Blanco would use force to cause Treminio to engage in a commercial sex act. It also bears on Crowley's claim that it "exercised reasonable care to prevent the alleged events from occurring". DE 38, ¶ 18; *see e.g. Weeks v. Remington Arms Co., Inc.,* 733 F. 2d 1485, 1491 (11th Cir. 1984) ("Evidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation."); *see e.g. Ries v. McDonald's USA*, LLC, 1:20-

11

CV-2, 2021 WL 8651115, at *4 (W.D. Mich. Dec. 6, 2021)(finding that the respondeat superior element of the plaintiff's sexual harassment claim was supported by evidence of a stream of verbal and physical harassment that occurred during every shift of her work, directed at her and other female employees); *MacCluskey v. Univ. of Connecticut Health Ctr.*, 3:13-CV-1408 (MPS), 2017 WL 684440, at *14 (D. Conn. Feb. 21, 2017), aff'd, 707 Fed. Appx. 44 (2d Cir. 2017)(finding that complaint of harassment filed by a different employee was relevant to the question constructive knowledge); *Griffiths v. Tucson*, CV 12-00430-TUC-RM, 2016 WL 7227553, at *5 (D. Ariz. Jan. 25, 2016) (finding that evidence regarding sexual harassment related to other employees was relevant "because it has some tendency to make it more likely that Defendant was on actual or constructive knowledge of the alleged harasser's propensity to engage in sexually harassing conduct").

As many courts have held, the pervasiveness of sexual harassment can properly lead to an inference of knowledge. *See, e.g., Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998)("highly pervasive harassment should, in the exercise of reasonable care, be discovered by management-level employees.").

Because pervasiveness of sexual harassment can lead to an inference of knowledge, courts have allowed this discovery in sex trafficking cases. *See e.g., Delvecchia v. Frontier Airlines*, 2:19-CV-01322-KJD-DJA, 2021 WL 1214780, at *2 (D. Nev. Mar. 29, 2021)(permitting discovery into incident reports "related to human

or sex trafficking or racial profiling" because limiting discovery to those reports that also involved a "parent-child relationship created such a narrow subset of data that it seems likely that relevant reports will be excluded" and any challenges regarding admissibility can be resolved pre-trial).

Evidence regarding similar instances of sexual abuse and misconduct also bears on Crowley's claim that Vanessa should be estopped from bringing her claims because she "continued her employment with Crowley following the alleged events and failed to bring this cause of action until years later and after her termination from employment." Crowley's Affirmative Defense No. 9, DE 38, p. 14.

Here, Plaintiff has alleged that she was forced into silence by the threats, fear, and manipulation of Crowley's upper management to which she reported Blanco's harassment and abuse. DE 14, ¶¶ 26-28, 33, 49-50. As the court found in denying Crowley's Motion to Dismiss, the actions taken by Crowley's upper management in response to claims of sexual abuse and harassment are evidence that "Crowley knew or acted in reckless disregard of the fact that any future sex act would be commercial in nature because something of value was being given on account of the sex act." DE 34, p. 12.

Evidence of a practice of using threats and shame to silence victims will counter Crowley's claim that the delays precipitated by its actions should estop

Vanessa from pursuing her claim. *See e.g., United States v. McGuire,* 627 F.3d 622, 626–27 (7th Cir. 2010) (holding that testimony of the defendant's modus operandi was permissible to demonstrate how the defendant used fear and shame to keep his child victims from reporting the molestation, thus countering defendant's argument that his victim's long delay in reporting the conduct demonstrated that the victim was lying). This is classic evidence of other crimes, wrongs or acts which is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); *see e.g. United States v. Hernandez*, 626 Fed. Appx. 900, 906 (11th Cir. 2015)(finding that evidence showing a similar modus operandi employed against another victim is "classic Rule 404(b) evidence of other bad acts.")

Crowley cannot contend that only the actions it took in response to Treminio's rape are relevant to this case because its relationship with Blanco, Najera, and Lopez began at least six years prior. Sex trafficking is a crime that "deals with a pattern of behavior occurring over time and involving key questions of intent and consent." *United States v. Smartt*, 3:18-CR-30138-NJR-1, 2020 WL 5993218, at *3 (S.D. Ill. Oct. 9, 2020). Hence, discovery as to what the trafficker and beneficiary knew and did is an essential part of a sex trafficking case. *See Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2:19-CV-1194, 2020 WL 1244192, at *6 (S.D. Ohio Mar. 16, 2020)(finding that plaintiff stated a claim for sex trafficking where she alleged

14

that "Defendants were on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence. She also alleges facts specific to her own sex trafficking, including a number of signs she alleges should have alerted staff to her situation".).

### B. *Crowley's generalized, boilerplate objections are improper.*

Instead of producing the requested information, Crowley asserts in generalized terms that Interrogatory No. 13 and Request 41 are not proportional to the needs of the case because (a) "Crowley and 'all of the entities affiliated therewith' collectively employ thousands of employees, Company-wide, in multiple locations who perform varying job duties and types of work"; and (b) "Plaintiff was employed by Crowley Shared Services, S.A. de C.V. in El Salvador for the entire duration of her employment and her allegations relate specifically to Defendant Blanco, who was also employed by Crowley Shared Services, S.A. de C.V. in El Salvador." Exs. 2-3.  Crowley also claims RFP 41 is not proportional to the needs of the case because "[i]Information regarding complaints made by any employee of Crowley and/or 'the entities affiliated therewith' over an eight-year period is overly broad and not relevant to Plaintiff's claims or the defenses in this case." Ex. 3.

Crowley does not specifically explain why discovery relating to these entities does not bear on the claims and defenses, especially since Plaintiff has

15

limited the scope of this interrogatory to "complaints of workplace sexual harassment, sexual assault, sexual abuse, sexual misconduct, and/or rape by employees, officers, or directors of 'Crowley Shared Services, S.A. de C .V.' for the three-year period of time prior to November 2017 and for the one year time period following November 2017." Ex. 4.  Despite Plaintiff's efforts to meet and confer in good faith, Crowley never supplemented its responses to interrogatory no. 13 or RFP no. 41.  Ex. 5.  *See also* Crowley's Response to Fifth Request for Production, served July 3, 2023, attached as Exhibit 6.

The Court should also overrule Crowley's objections because the discovery responses make no showing as to why responding to the interrogatory or searching and producing the requested information would be burdensome or expensive. *See e.g. Landstar Ranger, Inc.*, 2009 WL 10670944, at *3. Such generalized, boilerplate discovery objections serve no legitimate purpose and must be overruled. *See Polycarpe v. Seterus, Inc.*, 6:16–cv–1606–Orl–37TBS, 2017 WL 2257571, at *2 (M.D. Fla. May 23, 2017)(finding that the use of "boilerplate objections . . . obstructs the discovery process, violates numerous rules of civil procedure and ethics, and imposes costs on litigants that frustrate the timely and just resolution of cases.").  Crowley's boilerplate objections are improper and should not preclude Vanessa from obtaining critical, relevant discovery.

"Several courts have found failure to implement policies sufficient to combat a known problem in one's operations can rise to the level of willful blindness or negligence." *H.H. v. G6 Hosp., LLC*, 2:19-CV-755, 2019 WL 6682152, at *3 (S.D. Ohio Dec. 6, 2019); (citing *Brown v. Corr. Corp. of Am.*, 603 F.Supp.2d 73, 81 (D.D.C. Mar. 26, 2009) (finding that complaint plead willful blindless because it alleged that defendants knew that a supervisor at a correctional facility raped his employee, sexual harassment at the facility "was not an isolated incident," and defendants failed "to implement and effectuate the appropriate policies . . . to remedy and/or prevent the discriminatory conduct, sexual abuse and sexual harassment and rape"); *M.A. v. Wyndham Hotels & Resorts, Inc., 425* F. Supp. 3d 959, 965 (S.D. Ohio 2019)(explaining that "[w]illful blindness is a higher standard" than constructive knowledge as it is "akin to actual knowledge").

The critical issue here is whether Crowley knew or should have known that "Blanco would use force to cause Treminio to engage in a commercial sex act." DE 34, p. 12.

The Court should overrule Crowley's boilerplate proportionality objections. *See e.g. Nat'l Staffing Sols., Inc. v. Sanchez*, 6:21-CV-1590-PGB-LHP, 2022 WL 19354640, at *6 (M.D. Fla. Sept. 12, 2022) (overruling proportionality objections "made without explanation") (citing *TIC Park Centre 9, LLC v. Cabot*, No. 16-24569-Civ-COOKE/TORRES, 2017 WL 3099317, at *2 n.1 (S.D. Fla. April 12, 2017)

("Courts in the Eleventh Circuit have made clear that to demonstrate an undue burden, the moving party must put forth either affidavits or other evidence that reveals the nature of the burden."); *Tropical Marketing & Consulting, LLC v. Glock, Inc.*, No. 6:12-cv-1388-Orl-36TBS, 2012 WL 5431002, at *3 (M.D. Fla. Nov. 7, 2012) (overruling undue burden objection due to failure to submit "affidavits or other proof to support" the objection).

## II.   REQUEST FOR ATTORNEY'S FEES PURSUANT TO FRCP 37(a)(5)(A).

Crowley's unjustified objections entitle Treminio to recover the attorney's fees incurred in this Motion.  First, there is no justification for Crowley's reliance on boilerplate objections and refusal to produce routinely discoverable relevant evidence, such as evidence of similar incidents.  *Weeks,* 733 F. 2d at 1491; *Collins-Williams*, 2022 WL 17828934, at *109.  Second, instead of allowing discovery to proceed, Crowley has obstructed the exchange of evidence in this case.  It delayed weeks to tell Plaintiff that it was simply standing by the objections to the discovery requests addressed in this motion and served supplemental responses that provided no meaningful information.  *See* Ex. 4-5.

For these reasons, in accordance with Rule 37(a)(5)(A), Treminio should be entitled to recover the attorney's fees incurred in this Motion, in accordance with Rule 37(a)(5)(A).

Respectfully submitted,

| | |
|---|---|
| */s/  Adria G. Notari* | */s/  J. Ryan Melogy* |
| **ADRIA G. NOTARI** | **J. RYAN MELOGY** |
| Florida Bar No. 87272 | *pro hac vice* |
| NOTARI LAW, P.A. | Maritime Legal Solutions, PLLC |
| 1820 SW 14th Court | 276 Fifth Ave., Suite 704-1454 |
| Fort Lauderdale, Florida 33312 | New York, NY 10001 |
| Tel: (954) 257-9028  Fax: (954) 231-1128 | Telephone: (302) 827-3890 |
| anotari@NotariLaw.com | maritimelegalsolutions@pm.me |

### LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), undersigned counsel for Plaintiff certifies that they conferred with counsel for Crowley regarding the issues set forth in this Motion and the parties were unable to resolve the issues.

*/s/ Adria G. Notari*
ADRIA G. NOTARI

### CERTIFICATE OF SERVICE

**I CERTIFY** that I have filed the foregoing with the Clerk of Court via CM/ECF on July 3, 2023, and any party that enters an appearance in this matter will receive a copy of this document via a Notice of Electronic Filing.

*/s/ Adria G. Notari*
ADRIA G. NOTARI
