UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VANESSA TREMINIO,

      Plaintiff,                       CASE NO.: 3:22-cv-174-MMH-PDB

vs.

CROWLEY MARITIME
CORPORATION, and
JUAN EMILIO BLANCO,

      Defendants.

_____/

## DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS DR. BARBARA ZIV

Defendant, Crowley Maritime Corporation ("Crowley"), files this Motion to Exclude Testimony of Dr. Barbara Ziv, M.D. ("Ziv").[1] To the extent Plaintiff seeks to introduce expert testimony regarding opinions contained in Ziv's April 6, 2023 report titled, "Sexual Assault: Current Literature and Perspectives" (the "Report"), Ziv's testimony not admissible under Rule 702, does not meet the *Daubert* standard, and is otherwise inadmissible under the Federal Rules of Evidence.

### I. *Daubert* requires a qualified expert, specialized knowledge to assist the jury, and reliable testimony

---

[1] While Ziv appears to be somewhat of a celebrity forensic psychiatrist as it relates to sexual violence (she has offered her expert testimony and gained national exposure in high-profile cases involving Bill Cosby and Harvey Weinstein), that notoriety is insufficient to render Ziv's opinions and conclusions admissible under *Daubert* and the Federal Rules of Evidence. This reality appears to have been lost on Ziv, as her opinions rest primarily on Ziv's own personal beliefs, which are unsupported by any described methodology and which set forth only limited citation to supporting authorities compared to her numerous unsupported statements and opinions.

Rule 702, Federal Rules of Evidence,[2] controls the admission of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[3]

"The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion" by a preponderance of the evidence. *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

"As the Supreme Court made abundantly clear in *Daubert*, Rule 702 compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific evidence." *Frazier*, 387 F.3d at 1260. This "inherently requires the trial court to conduct an exacting analysis of the *foundations* of expert opinions to ensure they meet the standards for admissibility under Rule 702." *Id*.

When determining the admissibility of expert testimony under Rule 702, the Eleventh Circuit engages in a three-part inquiry:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the

---

[2] Rule 702 of the Federal Rules of Evidence was amended in 2011 "as part of the restyling of the Evidence Rules . . . These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility." Accordingly, case law interpreting Rule 702 decided prior to the 2011 amendment is still applicable.

[3] "The proffered expert must provide a written report 'containing a complete statement of all opinions to be expressed and the basis and reasons therefor, as well as information about the data considered, the witness' qualifications, the compensation earned, and any other recent cases in which he or she offered testimony.'" *Woienski v. United Airlines*, No: 6:18-cv-393-Orl-40LRH, 2019 WL 2347789, at *1 (M.D. Fla. May 31, 2019).

testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260. Furthermore,

> [w]hen the expert is testifying as to general principles rather than their application to the facts of the case, Rule 702 requires the following: (1) the expert be qualified; (2) the testimony address a subject matter on which the fact finder can be assisted by an expert; (3) the testimony is reliable; and (4) the testimony 'fit' the facts of the case.

*Konikov v. Orange Cnty., FL*, 290 F. Supp. 2d 1315, 1317 (M.D. Fla. 2003). Apparently, Ziv is planning to provide "blind" testimony, which is testimony that merely offers opinions on general issues without looking at the specifics of the case or even speaking with the parties.[4] *See generally U.S. v. Vines*, 9 F.4th 500, 504 (7th Cir. 2021). Like any other form of expert testimony, blind testimony is only admissible regarding a matter actually in dispute between the parties such that the testimony would be helpful to the finder of fact. *See generally U.S. v. Dakota North Campus*, No. 22-CR-0064-CVE, 2022 WL 3756512, at *4 (N.D. Okla. Aug. 30, 2022); *see also Daubert,* 509 U.S. at 588 (citing Fed. R. Evid. 702). "The function of an expert witness is not to simply draw conclusions, but rather to help the trier of fact understand the evidence and to determine issues of fact by imparting . . . specialized knowledge." *Id.*

An expert's opinion must be supported by more than simply common sense or some "universal axiom." *See McDowell v. Brown*, 392 F.3d 1283, 1299-1300 (11th Cir. 2004). "[A]n expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions[.]" *Id.* at 1300. "If the

---

[4] Plaintiff has stated that Ziv has not been provided with any information regarding this litigation, has not interviewed Plaintiff, nor has she been otherwise informed of any facts specific to this case or Plaintiff's claims.

{00423777 1 }

witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Sholes v. Bd. of Regents of Univ. Sys. of Ga.*, No. CV 119-022, 2023 WL 2575570, at *7 (S.D. Ga. Mar. 20, 2023). Expert opinions cannot rely upon a "leap of faith" that is not based upon any "existing research[.]" *See McDowell v. Brown*, 392 F.3d at 1301. Mere reliance on "medical logic" and general past experiences amounts to a "mere guess" and fails meet the requirements of Rule 702. *See id.* at 1300-01. Indeed, under *Daubert*, and the Federal Rules of Evidence, expert testimony should be excluded where there is "simply too great an analytical gap" between the data and the expert's *ipse dixit* opinion. *See General Electric*, 522 U.S. at 146.

While Crowley does not challenge Ziv's qualifications, Ziv's opinions amount to inadmissible "leaps of faith" that are not based upon the research she cites, nor are they based on any described methodologies. Ziv repeatedly cites to scientific articles and uses them to extrapolate a general conclusion that is essentially, "If that is the case, it is not surprising that this would be the case as well." For this reason alone, Ziv should be precluded from testifying and offering her opinions at trial.

## II. Ziv's expert opinions fail the *Daubert* test and/or are otherwise inadmissible

The Report purports to provide "an overview of issues related to sexual assault of sexually mature females."[5] The term "overview" is an accurate description of the

---

[5] **Exhibit A**, Sexual Assault: Current Literature and Perspectives ("Report") at 12.

Report as a whole. The Report fails to address any case specific scenarios and further fails to reference Plaintiff or tie its conclusions and opinions to the facts of this case.[6] Instead, Ziv engages in a general discussion of sexual assault and its negative effects and is littered with analytical gaps and *ipse dixit* conclusions as to how various forms of sexual harassment, assault, and/or violence *could* impact some undefined subsets of victims. *Daubert* does not permit Ziv to render opinions without explaining how she formulated those opinions and, as a result, Ziv's testimony must be excluded.

Where Ziv does cite scientific sources, those citations are primarily used as a leaping off point for Ziv to assert opinions and conclusions related to generalizations for which no authority is cited. Ziv sets forth her opinions without discussing any methodology or the rationale underlying those opinions. Indeed, any methodology or basis for Ziv's opinions are a mystery as she fails to describe them at all. Such opinions fail under the scrutiny of *Daubert a*s they are devoid of any reliable, or quantifiable, methodology and do not assist the trier of fact in analyzing any issue in this case.

## A. Ziv's reasoning or methodology is not based on reliable methodology

"When determining the reliability of an expert's opinion, a trial court must assess 'whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue.'" *Curtis Inv. Co., LLC v. Comm'r of Internal Revenue*, 909 F.3d 1339, 1350 (11th Cir. 2018). Courts should consider, to the extent practicable:

---

[6] Report at 12.

"(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the method is generally accepted in the relevant community." *Id.* "[R]eliance on anecdotal evidence . . . and improper extrapolation" may render an expert's opinions unreliable. *See McDowell*, 392 F.3d at 1298-99.

In evaluating methodology, the court should consider whether, (1) "the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Ziv's opinions fail to meet any of the above factors as it is devoid of any mention of any methodology used in reaching these opinions and, as such, there is no way for this Court to determine the reliability of an absent methodology. *See Jones v. Sofamor S.N.C.*, No. 1:96-CV-3167-RWS, 1999 WL 1062103, at *3 (N.D. Ga. Apr. 29, 1999) (excluding as unreliable expert testimony where the record did not reveal what methodology the expert employed). "[I]t remains a basic foundation for admissibility that proposed expert testimony must be supported by appropriate validation—*i.e.,* good grounds, based on what is known." *Frazier*, 387 F.3d at 1261; *Zanakis v. Scanreco, Inc.*, No. 1:18-CV-21813-UU, 2019 WL 2215554, at *4 (S.D. Fla. Apr. 9, 2019) (A witness who is relying solely or primarily on experience, "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts").

Here, Ziv uses no methodology to reach her conclusions about the potential

impacts of sexual violence on its victims, nor does she explain how her experience could have led her to or supported the opinions or conclusions within the Report. Instead, she simply discusses sexual violence and its potential negative effects generally, often without any reference to any cited authorities, and never with any reference to any of her methodology or experience that led her to the opinions and conclusions within the Report. Ziv appears to have only reviewed general research on matters related to sexual violence and used her own opinions to expand on that research to reach her stated opinions and/or conclusions.

Further, Ziv's testimony cannot be properly applied to the facts of this case and is misleading. Ziv establishes a nearly undefined universe of negative effects of sexual violence, which various types of victims could, in theory, suffer to any extent. After painting such a broad picture, Ziv provides no guidance as to if/how her generalized opinions could be applied to the facts in this case. According to Ziv, Plaintiff could be experiencing the impact of any number of the myriad of conditions and side effects resulting from sexual violence in any of the varying degrees. Such baseless implication without any reasonable correlation or application to the facts of this case renders Ziv's testimony inadmissible. *See McDowell*, 392 F.3d at 1300.

Ziv is also heavily reliant on anecdotal evidence and improper extrapolation and her opinions are, therefore, not reliable. *See id.* at 1298-99. On numerous occasions, Ziv sets forth generally accepted principles of sexual violence, many of which are common sense and do not require, nor merit, expert testimony. *See id.* at 1299-1300. Ziv then opines as to the general potential and varied impacts of sexual

violence, the potential thoughts and feelings of certain hypothetical victims of sexual violence, and the potential societal repercussions of reporting sexual violence. Nowhere is Plaintiff, nor any facts specific to this case, mentioned, and there is nothing that in any way ties the myriad of potential negative outcomes from sexual violence to Plaintiff's specific situation. Instead, Ziv attempts to paint a universal picture of how sexual violence could theoretically impact an undefined universe of potential victims. Such a cumulative picture is devoid of any reliable methodology, incredibly prejudicial to Crowley, and irrelevant to this litigation.

Ziv also bases her conclusions upon hypotheses and potentialities. Where her cited sources stand for mere hypotheses or potentialities, she cannot testify to a degree of psychiatric certainty that the opinions based upon those hypotheses or potentialities are correct. At best, she can say her conclusions may be accurate, but such potentialities are merely inadmissible educated guesses where they are not applied to the facts of this case and must be excluded. *McDowell,* 392 F.3d at 1300-01.

### B. Ziv's opinions do not assist the jury in determining any issue and do not fit the facts of the case

Rule 702 . . . requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful. An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. The consideration has been aptly described . . . as one of "fit."

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1347 (11th Cir. 2003).

"To satisfy the helpfulness requirement, expert testimony must be relevant to an issue

in the case and offer insights 'beyond the understanding and experience of the average citizen.'" *Edmonson v. Caliente Resorts, LLC*, No. 8:15-cv-2672-T-23TBM, 2017 WL 10591833, at *7 (M.D. Fla. Aug. 31, 2017) (citing *U.S. v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)). Expert testimony must assist "the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Frazier*, 387 F.3d at 1260. Generally, expert testimony "will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *See Frazier*, 387 F.3d at 1262-63.

In this case, Ziv opines on how an undefined subset of victims and aggressors act in an undefined subset of circumstances. Without any degree of definitiveness, it is difficult to determine precisely what Ziv's opinions are. Ziv does not offer any helpful expert opinion but provides commentary which does not assist the trier of fact in making any determinations as to the issues in this case. Moreover, many of Ziv's opinions and conclusions are not beyond the understanding of the average citizen, as is acknowledged in the Report where Ziv describes many of her opinions as being "well known,"[7] "common knowledge,"[8] or "widely known."[9] *See Ralston v. Garabedian*, No. 19-1539, 2022 WL 19273, at *14 (E.D. Pa. Jan. 3, 2022) (excluding Ziv's opinions that were not based on specialized knowledge where she opined it "required only common sense" to reach a conclusion or made similar statements).

---

[7] Report at 8.
[8] Report at 2.
[9] Report at 3.

Plaintiff's Disclosure of Expert and Hybrid Witnesses ("Disclosure") states that it is Crowley's position that Plaintiff "did not suffer serious harm as defined by the TVPA" because of arguments raised in four of Crowley's affirmative defenses.[10] However, a review of the referenced defenses shows that the "dispute" for which Ziv's testimony will be offered is mischaracterized. While Crowley's second affirmative defense does note several fatal defects in Plaintiff's *prima facie* case, it does not challenge the reasonableness of Plaintiff's actions regarding her alleged assault.[11] The portion of the defense cited by Plaintiff actually states that Plaintiff's allegations of harm are insufficient to meet the statutory definition of "serious harm."[12] Importantly, the defense does not so much as mention the reasonableness of Plaintiff's actions.

Plaintiff's Disclosure also states that Ziv's testimony will "counter Crowley's contention that [Plaintiff's] behavior is 'unreasonable' by assisting the trier of fact in understanding the range of behaviors observed in cases of sexual abuse . . . ."[13] Plaintiff's Disclosure references Crowley's ninth (estoppel), tenth (failure to mitigate), thirteenth (laches), and eighteenth (failure of Plaintiff to avail herself of Crowley's preventative and corrective measures) affirmative defenses.[14] However, Ziv's opinions do not actually address any issues raised by these affirmative defenses.

Ziv's testimony focuses on how victims react to being sexually assaulted but

---

[10] **Exhibit B**, Plaintiff's Disclosure of Expert and Hybrid Witnesses ("Disclosure") at 7-8.
[11] (Doc. 38) Crowley Maritime Corporation's Answer and Affirmative Defenses to Plaintiff's Amended Complaint ("Answer") at 13.
[12] (Doc. 38) Answer at 13.
[13] Disclosure at 7-8.
[14] (Doc. 38) Answer at 14-16.

does not apply any of these reactions to Plaintiff or the facts of this case. Ziv identifies numerous potentialities but provides no guidance as to which, if any, applies to Plaintiff. While Ziv does not speculate as to Plaintiff specifically (in fact, she does not mention Plaintiff at all), the nature of many of her opinions are speculative and rife with hypotheticals and potentialities which should be excluded. *See Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1367 (S.D. Fla. 2009) (expert's opinion that was nothing but pure speculation is inadmissible). Ziv plans to testify about Plaintiff's conduct during the alleged sexual assault and her "capacity to consent," neither of which are at issue in this case.[15] Moreover, Ziv opines on why a victim may delay in reporting an alleged assault, but Plaintiff claims to have reported her alleged assaults multiple times, twice almost immediately following their claimed occurrences.[16] Plaintiff plans to use Ziv's testimony primarily to explain why Plaintiff acted a certain way following the alleged assault, but Ziv's testimony does not accomplish this goal because Ziv's generalized testimony is not indicative and does not address the alleged actions of Plaintiff. *See United States v. Ta*, No. 1:05-CR-094-01-WSD, 2007 WL 2324616, at *4 (N.D. Ga. Aug. 9, 2007) (noting that the party offering the expert did not explain how the expert applied his knowledge to the facts of the case).

III.   **Application of the *Daubert* standard to Ziv's testimony**

   A. **Opinions in the "Definitions and Statistics" section are not relevant and fail the *Daubert* test as to reliability and helpfulness**

---

[15] Report at 2-5.
[16] (Doc. 14) Amended Complaint at 7-10; 15-16m, 19-21. **Exhibit C**, March 27, 2023 Deposition of Vanessa Treminio at 80-86, 158-171, 179-182, 187-192.

The "Definitions and Statistics" section of the Report contains several definitions from the CDC relating to sexual violence and the capacity to consent without any reference to how they are applied to Plaintiff's claims.[17] The second half of that section focuses solely on statistics from an analysis of sexual assault in the military.[18] Ziv fails to state how the results of a military sexual assault study have any bearing on instances of sexual assault outside of the military generally, or on Plaintiff's claims specifically. The statistics cited by Ziv are, therefore, of no relevance to these proceedings and are not reliable in their application to the facts of this case. Thus, any opinion set forth in this section is neither reliable nor helpful and should be excluded.

### B. Opinions in the "Sexual Assault Myths" section are not relevant and fail the *Daubert* test

The second section titled, "Sexual Assault Myths" should also be excluded as it is devoid of any reliable methodology and is not helpful to the finder of fact. Standalone conclusions or "leaps of faith" must have scientific support to survive a *Daubert* analysis. *See McDowell*, 392 F.3d at 1301; *In re Zantac (Ranitidine) Products Liab. Litig.*, No. 20-MD-2924, 2022 WL 17480906, at *12 (S.D. Fla. Dec. 6, 2022) ("An expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions."). Here, Ziv utilizes citations to set the stage for a conclusion which goes further, and in different directions, than the cited authorities without any accompanying support or methodology.

---

[17] Report at 1.
[18] Report at 1.

For instance, Ziv cites to several authorities for the proposition that, "Men who are in social positions of influence, dominance, or prominence are more likely than other groups to make positive associations between power and sex."[19] From this general statement, Ziv opines that "Males who make a cognitive connection between power and sexuality hold attitudes tolerant of sexual offending."[20] This opinion is not supported by any cited authorities or methodology, and makes an unsupported leap in logic from men simply positively associating power and sex to men being outright tolerant of "sexual offending."

Ziv also asserts that society negatively judges women who have been sexually assaulted or harassed. Ziv bases her opinion upon the existence of "scant literature" to the contrary.[21] Ziv's opinion is, therefore, that a lack of abundance of scholarly literature supporting the contrary point must be proof positive that her point is correct. This is flawed reasoning and is not supported by any reviewable theory or methodology. Ziv attempts to prop up this opinion by citing authorities for narrower points regarding the correlation between gender stereotypes, acquaintance sexual violence, and victim blaming.[22] However, the narrowly defined subset of acquaintance sexual assault and the views of those who still endorse traditional gender role stereotypes do not provide support for Ziv's opinion that society at large negatively judges female victims of sexual assault or harassment.

---

[19] Report at 2.
[20] Report at 2.
[21] Report at 2.
[22] Report at 2-3.

Ziv further discusses research regarding the behaviors and actions of female victims of rape.[23] Ziv states that, "[i]t is ***generally and widely believed*** that if a woman does not want sexual interaction with a male, she will fight back in verbal and/or physical ways."[24] The remainder of the paragraph speaks on the percentages of women who actually do "fight back," without making any indication as to where Plaintiff purportedly fits into those percentages. Moreover, after stating that, in *many* instances, victims engage in different types of indirect resistance rather than physical fighting, Ziv opines that, "it is not surprising that victims of . . . workplace or acquaintance sexual assault/harassment rely even more on indirect means to avoid sexually aggressive behaviors."[25] Ziv does not cite to a single source, nor describe the methodology she used, in coming to that conclusion about a totally different form of sexual violence in a more limited setting (rape generally vs. sexual assault/harassment in the workplace). Finally, Ziv neither cites to any authority, nor provides any methodology, for the opinions and conclusions raised in the rest of that paragraph.[26]

In the final paragraph, Ziv impermissibly extrapolates upon limited data to come to broad, unsupported, conclusions. Ziv references a study with a sample size of over 100 victims who "aggressively" resisted in instances where they were raped by a stranger.[27] From this limited statistical grouping, Ziv concludes that it "is equally clear

---

[23] Report at 3.
[24] Report at 3 (emphasis added).
[25] Report at 3.
[26] Report at 3-4.
[27] Report at 3.

from the data . . . that most women do not fight back, either physically or verbally."[28]

Ziv concludes that a sample size of some undefined number of over 100 women who have been raped by a stranger is indicative of the reactions of "most" women who experience any sort of sexual violence whatsoever. Ziv's opinion on this issue is so devoid of support or reliable methodology that it is inadmissible.

Finally, this case does not involve a dispute that Plaintiff acted inappropriately or should have acted in a manner different than she did at the time she was allegedly assaulted. Because Ziv's opinions are unrelated to an actual issue in dispute, her opinions set forth in this section are further inadmissible. *See Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1261 (11th Cir. 2004).

### C. Opinions in the "Capacity to Consent" section are not supported by reliable methodology and are not helpful to the jury

In the "Capacity to Consent" section, Ziv again fails to describe any methodology used in formulating her opinions and does not assist the trier of fact with her unsupported personal opinions. Ziv uses the CDC's definition of sexual violence to make an unsupported dive into a discussion of the nature of capacity to consent and what she thinks "capacity" means.[29] She does so without methodology or citation to any supporting authorities. Ziv concludes by setting forth an alternative definition of "capacity," again without any cited authorities or methodology.[30]

Ziv further discusses the impact of extremes of emotion on brain chemistry and

---

[28] Report at 4.
[29] Report at 6.
[30] Report at 6.

cites to eight sources for the impacts referenced in that sentence.[31] Ziv does not cite to another authority for the rest of this section in describing the effects of the impacted brain chemistry on the actions of sexual violence victims.[32] Importantly, Ziv states that "depending on the specific, *and always unique* situation, victims' cognitions and behaviors alternate . . . ."[33] Thus, the impacts on a victim's capacity to consent are, apparently, unique to the specific situation the victim is in. Ziv also states that "*normally*" victims begin to process threats of sexual violence only after the threat is over.[34] This implies that it is not the case in all circumstances, yet Ziv cannot opine as to where Plaintiff may fall in this profile of a sexual violence victim or opine that she reacted normally under the circumstances alleged. Ziv also fails to discuss how the "unique situation" of Plaintiff's claims could have impacted her capacity to consent to the alleged actions. Finally, as with the previous section, whether Plaintiff consented to the alleged sexual act is not at issue in this case. For the stated reasons, Ziv's testimony regarding "Capacity to Consent" should be excluded.

### D. Opinions in the "Reporting on Sexual Assault" section are neither reliable nor helpful under *Daubert* and are otherwise inadmissible

In the "Reporting of Sexual Assault" section, Ziv again sets forth inadmissible opinions and conclusions as they are neither reliable, nor helpful, to the jury. Ziv first paints a broad and purportedly comprehensive picture of why female victims may not

---

[31] Report at 6.
[32] Report at 6.
[33] Report at 6 (emphasis added).
[34] Report at 6 (emphasis added).

report, or may delay reporting, acts of sexual violence.[35] However, this paragraph is devoid of cited authorities or descriptions of any methodology to support Ziv's opinions and conclusions.[36] Ziv has again stated opinions regarding a broad group of female victims of sexual violence without providing any basis or rationale for such opinions.

This section also fails *Daubert* scrutiny where Ziv attempts to make determinations of credibility. After discussing cited authorities which state that the *majority* of sexual assaults are not reported, Ziv makes an unsupported "leap of faith" to the conclusion that the failure to report sexual assault "has no bearing on whether the allegation is credible or not."[37] Credibility can only be determined on a case-by-case basis and is a determination that is to be made exclusively by the jury as it hears testimony and views evidence. *See Asokan*, 2017 WL 4542889, at *2.

In the fourth paragraph of this section, Ziv cites to authorities for the broad proposition that "victims tend to view sexual assault as an act perpetrated by a stranger."[38] However, that sentence is sandwiched between unsupported opinions. Ziv makes a common-sense statement that victims of sexual assault are "members of society[,]" and that the nature of that membership means they carry unsupported societal biases related to rape myths.[39] Of course, no data or methodology is provided,

---

[35] Report at 5-6.
[36] Report at 5-6.
[37] Report at 6.
[38] Report at 6.
[39] Report at 6.

and it is common sense that a victim in society is a member of that society and, as a result, may have biases that are typically shared within that society.

Ziv also hypothesizes that the psychological consequences of sexual assault, which she describes without any supporting authorities or methodology, "**may** further serve as a barrier to disclosure."[40] This is nothing more than an educated guess and cannot assist the trier of fact. *See McDowell*, 392 F.3d at 1300-01. Ziv concludes this paragraph by saying that, "for **most women**[,]" the allegation of sexual misconduct permits intrusion into, and judgment of, their personal lives and choices.[41] This conclusion strays far from the lone cited proposition in that paragraph that many women view sexual assault as an act perpetrated by a stranger.

Ziv next cites to an EEOC select task force report which broadly and generally details the limited instances in which the studied individuals reported workplace sexual assault and the reasons behind that lack of reporting.[42] Ziv only uses that report to discuss numerous coping strategies and actions of victims of sexual assault without describing any methodology by which she found the coping mechanisms to be common. Ziv again mixes common sense with her personal opinions to render her inadmissible opinions and conclusions. In the final sentence of this section, Ziv states that "*[o]ften* it is only when they find themselves with emotional or behavioral problems that they cannot surmount, that victims reach out for help."[43] This conclusion is

---

[40] Report at 6 (emphasis added).
[41] Report at 6 (emphasis added).
[42] Report at 6-7.
[43] Report at 7 (emphasis added).

wholly unsupported by any data or methodology. In any event, Plaintiff asserts that she immediately reported both alleged assaults by Blanco and, thus, this section is not relevant to the facts of this case. For the above reasons, Ziv's opinions set forth in the "Reporting of Sexual Assault" section should be excluded.

### E. Opinions in the "Sequelae of Sexual Victimization" section of the Report should be excluded

In the "Sequelae of Sexual Victimization" section, Ziv again bases her opinions loosely on cited authorities and does so in the complete absence of any described methodology. To the extent this section contains citations, it does so only to create a steppingstone for Ziv to reach her ultimate unsupported opinions and conclusions. For example, in the first paragraph, Ziv expresses opinions about what she considers to be erroneous beliefs about sexual assault and the impact of those beliefs on both aggressors and victims of sexual assault.[44] However, Ziv does not discuss how those beliefs specifically impact aggressors, nor does she state what specific beliefs about sexual assault she is referencing in that paragraph.

Additionally, Ziv states that, "[t]he studies regarding the psychological sequelae of rape are well known[,]"[45] and that "[t]he psychological sequelae of rape are well known."[46] Ziv makes those statements in passing and does not conduct any analysis into the psychological sequelae of rape or the studies on those sequelae. That Ziv is disclosed as an expert in rape trauma and the sequelae of rape yet fails to discuss those

---

[44] Report at 8.
[45] Report at 8.
[46] Report at 8.

matters in any detail is yet another example of the fatal errors which render Ziv's testimony inadmissible. Ziv makes conclusory statements and then simply moves on to a discussion on the effects of general unwanted sexual interactions.[47] Ziv has failed to set forth any reliable opinions regarding the psychological sequelae of rape.

Furthermore, by Ziv's own admission, the psychological impact of rape is "well known."[48] Therefore, no expert testimony is admissible on this subject since such testimony would be on well-known matters for which no assistance is needed by the jury to understand. Throughout this section, Ziv then continues to articulate opinions without cited authorities or described methodologies. After providing citations to her opinions regarding the after-effects of sexual assault, Ziv offers opinions on additional "[m]ore subtle" issues that can result from sexual assault,[49] despite those issues not being supported by any cited authorities or described methodology.

In the second paragraph of this section, Ziv cites authorities for the limited opinion that the false narrative of sexual assault is bolstered by the idea that assault is less damaging when it is perpetrated by someone known to the victim.[50] Ziv merely uses this proposition to extrapolate her own conclusions which are different from those in the cited authorities. Ziv says that the negative stigma associated with sexual assault from a known perpetrator is "noted to extend the trauma,"[51] but fails to indicate where

---

[47] Report at 8.
[48] Report at 8.
[49] Report at 8.
[50] Report at 8.
[51] Report at 8.

that is "noted" or to provide any support for this assertion.

This section of the Report also contains a span of two pages in which there is only one cited reference.[52] Rather than relying upon cited authorities or described methodologies, Ziv relies upon adages, anecdotes, rhetorical questions, and general "if-then" reasoning. Ziv's opinions are devoid of any information that is reliable and instead contain strongly worded position stances from Ziv about flaws in society and the resulting detriments to sexual assault victims. Additionally, those opinions only extend to some undefined number of sexual assault victims and provide no guidance on how any of the sequelae of sexual assault could relate to Plaintiff, rendering those opinions unhelpful to the jury, devoid of reliable methodology, and inadmissible.

Ziv then discusses additional matters that are not at issue in this case. For example, Ziv states that "sexual harassment in the workplace is a form of discrimination."[53] She then goes into the negative effects of workplace discrimination; however, Plaintiff has not brought a discrimination claim, Plaintiff has alleged sex trafficking.[54] Because Ziv draws legal conclusions regarding the existence of discrimination in certain instances and because she is offering opinions on matters about which she is not qualified as a witness, her opinions regarding workplace discrimination must be excluded. *See generally Asokan*, 2017 WL 4542889, at *2. Similarly, Ziv's testimony should also be excluded where she offers opinions on the

---

[52] Report at 9-10.
[53] Report at 10.
[54] Report at 10-11.

physical effects that can result from the "strain outcomes" associated with workplace harassment.[55] Ziv lists a litany of potential physical ailments that could befall someone who has been subjected to workplace harassment.[56] However, Ziv is not qualified, nor offered, as an expert on such matters and those opinions should be excluded.

Next, Ziv expresses her opinions on various coping mechanisms which Ziv personally believes to be common in victims of sexual violence but may or may not apply to Plaintiff.[57] Ziv also expresses opinions on how long symptoms resulting from an act of sexual violence may persist and states that the length of time "is variable and depends on many factors[.]"[58] The frequency or duration of the symptoms is left wholly undefined, is not applied to Plaintiff, and is not supported by any described methodology.

Ziv also opines on suicide rates and analyzes the propensity for suicide and suicidal ideation in children and college students.[59] Neither of those subsets bear any relevance to Plaintiff's claims and those opinions should be excluded as unhelpful to the jury. While the section concludes with a cited statistic about the percentages of men and women who have been raped who will have a medically serious suicide attempt,[60] Ziv merely offers this statistic and moves on, leaving it of little help to the jury. Moreover, there are no allegations in this case that Plaintiff attempted suicide.

### F. The Conclusion illustrates the core deficiencies with the Report and

---

[55] Report at 11.
[56] Report at 11.
[57] Report at 11-12.
[58] Report at 12.
[59] Report at 12.
[60] Report at 12.

**supports the exclusion of Ziv's testimony**

In the Conclusion, Ziv makes clear why her opinions must be excluded under a *Daubert* analysis as unreliable and unhelpful to the jury. An "overview," as the Report is described, is an apt description of the nature of Ziv's testimony as she merely opines about broad generalities and potentialities tied to numerous types of sexual violence, regardless of whether they have any relation to Plaintiff.[61] Ziv states that, in formulating her opinions and conclusions, she did not address "case specific scenarios."[62] While Ziv details many potential negative impacts of sexual violence, Ziv does not analyze evidence, Plaintiff's condition, or allegations in reaching her conclusions so it is unclear which, if any, of those impacts were experienced by Plaintiff, nor to what extent. Rather, Ziv creates an overly generalized and cumulative picture of all potential sequelae to sexual violence, regardless of whether Plaintiff has alleged to have experienced them. Ziv has never spoken with Plaintiff or reviewed any information specific to her. Without any reliable basis for Ziv's opinions, nor a showing as to how such testimony could be helpful to the jury, it should be excluded.

## IV.    Ziv's testimony should be excluded under Rule 403

"Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead

---

[61] Ziv also states that the Report is an overview related to sexual assault of sexually mature females, but she makes repeated references to individuals outside of that classification including, but not limited to, the military, male victims, children, and college-aged students. This calls into question the reliability of Ziv's opinions as she bases her opinions, which are limited to the impacts on sexually mature females, on other subsets of the population without stating how those subsets relate to sexually mature females. *See* Report at 12.
[62] Report at 12.

the jury, or if the expert testimony is cumulative or needlessly time consuming." *See Frazier*, 387 F.3d at 1263. "Indeed, 'the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses.'" *Id.* "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id.*

Ziv's opinions make no reference and have no stated bearing on the facts at issue in this case, are not relevant, and should be excluded. Ziv paints a universal picture of potential negative effects of sexual violence which may or may not be experienced by victims of sexual violence and may be experienced in varying degrees and durations. In saying everything, Ziv actually says nothing, as there is no insight, expert or otherwise, as to how any of the effects of sexual violence in any way relate to Plaintiff. Ziv's opinions cloud the issues more than they clarify them and offer no insight into Plaintiff's specific condition. Therefore, Ziv's testimony is highly prejudicial to Crowley, is likely to do nothing more than confuse the jury, is largely devoid of probative value, and should be precluded under Rule 403.

## V.     Conclusion

Defendant, Crowley Maritime Corporation, respectfully requests that this Court exclude all testimony by Plaintiff's expert witness, Dr. Barbara Ziv.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 3.01(g), Local Rules, United States District Court, Middle District of Florida, counsel for Defendant has conferred with counsel for Plaintiff and Plaintiff opposes the relief sought in this Motion.

_____

ATTORNEY

Dated this 2nd day of August 2023.

Respectfully submitted,

ALEXANDER DEGANCE BARNETT, P.A.

By: _____

Kelly DeGance
Florida Bar No. 0606022
E-mail: kelly.degance@adblegal.com
Samantha Giudici Berdecia
Florida Bar No. 0058667
E-mail: samantha.giudici@adblegal.com
E-mail: mailbox@adblegal.com
1500 Riverside Avenue
Jacksonville, FL 32204
(904) 345-3277 Telephone
(904) 345-3294 Facsimile

*Attorneys for Defendant*
*Crowley Maritime Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to counsel of record:: Adria G. Notari and Michelle E. Durieux, Notari Law, P.A., 1820 SW 14th Court, Fort Lauderdale, Florida 33312 (anotari@NotariLaw.com) (michelle@notarilaw.com); J. Ryan Melogy, Maritime Legal Solutions, PLLC, 276 Fifth Ave., Suite 704-1454, New York, NY 10001 (maritimelegalsolutions@pm.me); C. Michael Williams, Law Office of C. Michael Williams, P.A.; 1710 Shadowood Ln, Ste. 220, Jacksonville, Florida 32207 (seemichaelwilliams@gmail.com); Kristyne Kennedy and Kelsey Ortiz, Esq, Cole, Scott & Kissane, P.A, Tower Place, Suite 400, 1900 Summit Tower Boulevard, Orlando, Florida 32810 (Kelsey.Ortiz@csklegal.com) (Celia.Cates@csklegal.com) (Kristyne.Kennedy@csklegal.com).

_____

ATTORNEY