UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VANESSA TREMINIO,

    *Plaintiff*,

v.                                     CASE NO.: 3:22-cv-174-MMH-PDB

CROWLEY MARITIME CORPORATION,
and JUAN EMILIO BLANCO,

    *Defendants*.

_____/

## PLAINTIFF'S MOTION TO EXCLUDE CROWLEY MARITIME CORPORATION'S EXPERT, DR. ROY LUBIT

Pursuant to Fed. R. Evid. 702, Plaintiff VANESSA TREMINIO moves to exclude Defendant CROWLEY MARITIME CORPORATION's ("Crowley") expert witness, Dr. Roy Lubit ("Dr. Lubit"), because his unreliable opinions do not fit with the evidence and will not assist the jury to understand the evidence or determine any fact in issue.

### Background

Crowley disclosed Dr. Lubit as an expert to provide his opinion about the report of Plaintiff's expert, Dr. Barbara Ziv. *See* Dr. Lubit's written report ("Report"), attached hereto as Exhibit 1.

Dr. Lubit's written opinions in his Report are speculative and based on incorrect assumptions. Many of the written opinions in his Report are also contradictory of written opinions Dr. Lubit has posted on his professional website, located at https://www.roylubit.com/home/emotional_trauma__ptsd.html. In some cases, the

written opinions expressed by Dr. Lubit in his Report and the written opinions expressed by Dr. Lubit on his website are diametrically opposed to each other. Therefore, Dr. Lubit's report is unreliable and of no value to the judicial process.

## Legal Standard for Admissibility of Expert Evidence

The requirements of Fed. R. Evid. 702, as interpreted by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993), are well known. The trial court must function as a gatekeeper and engage in a rigorous three-part inquiry to determine whether: (1) the expert is <u>qualified</u> to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently <u>reliable</u>; and (3) the testimony <u>assists the trier of fact</u>, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) (citing *Daubert*, 509 U.S. at 592). If not all three criteria are met, then the expert's testimony is inadmissible. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998).

There is a fourth pervasive criterion for admissibility. Because expert testimony may be assigned "talismanic significance" in the eyes of lay jurors, the district court must also weigh the value of such evidence against its potential to mislead or confuse. *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004). If the probative value is substantially outweighed by the potential to confuse or mislead the jury, or if the testimony is cumulative or needlessly time consuming, expert opinions may be excluded under Fed. R. Evid. 403. *See id.* Indeed, in weighing possible prejudice

against probative force under Rule 403, the judge exercises more control over experts than over lay witnesses. *See Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962).

**I.  Dr. Lubit Should Be Excluded as an Expert Because His Opinions Do Not Pass Muster Under *Daubert***

The Eleventh Circuit has referred to the *Daubert* admissibility requirements as the "qualifications," "reliability," and "helpfulness" prongs, which are distinct concepts to be individually analyzed. *See Frazier*, 387 F.3d at 1260.

**A. Qualifications**

Dr. Lubit is a board-certified psychiatrist. His opinions are inadmissible, not due to his qualifications, but rather, because they are unreliable and unhelpful to the jury.

**B. Reliability**

The Court should preclude Dr. Lubit from testifying to ensure that his speculative, unreliable opinions do not reach the jury under the mantle of reliability that accompanies the designation of "expert testimony." This requirement authorizes expert opinion testimony "if (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based upon sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The trial court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual

rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

"Nothing causes greater prejudice than to have to guess *how* and *why* an adversarial expert reached his or her conclusion." *Reed v. Binder*, 165 F.R.D. 424, 430 (D. N.J. 1996) (emphasis added). Here, Dr. Lubit's conclusions are not based on sufficient facts or data, and in formulating his conclusions, Dr. Lubit failed to employ an even plausibly sufficient level of intellectual rigor to ensure that his opinions would be reliable.

For example, Dr. Lubit's Report contains, among many others, the following six highly problematic conclusions:

- *Although people are more likely to delay than to immediately report abuse or harassment, immediate reporting is more likely to be true than delayed reporting.*

Exhibit 1, p. 2. Dr. Lubit's opinions about delayed reporting, versus immediate reporting, and his assessment of credibility corresponding to the timeliness of the reporting, are unsubstantiated and unexplained.

- *There are times when people make false allegations of abuse or harassment. This can occur for monetary reasons, revenge, or because when people regret having had sex, to assuage their guilt or shame, they sometimes convince themselves that it was not voluntary.*

Exhibit 1, p. 2. Dr. Lubit summarily concludes, without any basis, that "there are times when people make false allegations of abuse or harassment." This is wholly unsubstantiated victim-blaming.

4

- *It is unusual that a supervisor would begin to pressure a subordinate into having sex by threatening the subordinate. It is far more common to bribe subordinates. If her superior actually did threaten her into having sex with him, it would be unusual if he did not try it again with her, multiple times.*

Exhibit 1, p. 3. Dr. Lubit does not provide any basis for his opinion that it is "unusual" that a supervisor would begin to pressure a subordinate into having sex by threatening the subordinate. He states, "It is far more common to bribe subordinates. If her superior actually did threaten her into having sex with him, it would be unusual if he did not try it again with her, multiple times." Yet, he does not cite any sources for any of this, or how or why it is "unusual."

- *It is also surprising that she was unsure whether she attended his sendoff party, but that she may have attended, rather than avoiding it. It would be surprising if she would attend his party given that avoidance is a required and central symptom of Post-Traumatic Stress Disorder (PTSD).*

Exhibit 1, p. 3. Further, Dr. Lubit concludes, without rationale, that Plaintiff's conduct was "surprising," and that the Plaintiff should have avoided the party.

- *It was reported to me that, after she made the complaint, the Plaintiff said that she saw a therapist a few times and reported all of her depression was the result of the alleged assault. However, losing one's job for poor performance is a substantial stress and likely to have a very substantial impact on someone. It is very unlikely that it would all be from an event years before. Her performance decline, and its timing, suggests it was related to post-partum mood issues, which are very common.*

Exhibit 1, p. 3. Dr. Lubit concludes without analysis or explanation, that Plaintiff's depression was unlikely from the sexual assault and rape. Instead, without any basis or rationale, he suggests it was "related to post-partum mood issues, which are very common."

5

- *She said she took an antidepressant for a few weeks and stopped because she couldn't afford it. Even without insurance one can get escitalopram for $12.69 from Rite Aid and less at Sam's Club, Costco, Stop and Shop, and Acme. Moreover, doctors can usually get such medications for free for clients who can't afford it.*

Dr. Lubic also speculates that the Plaintiff, who lives in El Salvador, could have bought Escitalopram—a medication used to treat major depressive disorders—for "$12.69 from Rite Aid and less at Sam's Club, Costco, Stop and Shop," and other American retailers and pharmacies. He goes on to opine, again without any basis or rationale, that "doctors can usually get such medications for free for clients who can't afford it." Dr. Lubit does not appear to understand that Plaintiff is a citizen and resident of El Salvador or that she cannot visit retailers in the United States to purchase medications.

In all six of the preceding examples from Dr. Lubit's Report, the doctor fails to provide any sources or any rationale at all for his conclusions. In fact, his entire Report contains only one citation to any source at all. That single citation is to an article from a 1977 psychological journal.

An expert's failure to explain the basis for an important inference warrants exclusion of his opinion. *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344 (11th Cir. 2003). In the case of Dr. Lubit's Report, with the exception of a single citation to an article from a 1977 psychological journal, Dr. Lubit has not provided any basis or reasoning to support any of his opinions or conclusions. Dr. Lubit's failure to explain the basis for numerous inferences in his Report causes great prejudice. The Court, and the Plaintiff, are left to simply guess how Dr. Lubit arrived at his conclusions.

The party offering the expert bears the burden of laying the proper foundation for admission of the expert's testimony. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). Any conclusions by the expert must be supported by good grounds for every step in the analysis, and if any step is rendered unreliable, the expert's testimony is inadmissible. *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005).

The Court should exclude Dr. Lubit's testimony under Rule 702, because Crowley has not established that his methodology or experience is reliable to establish his particular opinions, nor has Crowley shown how these particular opinions are supported by his experience or methodology.

Dr. Lubit's generalized opinions are unsubstantiated and disconnected from the facts of this case. Without any support, these opinions are not based on expert knowledge and therefore, are not entitled to the "dignity of evidence." *Navarro v. Fuji Heavy Indus., Ltd.*, 117 F.3d 1027, 1031 (7th Cir. 1997). In addition to the expert's conclusions themselves, an expert report *must* contain "the data or other information considered by the witness in forming them." Rule 26(a)(2)(B)(ii). Dr. Lubit's Report completely misses the mark. Specifically, his Report consists of all conjecture and no data. Expert opinion must be based on fact-finding, and this is not.

Under these circumstances, striking the expert report is the proper remedy. *See e.g.*, *Santiago–Diaz v. Laboratorio Clinico Y De Referencia Del Este*, 456 F.3d 272, 274 (1st Cir. 2006) (noting that the expert's two "conclusory" paragraphs, "did not by any stretch of the most fertile imagination meet the criteria set by the Civil Rules for expert

witness reports"); *Flebotte v. Dow Jones & Co., Inc.,* No. 97–30117–FHF, 2001 WL 35988081, at *2 (D. Mass. Feb. 7, 2001) (striking an expert report where it failed to identify any diagnostic tools as the basis for the proposed medical causation opinion, and, instead, "merely indicate[d] that [the expert] formulated his opinion based on his conversations with [the plaintiff] during treatment sessions").

Crowley has not explained in its expert disclosure, attached as Exhibit 2, how Dr. Lubit's experience led to the conclusions he reached, why his experience was a sufficient basis for these opinions, or how he applied his experience to reach his conclusions. In the absence of a showing of particularized knowledge and a reliable method underlying his testimony, this court should preclude Dr. Lubit's testimony.

**C. Helpfulness**

Dr. Lubit's opinions should be excluded because they will confuse and mislead the jury. They are not helpful to the jury. Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. *Frazier*, 387 F. 3d 1244, 1262-63. Therefore, Fed. R. Evid. 702, *Daubert*, and its progeny require the Court to perform its gatekeeping function to exclude such information which will not assist the jury. "Leaps of faith" unsupported by good science preclude the admission of expert testimony. *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002).

Here, for example, Dr. Lubit contains the following observations, which are better left for Crowley's lawyers at closing argument:

8

- *"Sexual harassment does not always lead to PTSD or other social or work problems."*

Exhibit 1, p. 2.

Dr. Lubit's Report also improperly invades the province of the jury and the province of the Court:

- *"Presentation of Sexual Abuse Accommodation Syndrome is more prejudicial than probative."*

Exhibit 1, p. 2. It is for the Court, and not for Dr. Lubit, to decide whether evidence is more prejudicial than probative.

- *"In addition, simply thinking about going would stir strong feelings and it is highly probable that an individual in her position would remember such an event rather than be unsure if she went. People recall major events and for her to not recall one way or the other is surprising, if he had sexually assaulted her."*

Exhibit 1, p. 3. These opinions are not the product of psychiatric expertise. Dr. Lubit has no basis to opine about Plaintiff's recollection; and Dr. Lubic would invade the province of the Court and jury if he opined about whether particular conduct was highly probable, or surprising.

**D. Relevance; and Excluding Evidence for Prejudice, Confusion**

Exclusion of Dr. Lubit's opinions is also appropriate because they are irrelevant, speculative, and potentially confusing. Crowley "has the burden of demonstrating that the testimony is 'relevant to the task at hand' and 'logically advances a material aspect' of its case." *Boca Raton Community Hospital, Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009). Expert testimony that is not both supported by a reliable

foundation and relevant to the task at hand is inadmissible under *Daubert*, 509 U.S. at 597.

Dr. Lubit's Report contains random generalizations that have nothing to do with this case. For example:

> Moreover, in a relationship, the risk that a relationship will end if one doesn't engage in sexual relations, is a social cost. If two people are living together and one of the parties' fears that if they don't have sex it could weaken the relationship and eventually end it, there are social and economic consequences. If one of the parties has substantially more money and pays for dinners, there are social and economic consequences if the more financially well-off party is ever the one to suggest they engage in sexual activity. Almost anytime people are working together, especially at different levels, but even at the same level, there may be broad consequences if one of the parties decides to end the relationship and so, according to Dr. Ziv, neither party has the capacity to consent. The result is often a ban on dating people one works with. A problem with this, is that it impedes the free will of the two individuals. Once college is over, a substantial percentage of the population become involved with someone they know from work.

Report, Exhibit 1, p. 2.

In her Amended Complaint, Plaintiff alleges that she was raped by her supervisor, Defendant Juan Blanco, during a Crowley business trip. Dr. Lubit's Report does not contain any helpful rationale or analysis for the jury. There is no explanation as to why he mentions people being "in a relationship" or "living together" or one of the parties "pay[ing] for dinners" and the "social and economic consequences if the more financially well-off party is ever the one to suggest they engage in sexual activity." There are no allegations anywhere in this case that any of the parties were dating or in a relationship, beyond a supervisor-subordinate relationship in the workplace, at Crowley.

Dr. Lubit's Report suggests:

> Almost anytime people are working together, especially at different levels, but even at the same level, there may be broad consequences if one of the parties decides to end the relationship and so, according to Dr. Ziv, neither party has the capacity to consent. The result is often a ban on dating people one works with. A problem with this, is that it impedes the free will of the two individuals. Once college is over, a substantial percentage of the population become involved with someone they know from work.

Report, p. 2.

In this case, there are no claims or defenses that allege that any party was "in a relationship" with anyone, or that "one of the parties decide[d] to end the relationship." The Report also identifies a problem with banning dating at work because it supposedly "impedes the free will of the two individuals." Yet, there are no claims or defenses that anyone was "dating" anyone in this case, or that dating people at work at Crowley was prohibited. Therefore, Dr. Lubit's Report seems disconnected from this case and does not contribute anything. It would also be outrageous and absurd to suggest to the jury that considerations have to be taken not to impede the free will of individuals who commit sexual assault and rape.

Therefore, Dr. Lubit's analogies are irrelevant to any issue in this case. Where, as here, the expert's opinion does not have "a 'valid scientific connection to the pertinent inquiry' it should be excluded because there is no 'fit.'" *Boca Raton Community Hospital*, 582 F.3d at 1232.

Here, Dr. Lubit has introduced irrelevant observations about relationships and dating in the workplace. This is extraneous to any allegations, defenses, and the issues

for determination by the jury. The opinions do not logically advance any material aspect of the case. These opinions are conclusory, unreliable, speculative, non-scientific, uncorroborated by the evidence, and devoid of methodology. Dr. Lubit's testimony should be excluded.

## Conclusion

Crowley has not met its burden of establishing the admissibility prongs of Fed. R. Evid. 702 and *Daubert*. Dr. Lubit's Report is based on unrelated and unreliable assumptions, rather than on any methodology. Consequently, Crowley cannot establish that Dr. Lubit's opinions are reliable or that they will assist the trier of fact. His Report also lacks "fit" with the facts of this case and is likely to mislead the jury and unduly prejudice the Plaintiff. As a result, allowing Dr. Lubit's testimony in this case would be tantamount to the trial court essentially abandoning its gatekeeping duties that the Federal Rules of Evidence impose.

WHEREFORE, Plaintiff respectfully requests the Court enter an order striking Dr. Roy Lubit as an expert witness, and excluding his testimony, and comments, from evidence at trial.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 3.01(g), undersigned counsel certifies that counsel for the movant conferred with counsel for both Defendants to resolve the issues presented in this Motion. However, counsel were unable to resolve the dispute, and Defendants oppose the relief requested.

# CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that this document is being served this day on all counsel on the Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

*/s/ Adria G. Notari*
**ADRIA G. NOTARI**
Florida Bar No. 87272
Attorney for Plaintiff
**NOTARI LAW, P.A.**
1820 SW 14th Court
Fort Lauderdale, FL 33312
Tel: (954) 257-9028
Fax: (954) 231-1128
anotari@NotariLaw.com

**J. RYAN MELOGY**
*pro hac vice*
**Maritime Legal Solutions, PLLC**
276 Fifth Ave., Suite 704-1454
New York, NY 10001
Telephone: (347) 562-9119
maritimelegalsolutions@pm.me

# SERVICE LIST

**ADRIA G. NOTARI**
Florida Bar No. 87272
NOTARI LAW, P.A.
1820 SW 14th Court
Fort Lauderdale, Florida 33312
Telephone: (954) 257-9028
Fax: (954) 231-1128
anotari@NotariLaw.com
*Attorney for Plaintiff,*
*Vanessa Treminio*

**J. RYAN MELOGY**
*pro hac vice*
MARITIME LEGAL SOLUTIONS, PLLC
276 Fifth Ave., Suite 704-1454
New York, NY 10001
Telephone: (302) 827-3890
maritimelegalsolutions@pm.me
*Attorney for Plaintiff,*
*Vanessa Treminio*

**KELLY DEGANCE**
Florida Bar No. 0606022
ALEXANDER DEGANCE BARNETT, P.A.
1500 Riverside Avenue
Jacksonville, FL 32204
(904) 345-3277 Telephone
(904) 345-3294 Facsimile
Kelly.degance@adblegal.com
*Attorney for Defendant,*
*Crowley Maritime Corporation*

**SAMANTHA GIUDICI BERDECIA**
Florida Bar No. 0058667
ALEXANDER DEGANCE BARNETT, P.A.
1500 Riverside Avenue
Jacksonville, FL 32204
(904) 345-3277 Telephone
(904) 345-3294 Facsimile
samantha.giudici@adblegal.com
*Attorney for Defendant,*
*Crowley Maritime Corporation*

**C. MICHAEL WILLIAMS**
Florida Bar No. 691046
Law Office of C. Michael Williams, P. A.
1710 Shadowood Ln, Ste. 220
Jacksonville, Florida 32207
(904) 629-0313
seemichaelwilliams@gmail.com
*Attorney for Defendant,*
*Juan Emilio Blanco*

**KRISTYNE E. KENNEDY**
Florida Bar No.: 194700
**KELSEY N. ORTIZ**
Florida Bar No.: 1010647
COLE, SCOTT & KISSANE, P.A.
Tower Place, Suite 400
1900 Summit Tower Boulevard

Orlando, Florida 32810
Kristyne.Kennedy@csklegal.com
Kelsey.Ortiz@csklegal.com
Telephone: (321) 972-0028
Facsimile: (321) 972-0099
*Attorneys for Defendant, Juan Emilio Blanco*