# UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA

## JACKSONVILLE DIVISION

|  |  |
|---|---|
| VANESSA TREMINIO,<br><br>    Plaintiff,<br><br>v.<br><br>CROWLEY MARITIME<br>CORPORATION, and JUAN EMILIO<br>BLANCO,<br><br>    Defendants. | 3:22-cv-00174-CRK-PDB<br><br>OPINION AND ORDER RE:<br>MOTION FOR SUMMARY<br>JUDGMENT |

## INTRODUCTION

Before the Court are two motions for summary judgment. The first motion, filed by Defendant Crowley Maritime Corporation ("Crowley"), moves for summary judgment in its favor on Plaintiff Vanessa Treminio's ("Plaintiff") claims against Crowley for violations of the Trafficking Victim's Protection Reauthorization Act ("TVPRA")[1] §§ 1589 and 1591. See Def. [Crowley's] Mot. Summ. J. at 1, Aug. 2, 2023,

---

[1] The Trafficking and Victim's Protection Act ("TVPA") has been reauthorized and amended numerous times since its implementation in 2000. See Human Trafficking: Key Legislation, U.S. Dep't of Just. (Aug. 23, 2023), https://www.justice.gov/humantrafficking/key-legislation#:~:text=The%20TVPRA%202008%20expanded%20the,potential%20victims%20of%20human%20trafficking (last visited Dec. 11, 2023). In 2003, Congress reauthorized and amended the TVPA with the Trafficking Victims Protection Reauthorization Act of 2003, which refined the criminal provisions against trafficking and included a civil remedy actionable by victims against their traffickers in federal court. See id.; see also Pub. L. No. 108-193. Because Plaintiff's sex trafficking and forced labor claims rest upon the civil action remedy created by the 2003 amendment,

3:22-cv-00174-CRK-PDB

ECF No. 88 ("Crowley Mot."); see also Pl.'s Resp. Opp'n [Crowley's] Mot. Summ. J. at 1, Aug. 23, 2023, ECF No. 103 ("Pl. Resp. (Crowley)").   The second motion, filed by Defendant Juan Emilio Blanco ("Blanco"), moves for summary judgment in his favor on Plaintiff's claims against him for violation of the TVPRA and tortious conduct including sexual battery and false imprisonment. See Def. [Blanco's] Mot. Summ. J. at 1, Aug. 2, 2023, ECF No. 90 ("Blanco Mot."); see also Pl. Resp. Opp'n [Blanco's] Mot. Summ. J. at 1, Aug. 23, 2023, ECF No. 104 ("Pl. Resp. (Blanco)").   For the following reasons, Crowley's and Blanco's motions are denied.

## BACKGROUND[2]

### A.   Undisputed Facts

In 2012, Plaintiff was hired in El Salvador by Crowley Shared Services, S.A. de C.V., a subsidiary of Crowley.  Crowley Mot. at 2 (citing Dep. Vanessa Treminio at 56–57, 63, Aug. 2, 2023, ECF No. 89-1 ("Treminio Dep.")); Pl. Resp. to Crowley at 2–3.  After five years of employment, Plaintiff was transferred to the role of Coordinator

---

see Am. Compl. ¶¶ 102, 115, 155, the applicable statute will be referred to as the Trafficking and Victims Protection Reauthorization Act ("TVPRA").

[2]  Defendant Crowley does not include a statement of undisputed facts.  To identify the relevant disputed and undisputed facts at issue as they pertain to Crowley and Plaintiff, the Court compared the "Relevant Factual Background" section of Crowley's moving brief with Plaintiff's "Response to Crowley's Factual Background" in her response and Crowley's "Factual Errors by Plaintiff" in its reply.  See Crowley Mot. at 2–9; Pl. Resp. (Crowley) at 2–9; [Crowley's] Reply to [Pl.'s Resp. (Crowley)] at 1–2, Sept. 6, 2023, ECF No. 109 ("Crowley Reply").   Similarly, the Court compared Blanco's "Statement of Undisputed Facts" in his moving brief with Plaintiff's "Response to Blanco's Statement of Undisputed Facts" in her response brief and Blanco's reply to identify the relevant disputed and undisputed factual background of the claims against Blanco.  See Blanco Mot. at 4–7; Pl. Resp. (Blanco) at 1–4; Def. [Blanco's] Reply to [Pl. Resp. (Blanco)] at 1–3, Sept. 6, 2023, ECF No. 110 ("Blanco Reply").

**OPINION AND ORDER - 2**

3:22-cv-00174-CRK-PDB

of the Inland Department in 2017.  Crowley Mot. at 2 (citing Treminio Dep. at 98–101); Pl. Resp to Crowley at 3.  Plaintiff reported to and was supervised by Blanco. Blanco Mot. at 5 (citing Treminio Dep. at 42:3–5); Crowley Mot. at 2 (citing Treminio Dep. at 21, 38, 42); Pl. Resp. (Crowley) at 3.  Blanco was employed by Crowley from 2010 to 2018 and was the Administrative Supervisor for Logistics in the Inland Department from 2015 to 2018.  Blanco Mot. at 4 (citing Decl. Juan Emilio Blanco at ¶ 6, Aug. 2, 2023, ECF No. 90-1 ("Blanco Decl.")); Pl. Resp. (Blanco) at 3 (citing Dep. Tiffany King at 185:19–24, May 17, 2023, ECF No. 89-3 ("King Dep.")).

On September 4, 2017, employees of Crowley, including Plaintiff and Blanco, traveled to Jacksonville, Florida for a training sponsored by Crowley.  Crowley Mot. at 2 (citing Treminio Dep. at 98-101; Dep. Jose Lopez at 123:8–25, 124:1–21, Aug. 2, 2023, ECF No. 89-4 ("Lopez Dep.")); Pl. Resp. (Crowley) at 3.  Crowley employees, including Plaintiff and Blanco, returned to El Salvador after the training ended. Crowley Mot. at 2; Pl. Resp. (Crowley) at 3; Blanco Mot. at 5; Pl. Resp. (Blanco) at 1.

Plaintiff and another Crowley employee returned to Jacksonville on November 5, 2017, for an additional training sponsored by Crowley.  Crowley Mot. at 4 (citing Treminio Dep. at 115, 118–19); Pl. Resp. (Crowley) at 5; Blanco Mot. at 5 (citing Treminio Dep. at 118:13–17); Pl. Resp (Blanco) at 1–2 (citing Treminio Dep. at 146:17–20).  Blanco was already in Jacksonville when Plaintiff arrived, and they were scheduled to work together, stay at the same hotel, and return to El Salvador on the same flight.  Crowley Mot. at 4 (citing Decl. Francheska Bensan at 2, Aug. 2, 2023, ECF No. 89-9 ("Bensan Decl."); Pl. Resp. (Crowley) at 5.

**OPINION AND ORDER - 3**

3:22-cv-00174-CRK-PDB

On November 7, 2017, while Plaintiff and Blanco were in Jacksonville, Crowley received an anonymous complaint against Blanco, alleging that he "yelled, cursed, and made sexual comments to other employees" on a daily basis.  Crowley Mot. at 4 (citing Dep. Arthur LaMoureaux at Exh. 1, May 12, 2023, ECF No. 89-2 ("LaMoureaux Dep.")); Pl. Resp. (Crowley) at 5–6 (citing EthicsPoint Case No. 280, Aug. 23, 2023, ECF No. 103-1).   On November 9, Crowley received two more anonymous complaints against Blanco, one of which alleged sexually harassing behavior by Blanco.  Crowley Mot. at 4 (citing LaMoureaux Dep. at Exh. 2); Pl. Resp. (Crowley) at 6 (citing EthicsPoint Cases No. 282–83, Aug. 23, 2023, ECF Nos. 89-2–3).   Plaintiff did not contact the police or report any occurrences to Crowley on November 9, 2017.  Crowley Mot. at 5 (citing Treminio Dep. at 155–57); Pl. Resp. (Crowley) at 6–7.  On November 10, Plaintiff, Blanco, and another Crowley employee drove to the Crowley office.  Crowley Mot. at 5 (citing Treminio Dep. at 159); Pl. Resp. (Crowley) at 7.  Later that day, Plaintiff and Blanco returned to El Salvador.  Crowley Mot. at 6 (citing Treminio Dep. at 174–75); Pl. Resp. (Crowley) at 5; Blanco Mot. at 6 (citing Treminio Dep. at 156:7–9; 175:13–18; 177:11–78:2); Pl. Resp. (Blanco) at 2–3 (citing Treminio Dep. at 156:7–9; 175:13–18; 177:11–78:2).   Sometime after the anonymous reports were made, Senobia Matute, Crowley's Regional Human Resources Business Partner for Central America, was assigned to investigate the anonymous complaints made on November 7 and November 9, and to travel to El Salvador to meet with employees supervised by Blanco.  Crowley Mot. at 5 (citing LaMoureaux Dep. at 22, 26; King Dep. at 103–05); Pl. Resp. (Crowley) at 6 (citing

**OPINION AND ORDER - 4**

Dep. Francheska Bensan at 157:12–17, June 29, 2023, ECF No. 89-8 ("Bensan Dep.")).

Plaintiff travelled to Puerto Rico on or about November 13, 2017, for another business trip directed by Crowley. Crowley Mot. at 6 (citing Treminio Dep. at 179, 181); Pl. Resp. (Crowley) at 7 (citing Treminio Dep. at 179:8–19). Plaintiff told Ayesha Diaz, Crowley's former General Manager for Warehouse Operations, about the disputed incidents that occurred both at the El Salvador office between September 2017 and November 2017, and the certain disputed incidents during the November training in Jacksonville. Crowley Mot. at 6 (citing Treminio Dep. at 179, 181; Dep. Ayesha Diaz-Munoz at 14–15, June 27, 2023, ECF No. 89-7 ("Diaz Dep.")); Pl. Resp. (Crowley) at 7 (citing Treminio Dep. at 179:8–19). In late November or earlier December, Plaintiff contacted Arthur LaMoureaux, Vice President of Internal Audit, Ethics and Compliance, and reported a disputed incident at the November training. Crowley Mot. at 6 (Treminio Dep. at 182, 186–87; LaMoureaux Dep. at 40–41; 190–91); Pl. Resp. (Crowley) at 7.

Sometime later, Matute contacted Plaintiff and asked if she had any statements or information pertaining to Blanco as part of her investigation into the anonymous reports. Crowley Mot. at 7 (citing Treminio Dep. at 183); Pl. Resp. (Crowley) at 8 (citing Treminio Dep. at 184:1–85:11). Plaintiff responded that she did not have any statements or information regarding Blanco's conduct or any of the allegations lodged in the anonymous complaints. Crowley Mot. at 7 (citing Treminio Dep. at 183, 185); Pl. Resp. (Crowley) at 8 (citing Treminio Dep. at 184:1–85:11). On

3:22-cv-00174-CRK-PDB

December 20, 2017, Matute sent a draft report of the investigation concerning the anonymous complaints against Blanco to Crowley's Director of Human Resources, Tiffany King.  Crowley Mot. at 7–8 (citing Dep. Heitzel Fabiola Monroy Sosa, May 25, 2023, ECF No. 89-7 ("Monroy Dep.")); Pl. Resp. (Crowley) at 8.  The draft report found that Blanco had made inappropriate sexual comments to Crowley employees and recommended that immediate action be taken against Blanco.  Crowley Mot. at 8 (citing Monroy Dep.; King Dep. at 166–67, 174–76, 180–81, 183); Pl. Resp. (Crowley) at 9.  On January 23, 2018, Crowley received another complaint against Blanco. Crowley Mot. at 8 (citing LaMoureaux Dep. at Exh. 4); Pl. Resp. (Crowley) at 9 (citing EthicsPoint Case No. 297, Aug. 23, 2023, ECF No. 103-4).  Blanco was terminated by Crowley on January 24, 2018.  Crowley Mot. at 8 (citing LaMoureaux Dep. at 6–7); Pl. Resp. (Crowley) at 9.

Following Blanco's termination, Plaintiff continued to work for Crowley for three years.  Crowley Mot. at 8 (citing Treminio Dep. at 51, 53, 60; Bensan Decl. at Exh. B); Pl. Resp. (Crowley) at 9.  On January 14, 2021, Plaintiff was terminated by Crowley, with poor performance being the cited grounds.  Crowley Mot. at 9; Pl. Resp. (Crowley) at 9; Blanco Mot. at 6 (citing Treminio Dep. at 245:14–17); Pl. Resp. (Blanco) at 3.

### B.    Plaintiff's Disputed Allegations

Plaintiff alleges that Blanco, as Plaintiff's supervisor in the Inland Department, possessed authority to decide or influence which Inland Department employees would be selected for trainings.  See Blanco Mot. at 5 (citing Lopez Dep. at

3:22-cv-00174-CRK-PDB

20:6–24); Pl. Resp. (Blanco) at 1 (Lopez Dep. at 123:20–24:4); Blanco Reply at 1–3 (citing Treminio Dep. at 137:21–22).  Blanco denies that he possessed the authority to make personnel assignments, and that the decision to select or require Plaintiff to travel for business-related trips was made by Blanco's supervisor, Jose Lopez.  Blanco Mot. at 5 (citing Lopez Dep. at 30:6–17; King Dep. at 68:24–69:6, 70:5–12, 71:22–25); Blanco Reply at 1–2 (citing Dep. Blanca Hernandez at 76:15–77:25, June 12, 2023, ECF No. 87-6 ("Hernandez Dep.").  Plaintiff alleges that during the September training, Blanco harassed Plaintiff, which she allegedly reported to Arthur Moureaux.  Pl. Resp. (Crowley) at 4 (citing Treminio Dep. at 317, 320).  Crowley denies that Blanco behaved inappropriately during the trip, and further denies that any complaints were filed by Plaintiff in connection to the September training. Crowley Mot. at 3 (citing Treminio Dep. at 98, 109, 114–15); Pl. Resp. (Crowley) at 3–4 (citing Treminio Dep. at 317, 320).

Plaintiff alleges that sometime in between the September and November trainings, Blanco groped and shook Plaintiff's breast in an elevator in Crowley's El Salvador office.  Crowley Mot. at 3 (citing Treminio Dep. at 77–80, 98); Pl. Resp. (Crowley) at 4 (citing Treminio Dep. at 76–79; Diaz Dep.).  Plaintiff alleges that she immediately reported the incident to the Human Resources manager in the El Salvador office, Jacqueline Najera.  Crowley Mot. at 3 (citing Treminio Dep. at 78–81); Pl. Resp. (Crowley) at 4 (citing Treminio Dep. at 76–79).  Plaintiff alleges Najera responded that the elevator cameras were not functioning, and therefore it would be "Plaintiff's word against Blanco's."  Crowley Mot. at 3 (citing Treminio Dep. at 81–

**OPINION AND ORDER - 7**

3:22-cv-00174-CRK-PDB

82); Pl. Resp. (Crowley) at 4 (citing Treminio Dep. at 82). Plaintiff states she told Najera that she did not feel safe travelling with Blanco and requested that she be excused from attending the November training in Jacksonville. Crowley Mot. at 3 (citing Treminio Dep. at 82–87); Pl. Resp. (Crowley) at 4 (citing Treminio Dep. at 83). Najera then allegedly threatened Plaintiff with termination and poor references if she refused to travel, and additionally reminded Plaintiff to consider her and her child's well-being when making her decision. Crowley Mot. at 3 (citing Treminio Dep. at 82–87); Pl. Resp. (Crowley) at 4 (citing Treminio Dep. at 84).

Plaintiff alleges when she left Najera's office after their conversation ended, Blanco was waiting at Plaintiff's desk. Crowley's Mot. at 3 (citing Treminio Dep. at 82–87); Pl. Resp. (Crowley) at 5 (citing Treminio Dep. at 89). Plaintiff asserts that Blanco aggressively grabbed and squeezed Plaintiff's arm, threatened her, and warned her of the adverse consequences of termination for her and her child, and that she "did not want Blanco as an enemy." Crowley Mot. at 3 (citing Treminio Dep. at 82-87); Pl. Resp. (Crowley) at 5 (citing Treminio Dep. at 89). Crowley disputes the incidents between Plaintiff, Blanco, and Najera, alleging that Plaintiff failed to take any photographs of the fingerprint marks, did not disclose the cause of the marks, and did not report Blanco's alleged behavior. Crowley Mot. at 3 (citing Treminio Dep. at 91–94).

Plaintiff alleges that on November 9, 2017, Blanco forcibly entered Plaintiff's hotel room, without her permission, and raped her in the Jacksonville hotel where the Crowley training was located. Crowley Mot. at 5–6 (citing Treminio Dep. at 146–

**OPINION AND ORDER - 8**

3:22-cv-00174-CRK-PDB

48); Pl. Resp. (Blanco) at 6–7 (citing Treminio Dep. 146:17–20).  Plaintiff contends that she reported the alleged rape the next morning on November 10, 2017 at Crowley's Jacksonville office to Jose Lopez, Blanco's superior, and an unnamed blonde woman from Human Resources.  Crowley Mot. at 5–6 (citing Treminio Dep. at 160–64); Pl. Resp. (Crowley) at 7 (citing Treminio Dep. at 167–69).  Plaintiff claims that in response to the report, Lopez discounted the severity of Plaintiff's allegations, refused to file a police report, and threatened termination if she spoke about the alleged rape.  Crowley Mot. at 6 (citing Treminio Dep. at 166–67, 171); Pl. Resp. (Crowley) at 7 (citing Treminio Dep. at 167–69).  Blanco denies that he ever entered Plaintiff's hotel room, or that he ever assaulted, battered, or touched Plaintiff in any sexual or otherwise inappropriate way.  Blanco Decl. at ¶ 6.  Crowley asserts that Plaintiff's claims regarding the alleged incident are not credible.  Crowley Mot. at 6 (citing Lopez Dep. at 39–42).  It is also disputed whether the November 7 anonymous complaint was the first instance that Crowley was alerted to any of Blanco's workplace behavior.  Crowley Mot. at 5 (citing LaMoureaux Dep. at 20–21); Pl. Resp. (Crowley) at 6 (citing Bensan Dep. at 157:12–17).

The parties dispute the content and nature of Plaintiff's conversation with LaMoureaux when she contacted him to report Blanco's conduct.  See Crowley Mot. at 6 (citing LaMoureaux Dep. at 40–41, 190–91); Pl. Resp. (Crowley) at 7 (citing LaMoureaux Dep. at 33:4–34:13, 229:4–8, 231:17–23, 246:13–23, 283:16–85:2).  Crowley claims that LaMoureaux was never informed of the alleged elevator incident between September and November.  See Crowley Mot. at 6 n.31 (citing LaMoureaux

**OPINION AND ORDER - 9**

3:22-cv-00174-CRK-PDB

Dep. at 40–41, 190–91).  Plaintiff claims that she reported both the alleged assault in the elevator at the El Salvador office between September and November as well as the alleged rape in the hotel.  Pl. Resp. (Crowley) at 7 (citing LaMoureaux Dep. at 35:9–19).  Moreover, it is disputed whether LaMoureaux represented to Plaintiff that he would personally investigate the matter, or whether he would refer it to the department that typically handled such allegations.  Crowley Mot. at 7 (citing Treminio Dep. at 188; LaMoureaux Dep. at 15); Pl. Resp. (Crowley) at 7–8 (citing LaMoureaux Dep. at 35:9–19).  Crowley contends that LaMoureaux knew that allegations of sexual assault were handled by Human Resources rather than his department,[3] and therefore did not represent to Plaintiff that he would personally investigate her claims and instead referred the report to Matute in Human Resources.  Crowley Mot. at 6–7 (citing LaMoureaux Dep. at 15, 37).  Plaintiff avers that LaMoureaux said that he would personally investigate the matter, which Plaintiff contends was improper and he instead should have directed Plaintiff to Human Resources.  Pl. Resp. (Crowley) at 7–8 (citing LaMoureaux Dep. at 35:9–19).

Crowley's reasons for terminating Blanco are also disputed.  It is disputed whether Matute and King recommended that Blanco be terminated after the December 20, 2017 draft report—as Crowley contends—or whether the decision to fire Blanco was made after another complaint was filed against him in January 2018—as Plaintiff contends.  See Crowley Mot. at 8 (citing Monroy Dep.; King Dep.

---

[3]  LaMoureaux later testified that allegations of sexual assault were handled by Crowley's Human Resources Department rather than Internal Audit.  LaMoureaux Dep. at 15, 37; see also Pl. Resp. (Crowley) at 7.

**OPINION AND ORDER - 10**

3:22-cv-00174-CRK-PDB

at 166–67, 174–76, 180–81, 183); Pl. Resp. (Crowley) at 9 (citing Bensan Dep. at 301:1–9).

### C. Procedural History

Plaintiff filed her second amended complaint on March 30, 2022 in this Court pursuant to 28 U.S.C. §§ 1331 and 1343, alleging ten causes of action against Defendant Crowley and Defendant Blanco (collectively "Defendants"). See generally Am. Compl., Mar. 30, 2022, ECF No. 14. Three of the claims include violations of 18 U.S.C. §§ 1589, 1591, and 1595, raising federal questions regarding deprivations of Plaintiff's rights. See id. at ¶¶ 101–39, 153–69. Crowley filed its motion to dismiss on April 13, 2022, and Blanco filed his motion to dismiss June 16, 2022. [Crowley's] Mot. to Dismiss Pl. Am. Compl. at 1, Apr. 13, 2022, ECF No. 18; [Blanco's] Mot. to Dismiss [Pl. Am. Compl.] at 1, Jun. 16, 2022, ECF No. 31. On January 5, 2023, the Court granted in part and denied in part Crowley's motion, finding that Plaintiff pleaded sex trafficking and forced labor claims under the TVPRA on which relief could be granted but dismissing all other claims against Crowley. See Order at 1, Jan. 1, 2023, ECF No. 34. The Court also denied Blanco's motion, finding that Plaintiff pleaded sex trafficking and tort claims on which relief could be granted. See id.

The instant motions are filed in response to Plaintiff's claims against Defendants, alleging sex trafficking in violation of TVPRA Sections 1591 and 1595 against Defendants, forced labor in violation of TVPRA Sections 1589 and 1595 against Crowley, and sexual battery and false imprisonment against Blanco. See

**OPINION AND ORDER - 11**

3:22-cv-00174-CRK-PDB

Crowley Mot. at 1–2; Pl. Resp. (Crowley) at 2–16; Blanco Mot. at 1; Pl. Resp (Blanco) at 1–9. Blanco contends he is entitled to summary judgment on all claims against him because Plaintiff fails to establish sex trafficking under 18 U.S.C. § 1591 and § 1595, and that the tort claims are barred by Florida's statute of limitations. Blanco Mot. at 7–20; Blanco Reply at 1–7. Crowley asserts that it is entitled to summary judgment on all claims against it because Plaintiff fails to establish sex trafficking under 18 U.S.C. § 1591 and § 1595 and forced labor under 18 U.S.C. § 1589 and § 1595. Crowley Mot. at 9–27; Crowley Reply at 2–7.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Court has supplemental jurisdiction "over all claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. When a state claim attaches to a federal claim through supplemental jurisdiction, the Court is "constitutionally obligated to apply state laws to state claims." Felder v. Casey, 487 U.S. 131, 151 (1988).

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)

**OPINION AND ORDER - 12**

3:22-cv-00174-CRK-PDB

(citing Fed. R. Civ. P. 56(c)).  The moving party must support its motion with the relevant portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate its entitlement to summary judgment.  Id. at 324.

If the movant shows there are no genuine issues of material fact, "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  See id.  The Court resolves all doubts in favor of the nonmoving party when evaluating a motion for summary judgment. Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013).  Summary judgment must be denied if the Court determines there are factual issues disputed by the parties, and the case proceeds to trial.  Marquez v. Costco Wholesale Corp., 550 F. Supp. 3d 1256, 1271–72 (S.D. Fla. 2021).

## DISCUSSION

Defendants move for summary judgment on all claims filed by Plaintiff.  Blanco contends that he is entitled to summary judgment because: (1) Plaintiff fails to show that Blanco violated the TVPRA as a perpetrator; (2) Blanco did not "recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize or solicit Plaintiff" within the meaning of the TVPRA to establish liability; (3) Blanco lacked the requisite

**OPINION AND ORDER – 13**

3:22-cv-00174-CRK-PDB

mens rea to establish that Plaintiff engaged in a commercial sex act in violation of
the TVPRA; (4) even if Blanco had the requisite mens rea, Plaintiff did not engage in
a "commercial sex act" under the TVPRA; (5) Plaintiff's claims are insufficient to
demonstrate venture liability against Blanco; and (6) Plaintiff's sexual battery and
false imprisonment claims are barred by the applicable statute of limitations.  See
Blanco Mot. at 7–21.  Crowley asserts that Plaintiff's claims fail because: (1) Plaintiff
did not engage in a "commercial sex act" as defined by 18 U.S.C. § 1591, and therefore
Crowley did not violate the TVPRA for sex trafficking under beneficiary or
perpetrator theories of liability; (2) Plaintiff's claim that Crowley committed sex
trafficking when it "covered-up" Plaintiff's allegations of sexual assault fails because
it is insufficient to trigger liability under the TVPRA; and (3) Crowley did not violate
18 U.S.C. § 1589 because Plaintiff's claims do not rise to the level required by the
statute to constitute forced labor.  See Crowley Mot. at 9–24.  For the following
reasons, Defendants motions are denied.

## I.    Claims I and II: Sex Trafficking Against Blanco and Crowley

Plaintiff's first and second counts of her complaint allege sex trafficking in
violation of 18 U.S.C. § 1591 under perpetrator and venture liability theories against
Blanco and Crowley.  Am. Compl. ¶¶ 101–39.  Blanco contends that Plaintiff's claims
fail to demonstrate either perpetrator or venture liability, that Blanco lacked the
required mens rea to establish a violation of the statute, and that Plaintiff's
allegations fail to constitute a commercial sex act under the TVPRA, and therefore is
entitled to summary judgment.  See Blanco Mot. at 7–18.  Crowley argues Plaintiff

**OPINION AND ORDER - 14**

3:22-cv-00174-CRK-PDB

failed to establish a commercial sex act because any value received by Plaintiff, Blanco, or Crowley was not causally related to a purported sex act as required by statute.  <u>See</u> Crowley Mot. at 11.   Crowley also claims it lacked the necessary mens rea for venture or perpetrator liability, it did not participate in or benefit from a venture, and any "cover up" of Plaintiff's reports by Crowley is insufficient to sustain a violation; therefore, a finding of perpetrator or venture liability under the TVPRA is improper.  <u>Id.</u> at 9–21.

## A.    Legal Standard of 18 U.S.C. § 1591(a) and 18 U.S.C. § 1595(a)

Section 1591 of the TVPRA prohibits sex trafficking by force, threat, fraud, or coercion.  18 U.S.C. § 1591(a);[4] <u>see</u> <u>Doe #1 v. Red Roof Inns, Inc.</u>, 21 F.4th 714 (11th Cir. 2021).  In addition to the criminal penalties provided under 18 U.S.C. § 1591, the TVPRA provides a civil remedy under 18 U.S.C. § 1595.  <u>See</u> 18 U.S.C. § 1595(a), (c).

---

[4] The text of 18 U.S.C. § 1591(a) reads:

    (a)    Whoever knowingly—

        (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

        (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

**OPINION AND ORDER – 15**

3:22-cv-00174-CRK-PDB

Sex trafficking under the TVPRA is divided into two theories of liability: perpetrator liability and venture or beneficiary liability.  18 U.S.C. § 1591(a); 18 U.S.C. § 1595(a); see also Red Roof Inns, 21 F.4th at 726.

Perpetrator liability requires that the defendant: (1) knowingly "recruit[ed], entice[d], harbor[ed], transport[ed], provid[ed], obtain[ed], advertise[d], maintain[ed], patronize[d], or solicit[ed] by any means a person;"  (2) knew or was in reckless disregard of the fact that force, threat, fraud, coercion,[5] or a combination of such means was employed against a victim; (3) to cause the victim to engage in a commercial sex act.  18 U.S.C. § 1591(a); see also United States v. Bixler, No. 21-5194, 2022 WL 247740, at *7 (6th Cir. Jan. 27, 2022); Doe v. Knight, 624 F. Supp. 3d 857, 682 (E.D. Mich. 2022); Noble v. Weinstein, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018).

A party demonstrates venture or beneficiary liability by showing that the defendant "(1) knowingly benefitted, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the

---

[5] The TVPRA defines "coercion" in the context of the statute:
(2) The term "coercion" means –
    (A) threats of serious harm to or physical restraint against any person;
    (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against a person; or
    (C) the abuse or threatened abuse of law or the legal process.
18 U.S.C. § 1591(e)(2).

**OPINION AND ORDER – 16**

3:22-cv-00174-CRK-PDB

plaintiff."[6]  Red Roof Inns, 21 F.4th at 726; see also Ricchio v. McLean, 853 F.3d 553, 556–58 (1st Cir. 2017).[7]

Both perpetrator and venture liability contain a mens rea element.  See 18 U.S.C. § 1591(a); see also Red Roof Inns, 21 F.4th at 724 (noting that the statute explicitly provides that a perpetrator must act knowingly and interpreting the statute to require mens rea for beneficiary liability).   Knowledge can be actual or constructive.  Red Roof Inns, 21 F.4th at 725; United States v. Whyte, 928 F.3d 1317, 1328 (11th Cir. 2019); United States v. Copeland, 820 F.3d 809, 813 (5th Cir. 2016); United States v. Robinson, 702 F.3d 22, 32 (2d Cir. 2012).  "Knowledge" means "[a]n awareness or understanding of a fact or circumstance" or "a state of mind in which a person has no substantial doubt about the existence of a fact."  Knowledge, Black's Law Dictionary (11th ed. 2019).  "Actual knowledge" is "[d]irect and clear knowledge," while "constructive knowledge" is "[k]nowledge that one using reasonable care or diligence should have, and therefore is attributed by law to a given person."  Actual

---

[6]  In Doe #1 v. Red Roof Inns, Inc., the Eleventh Circuit held that the elements of Section 1591(a)(2) pertain only to criminal prosecutions of venture or beneficiary liability, while civil suits alleging venture or beneficiary liability are governed by the language of Section 1595(a).  See Red Roof Inns, 21 F.4th at 726.  The court declined to "transpose the definition of 'participation in a venture'" from the criminal section to the civil cause of action.  See id. (citations omitted).

[7]  The key difference between perpetrator and venture liability is that for venture liability, the Plaintiff must show the additional element that the defendant participated in a venture, i.e. "took part in a common undertaking involving risk or profit."  Red Roof Inns, 21 F.4th at 727.  Such a venture does not have to be a sex trafficking venture to be liable under the TVPRA.  G.G. v. Salesforce.com, Inc., 76 F.4th 544, 554 (7th Cir. 2023) (quoting the Eleventh Circuit in Red Roof Inns to state that the venture "can be a 'commercial venture' like running or expanding a business") (internal citations omitted).

**OPINION AND ORDER - 17**

3:22-cv-00174-CRK-PDB

Knowledge, Black's Law Dictionary (11th ed. 2019); Constructive Knowledge, Black's Law Dictionary (11th ed. 2019).

Other courts have concluded that knowledge may be shown by demonstrating that the defendant had an established modus operandi.  Ardolf v. Weber, 332 F.R.D. 467, 475 (S.D.N.Y. 2019).  Although the Eleventh Circuit has not addressed modus operandi in the context of the TVPRA, another court has concluded that a defendant has a modus operandi if it is shown that he knew "he had a pattern of using fraud or force to cause commercial sex acts with victims" at the initial recruitment or enticement stage.  Ardolf, 332 F.R.D. at 475; see also, e.g., United States v. Todd, 627 F.3d 329, 334 (9th Cir. 2010) ("What the statute requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution").  Therefore, a defendant may satisfy the mens rea requirement of Sections 1591(a)(1) and 1595(a) of the TVPRA if it is shown the defendant had: (1) actual or constructive knowledge of a violation of Section 1591(a)(1); (2) an established modus operandi to do so under perpetrator liability; or (3) actual or constructive knowledge that the undertaking or enterprise involving the plaintiff violated the TVPRA under beneficiary liability.  See 18 U.S.C. §§ 1591, 1595; see also, e.g., Red Roof Inns, 21 F.4th at 726; Bixler, 2022 WL 247740, at *7; Knight, 624 F. Supp. 3d at 682; Weinstein, 335 F. Supp.3d at 515; Ardolf, 332 F.R.D. at 475; Todd, 627 F.3d at 334.

The statute defines a "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(e)(3).

**OPINION AND ORDER - 18**

3:22-cv-00174-CRK-PDB

Courts have interpreted the Section 1591's language to require a causal relationship between the "anything of value" and the sex act to constitute a commercial sex act under the TVPRA. See Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc., No. 10-CV-4124, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013) (finding no causal connection between sexual abuse by a ministry leader and the expenses paid by the ministry to the victims, such as rent payments and transportation or lodging fares); United States v. Marcus, 487 F. Supp.2d 289, 306–07 (E.D.N.Y. 2007) rev'd on other grounds, 538 F.3d 97 (2d Cir. 2008) ("the use of the phrase 'on account of which' suggests that there merely needs to be a causal relationship between the sex act and an exchange of an item of value") (internal citations omitted).

The statute's use of the term "anything of value" has been construed broadly to not require a monetary or financial aspect. United States v. Nilsen, 967 F.2d 539, 542 (11th Cir.1992) ("Congress'[s] frequent use of 'thing of value' in various criminal statutes has evolved the phrase into a term of art which the courts generally construe to envelop[ ] both tangibles and intangibles"); United States v. Raniere, 55 F.4th 354, 362 (2d Cir. 2022) ("for the purposes of [Section 1591], monetary worth is not the sole measure of 'value' [in the phrase 'anything of value']"); Weinstein, 335 F. Supp.3d at 515 ("the remedial provision at issue, Section 1595, which permits civil actions for damages under section 1591, requires broad interpretation"). Instead, "value is a subjective, rather than objective, concept where the focus of the term is to be placed on the value which the defendant subjectively attaches to what is sought to be received." United States v. Cook, 782 F.3d 983, 988 (8th Cir. 2015) (citing United

**OPINION AND ORDER – 19**

3:22-cv-00174-CRK-PDB

States v. Petrovic, 701 F.3d 849, 858 (8th Cir. 2012)) (internal quotation marks and alterations omitted); see also United States v. Barraza, 655 F.3d 375, 383–84 (5th Cir. 2011) (finding that sexual favors constituted a thing of value in a bribery case); United States v. Owens, 585 F.3d 1055, 1057–58 (7th Cir. 2009) (finding that the anticipation of potential sexual encounters in the future constituted a "thing of value" in a transmission of child pornography charge).

**B.      Claim I: Sex Trafficking Against Blanco**

Blanco claims that he is entitled to summary judgment on Plaintiff's first claim because she has not established perpetrator liability.  See Blanco Mot. at 7.  As mentioned above, to establish a claim for perpetrator liability under 18 U.S.C. § 1591(a), Plaintiff must show that Blanco: "(1) recruited, enticed, harbored, transported, provided, obtained, or maintained a person; (2) knowing that force, threats of force, coercion, or any combination of such means would be used; (3) to cause the person to engage in a commercial sex act."  Bixler, 2022 WL 247740 at *7. The second element requires that Blanco had actual or constructive knowledge to act in the manner prescribed by the first element.  See Red Roofs Inn, 21 F.4th at 725 (explaining the mens rea required for a violation of Section 1591(a) and 1595(a)); Copeland, 820 F.3d at 813 (explaining the mens rea element for perpetrator liability under 1591(a)).  The third element requires that there be an exchange for something of subjective value, not necessarily monetary or financial, for the sexual act.  See 18 U.S.C. § 1591(a); see also Nilsen, 967 F.2d at 542 (stating that "things of value" include tangible and intangible benefits); Raniere, 55 F.4th at 362.

**OPINION AND ORDER - 20**

3:22-cv-00174-CRK-PDB

Beginning with the first element, there is a material fact in dispute that is determinative of whether Blanco recruited, transported, enticed, harbored, or solicited Plaintiff.  See Blanco Mot. at 8–12; Pl. Resp. (Blanco) at 10–11; Blanco Reply at 1–3.  Plaintiff maintains that Blanco possessed a degree of control in his role in the Inland Department that affected who travelled to particular Crowley trainings.  See Pl. Resp. (Blanco) at 10–11 (citing Lopez Dep. at 123:20–24:4).  Specifically, Plaintiff points to Lopez's deposition where he testified that Blanco, as the sole supervising employee of the Inland Department, suggested and approved of Plaintiff's travel to Jacksonville for the November Training that he would also attend.  See Lopez Dep. at 123:8–24:1; see also Pl. Resp. (Blanco) at 11–12.  Blanco counters Plaintiff's claim by asserting that Lopez, rather than Blanco, was the ultimate decision maker for Plaintiff's travels, and that Crowley controlled her travel and lodging accommodations.  See Lopez Dep. at 30:6–17; Bensan Dep. at 73:23, 74:1–15; Blanco Mot. at 11–12.  Accordingly, there is a genuine dispute of fact as to the degree of control that Blanco had over Plaintiff's travel and attendance to the November Jacksonville training that would be determinative of Plaintiff's claim.  Thus, summary judgment is improper on the basis of element one of perpetrator liability.  See Anderson, 477 U.S. at 249 (1986) ("the judge's function [at the summary judgment stage] is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").

There is also a genuine dispute of material fact as whether Blanco had actual or constructive knowledge that force, threats of force, coercion, or the combination of

**OPINION AND ORDER - 21**

3:22-cv-00174-CRK-PDB

such means would be used against Plaintiff to recruit, entice, or transport her. Plaintiff testified that Blanco, after Plaintiff reported the disputed incident in the elevator at Crowley's El Salvador office, intimidated and threatened Plaintiff to travel to Jacksonville with the intent to sexually assault her there.  See Treminio Dep. at 88:5–90:25.  Plaintiff testified that Blanco warned her that she did not want him "as an enemy," that he grabbed her arm with enough strength to leave physical marks, and that he cautioned her to be mindful of her son and her future job prospects if she did not act "a little bit smarter."  Id.  Moreover, Plaintiff claims that the previous anonymous reports against Blanco preceding Plaintiff's recruitment to the November training, when viewed in conjunction with Plaintiff's allegations, establishes a modus operandi sufficient to demonstrate knowledge under the TVPRA.[8]  Pl. Resp. (Blanco) at 12–13; Ardolf, 442 F.R.D. at 475 (describing a sufficient demonstration of a defendant's modus operandi).  Blanco, in response, denies any such modus operandi or that he intimidated, threatened, coerced, or touched her after the alleged elevator incident.  Blanco Decl. at ¶ 6; Blanco Mot. at 13–14.  Accordingly, there is a genuine dispute of material fact of whether Blanco knew that force, threats of force, coercion, or a combination of such means would be used against Plaintiff in her recruitment to travel to Jacksonville for the November

---

[8]  Plaintiff argues for the admissibility of Blanco's modus operandi under Rule 415 of the Federal Rules of Evidence.  See Pl. Resp. (Blanco) at 12.  However, the Court need not reach this argument, as the nonmoving party need not present evidence that meets the admissibility requirements of the Federal Rules of Evidence to defeat summary judgment.  See Celotex Corp., 477 U.S. at 324.

**OPINION AND ORDER - 22**

training, or whether he had an established modus operandi to sex traffic Plaintiff at the time of her alleged recruitment.

Lastly, there is a genuine dispute of fact as to whether Blanco's conduct caused Plaintiff to engage in a commercial sex act. Plaintiff asserts that but for Blanco's threats regarding Plaintiff's continued employment at Crowley and the possibility that she may be blacklisted from opportunities at future employers, Plaintiff would not have travelled to Jacksonville and thus would not have been allegedly raped by Blanco. See Pl. Resp. (Blanco) at 15–16; Am. Compl. at ¶¶107–110. Moreover, Plaintiff asserts that she engaged in a commercial sex act by pointing to the fact that her career advanced after the alleged rape at the November training. See Pl. Resp. (Blanco) at 15–16; Am. Compl. at ¶ 111. Blanco contends that there is no causal relationship between Plaintiff's employment or her prospects at Crowley and the alleged sexual act, and that Blanco did not receive anything of value. Blanco Mot. at 14–17.

Here, summary judgment is improper. The statutory text "anything of value" is capacious enough to encompass behavior alleged here. See, e.g., Nilsen, 967 F.2d at 542; Raniere, 55 F.4th at 362; Weinstein, 335 F. Supp.3d at 515. There is a dispute over whether Blanco coerced Plaintiff to travel to facilitate the possibility of a sexual encounter at the training. See Owens, 585 F.3d at 1057–58 (stating that the prospect of a sexual encounter is a thing of value); United States v. Kulla, 434 Fed. Appx. 268, 269 (finding that the "time and attention" of a person that the defendant pursued a romantic relationship with constituted an exchange of value). Whether these threats

**OPINION AND ORDER - 23**

in fact caused Plaintiff to travel to Jacksonville is an issue for a jury to determine. See Waggoner v. R.J. Reynolds Tobacco Co., 835 F. Supp. 2d 1244, 1278 (M.D. Fla. 2011) (analyzing jury instructions regarding causation in tort class action). Additionally, there is a material dispute of whether Plaintiff received monetary value through her continued employment in the Inland Department to support herself and her son, and whether she would have had the same opportunities had Crowley not required Plaintiff to travel to Jacksonville where she was allegedly assaulted by Blanco. See Lopez Dep. at 88:21–89:12; Treminio Dep. at 95:3–23;  see also United States v. Girard, 601 F.2d 69, 71 (2d Cir. 1979) (collecting cases on interpretations of "thing of value."). Thus, summary judgment is improper as to Blanco's liability as a perpetrator under the TVPRA.

Blanco also claims that summary judgment is proper as to Plaintiff's claim for venture liability.  Blanco Mot. at 17–18; Blanco Reply at 5.  To claim sex trafficking through venture or beneficiary liability under Sections 1591(a) and 1595(a), Plaintiff must prove that Blanco: "(1) knowingly benefitted, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." Red Roof Inns, 21 F.4th at 726.  In addition to the elements of perpetrator liability, Plaintiff must show that Blanco engaged in a venture, which does not need to be focused on sex trafficking.  See id.; see also Salesforce.com, 76 F.4th at 554 (finding a venture was the business itself under the

3:22-cv-00174-CRK-PDB

TVPRA, rather than the facets of the business that were involved with sex trafficking).

Here, summary judgment on Plaintiff's venture liability claim against Blanco is improper because there is a dispute to the material fact of whether Blanco was engaged in a venture. Plaintiff points to Blanco's employment by Crowley as evidence of a venture between Crowley and Blanco. Pl. Resp. (Blanco) at 16 (citing Lopez Dep. at 46:20–47:9). This venture involved profit, as Crowley benefitted from Blanco and Plaintiff's employment, and Blanco and Plaintiff were compensated for their employment and their help in growing Crowley's business. See Lopez Dep. at 46:2–25. Whether Blanco used the mutual business venture he engaged in with Crowley to his advantage or acted in concert with Crowley employees to then sex traffic Plaintiff is a question for a jury. That the focus of such a relationship did not specifically involve sex trafficking is not fatal to a finding of a venture under the TVPRA. See Salesforce.com, 76 F.4th at 554; Red Roof Inns, 21 F.4th at 727. Because summary judgment on the remaining elements of venture liability has already been denied above,[9] summary judgment on Plaintiff's sex trafficking claim under venture liability against Blanco is improper.

---

[9] Elements one, three, and four were denied because there is a material dispute as to: whether Blanco benefitted from sex trafficking Plaintiff; whether Blanco actually enticed or transported Plaintiff; and whether Blanco had actual or constructive knowledge, or a modus operandi, that force, threats of force, fraud, coercion, or a combination of such means would be used to entice or transport Plaintiff, causing her to commit a commercial sex act.

**OPINION AND ORDER - 25**

3:22-cv-00174-CRK-PDB

Blanco asserts that Plaintiff's complaint, as amended, does not sufficiently allege venture liability against Blanco.  Blanco Reply at 5.  Blanco contends that Plaintiff only alleged a "sex trafficking venture" against Blanco rather than a "commercial" venture.  Id.  Thus, Blanco avers that Plaintiff is improperly attempting to amend her complaint through her response to Blanco's motion at the summary judgment phase.  Id.  Blanco's argument is unpersuasive.

The elements of venture liability require a showing that Blanco (1) knowingly benefitted, (2) from taking part in venture with Crowley that included risk and profit, (3) that the common venture violated the TVPRA as to Plaintiff, and (4) Blanco had the scienter that the venture violated the TVPRA as to Plaintiff.  See Red Roof Inns, 21 F.4th at 726.  Courts do not look to the label attached to the pleadings to determine the nature of the cause of action, but rather to the facts pled.  Fed. R. Civ. P.  8(a)(2) (requiring pleadings to contain "a short and plain statement of the claim"); see also e.g., Lee v. Ohio Educ. Ass'n, 951 F.3d 386, 391 (6th Cir. 2020) (concluding "we must look beyond the labels to 'the substance of the allegations'") (internal citations omitted).

Here, Plaintiff's amended complaint sufficiently pleads the elements of venture liability on its face, in that she alleges Blanco "conspired with Crowley HR Manager Jaqueline Najera, senior manager Jose Lopez, and other Crowley agents and employees to use coercion and threats of serious harm" to force Plaintiff to travel to Jacksonville for the November training knowing that such threats would in fact cause her to travel.  Am. Compl. at ¶ 107.  The complaint also sets forth Plaintiff's purported

**OPINION AND ORDER - 26**

3:22-cv-00174-CRK-PDB

benefits from engaging in a commercial sex act, including tangible job benefits, continued employment, and career advancement. Id. at ¶ 111. Plaintiff also alleges that participation in this venture allowed Crowley to earn profits and benefit financially. Id. at ¶ 129. Thus, Plaintiff has stated sufficient facts to create a material dispute over whether Blanco violated the TVPRA under venture liability, i.e., that he and Crowley employees engaged in a common undertaking to transport Plaintiff to Jacksonville for training and pay.[10]  See Anderson, 477 U.S. at 248.  Accordingly, summary judgment on the first claim against Blanco is denied.

### C.    Claim II: Sex Trafficking Against Crowley

Crowley moves for summary judgment on Claim II of Plaintiff's complaint, alleging that Plaintiff failed to demonstrate that Crowley violated the TVPRA under perpetrator liability.  See Crowley Mot. at 20.  As discussed, perpetrator liability requires Plaintiff to show that Crowley: (1) recruited, enticed, or transported Plaintiff; (2) knowing that force, threats of force, coercion, or any combination of such means would be used; (3) to cause Plaintiff to engage in a commercial sex act.  See Bixler, 2022 WL 247740 at *7; see also Knight, 624 F. Supp.3d at 862; Weinstein, 335 F. Supp.3d at 515.  Crowley does not dispute that it transported Plaintiff to Jacksonville for training, so the analysis will begin with the second element.

Crowley is not entitled to summary judgment based on the second element because there is a dispute whether Crowley possessed the requisite mens rea that

---

[10] Crowley also raises the same argument in its reply brief.  See Crowley Reply at 3–4.  The Court rejects Crowley's argument under the same reasoning as Blanco's.

**OPINION AND ORDER - 27**

3:22-cv-00174-CRK-PDB

force, threats of force, coercion, or a combination would be used against Plaintiff to establish a violation of the TVPRA. See Crowley Mot. at 20. First, Plaintiff alleges that Crowley had constructive knowledge of Blanco's predatory conduct by way of the anonymous reports filed against Blanco and received by Crowley in November 2017, and through Plaintiff's report to Najera in Human Resources regarding her encounter with Blanco in the elevator.[11] See Pl. Resp. (Crowley) at 21; see also Exhibits 1, 4: EthicsPoint Case Nos. 280, 297, Aug. 23, 2023, ECF Nos. 103-1, 103-4 ("EthicsPoint Cases"). Crowley contends that the timing of the reports, as well as the alleged incident in the elevator, are insufficient to establish knowledge by Crowley of Blanco's behavior. See Crowley Mot. at 20–21; Crowley Reply at 4–5. Second, Plaintiff asserts that Najera's alleged threats of termination and possible damage to Plaintiff's career prospects and reputation coerced Plaintiff to travel with Blanco. See Treminio Dep. at 80–88:3. Plaintiff contends Najera knew that such coercion would cause Plaintiff to travel to Jacksonville, in light of her knowledge of Blanco's alleged assault in the elevator. See Treminio Dep. at 80–88:3; see also Pl. Resp. (Crowley) at 23.

Moreover, there is a genuine dispute of the material fact of whether Crowley possessed sufficient knowledge that Blanco would force, threaten, or coerce Plaintiff to be sex trafficked satisfying the second element. See Crowley Mot. at 16–21; Pl.

---

[11] Plaintiff invokes Rule 415 of the Federal Rules of Evidence to argue that Blanco had a modus operandi of sex trafficking. See Pl. Resp. (Crowley) at 22. The Court declines to evaluate Blanco's modus operandi in this context as there is a dispute of material fact as to Crowley's knowledge that warrants denial of summary judgment. Additionally, a Rule 415 analysis is unnecessary at this point as the nonmoving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." See Celotex Corp, 477 U.S. at 324.

**OPINION AND ORDER - 28**

3:22-cv-00174-CRK-PDB

Resp. (Crowley) at 20–22.  There is a triable dispute as to whether Crowley could and should have discovered Blanco and Najera's alleged threatening and coercive conduct. Crowley Mot. at 18–20; Pl. Resp. (Crowley) at 20–22; see also EthicsPoint Cases. Because the dispute of the fact directly affects Plaintiff's claim against Crowley, summary judgment is improper, and must be denied for resolution by the finder of fact.  See First Nat. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968) ("all that is required of [summary judgment] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury . . . to resolve the parties' differing versions of the truth at trial").

Crowley is also not entitled to summary judgment based on the third element of Plaintiff's perpetrator liability claim.  Plaintiff submitted facts a jury could find sufficient to demonstrate a commercial sex act.  See Pl. Resp. (Crowley) at 18–19. Plaintiff contends that she benefitted from continued employment, career advancement attributable to the Jacksonville training, and the avoidance of negative references and the possibility of being backlisted by Crowley if she did not travel on the trip.  See Treminio Dep. at 164, 187; Exh. 9B, Aug. 2, 2023, ECF No. 89-9; see also Pl. Resp. (Crowley) at 19.  Plaintiff also alleges that Crowley benefitted by outsourcing labor to the El Salvador office which in turn resulted in "substantial cost savings" and increased profits by Crowley.   Lopez Dep. at 88:21–89:12; Pl. Resp. (Crowley) at 19.  Crowley counters that any "things of value" received by Plaintiff are too attenuated to be causally connected to the alleged sex act and that her continued

**OPINION AND ORDER – 29**

3:22-cv-00174-CRK-PDB

employment and subsequent tangible benefits were not "on account of" any sexual act with Blanco.  See Crowley Mot. at 10–13; Crowley Reply at 3–4.

There is a genuine dispute of the triable fact of whether the threats by Najera or Blanco's conduct—of which Crowley allegedly had actual or constructive knowledge—caused Plaintiff to travel to Jacksonville, where she then engaged in a commercial sex act for the exchange of value.  See Weinstein, 335 F. Supp.3d at 515. Moreover, there is a material dispute over whether the benefit received by Crowley through the Inland Department's work was intertwined with Blanco's conduct and intent to sex traffic Plaintiff.  Lopez Dep. at 88:1–89:25.  Indeed, the questions of causation and the "thing of value" both Plaintiff and Crowley received for the alleged sex act are factual issues that must be determined by a jury.  See Cain v. Vontz, 703 F.2d 1279, 1283 (holding that questions of causation in a tort suit were for the jury to determine under Georgia Law); Moyer v. Martin Marietta Corp., 481 F.2d 585, 593 (5th Cir. 1973) (holding that causation in a tort suit was a matter to be determined by a jury under Florida law); Petrovic, 701 F.3d at 857 (stating that whether a "sexual relationship" constituted a "thing of value" was in the province of the jury). Accordingly, summary judgment on Plaintiff's sex trafficking claims against Crowley under perpetrator liability is denied.

Crowley challenges Plaintiff's claim for venture liability under the TVPRA and believes it is entitled to summary judgment on the matter.  See Crowley Mot. at 14. Crowley asserts that Plaintiff's claim fails because it did not participate, benefit, or have knowledge necessary to establish venture liability.  See id. at 14–20.  To

**OPINION AND ORDER - 30**

3:22-cv-00174-CRK-PDB

establish a claim for venture or beneficiary liability under Sections 1591(a) and 1595(a) under the TVPRA, Plaintiff must demonstrate that Crowley "(1) knowingly benefitted, (2) from taking part in a common undertaking or enterprise involving risk and profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to plaintiff." Red Roof Inns, 21 F.4th at 726. In addition to mens rea and commercial sex act requirements as outlined above, the benefit an employer receives must be related in some form to the alleged sex trafficking. 18 U.S.C. § 1595; see, e.g., Bridges v. Poe, No. 6:19-CV-01399-LSC, 2022 WL 1598437, at *19 (N.D. Ala. May 19, 2022) (ruling that the benefit received by an employer must be related to the misconduct of the employee to establish a venture under the TVPRA). The key elements for analysis are whether Crowley engaged in a venture and whether it knowingly benefitted from such a venture.[12]

Here, there is a material dispute of fact as to whether Crowley engaged in a common undertaking involving profit and risk from which it benefitted. Plaintiff asserts that Crowley participated in the venture by employing both Blanco and Plaintiff in the Inland Department when the alleged sex trafficking occurred. Pl. Resp. (Crowley) at 19-20; see Lopez Dep. at 88:21–89:9. Additionally, Plaintiff claims that the Inland Department, as supervised by Blanco and through his conduct,

---

[12] There is a material dispute as to elements three and four, i.e., whether Crowley sex trafficked Plaintiff under perpetrator liability and whether Crowley had actual or constructive knowledge that force, threats of force, fraud, coercion, or a combination of such means would be used to entice or transport Plaintiff, causing her to commit a commercial sex act.

**OPINION AND ORDER - 31**

3:22-cv-00174-CRK-PDB

benefitted Crowley by reducing labor costs and producing a certain "quality of work" that Crowley would not have had but for its assignments. Lopez Dep. at 88:21–89:12. That Crowley's Inland Department was not primarily engaged in sex trafficking does not prevent the possibility of finding venture liability under the statute. See 18 U.S.C. § 1595(a) (allowing civil actions for an individual who "financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]"); see also, e.g., Salesforce, Inc, 76 F.4th at 554. Rather, it is sufficient to show that Crowley's business grew or expanded as a result of the actions that constituted a violation of the TVPRA. See 18 U.S.C. § 1595(a); see also, e.g., Salesforce, Inc, 76 F.4th at 554. Accordingly, summary judgment for Crowley on Claim II is improper because there are disputes of material facts that must be determined by a jury, and summary judgment is denied.[13]

## II. Claim V: Forced Labor Against Crowley

Crowley argues that it is entitled to summary judgment on Plaintiff's fifth claim alleging forced labor in violation of 18 U.S.C. §§ 1589 and 1595. See Crowley Mot. at 22–27; Crowley Reply at 6–7. Plaintiff claims that she was coerced by threats of "serious harm" by Najera and Blanco to attend the November training in Jacksonville where she was then allegedly raped by Blanco. See Pl. Resp. (Crowley)

---

[13] Crowley's argument that any "cover ups" of Plaintiff's allegations does not constitute sex trafficking need not be addressed because summary judgment is improper on Plaintiff's sex trafficking claims under both perpetrator and venture liability. See Crowley Mot. at 21.

**OPINION AND ORDER - 32**

3:22-cv-00174-CRK-PDB

at 23–24; Treminio Dep. at 83:1–90:25.  In response, Crowley submits that any
threats made against Plaintiff do not rise to the level of "serious harm" required by
statute, that she was an employee at will and therefore was not forced to work for
Crowley, and that Crowley did not benefit from any alleged forced labor.  See Crowley
Mot. at 22–27; Crowley Reply at 6–7.

Under Section 1589(a) of the TVPRA, it is a violation to "knowingly provide[]
or obtain[] the labor or services of a person" by (1) means or threats of force to that
person; (2) means or threats of "serious harm" to that person; (3) means or threat of
the abuse of the legal system; or (4) means of any "scheme, plan, or pattern intended
to cause the person to believe that, if that person did not perform such labor or
services, that person or another would suffer serious harm."  18 U.S.C. § 1589(a).  The
statute contains a definition of "serious harm," meaning

> any harm, whether physical or nonphysical, including psychological,
> financial, or reputational harm, that is sufficiently serious, under all the
> surrounding circumstances, to compel a reasonable person of the same
> background and in the same circumstances to perform or to continue
> performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2).  Similar to 18 U.S.C. § 1591, a civil remedy is provided for
forced labor claims under Section 1595(a) of the TVPRA.  See 18 U.S.C. § 1595(a), (c).

Although the Eleventh Circuit has not set forth a concise interpretation of the
statute's definition of serious harm, it and other courts have read "serious harm"
under the TVPRA to encompass multiple types of harm that if employed or
threatened could render a violation.  See Roman v. Tyco Simplex Grinnell, 732 F.
App'x 813, 817 (11th Cir. 2018) (holding that the consequences an employee faces

**OPINION AND ORDER - 33**

3:22-cv-00174-CRK-PDB

when threatened with ordinary termination are insufficient to state a claim under the Section 1589); see also, e.g., United States v. Dann, 652 F.3d 1160, 1169–73 (9th Cir. 2011) (discussing financial harm, reputational harm, immigration harm, and harm to children); Muchira v. Al-Rawaf, 850 F.3d 605; 618 (4th Cir. 2017) (explaining psychological harm).  Financial harm has been construed to include an improper or illicit nature to the threats, meaning that it is more than what an employee would ordinarily face when threatened with termination.  Carter v. Paschall Truck Lines, Inc., No. 5:18-CV-41-BJB, 2023 WL 359559, at *8 (W.D. Ky. Jan. 23, 2023) ("for financial harm to be sufficiently serious, it must be in some way improper or illicit") (internal quotations and citations omitted).  Courts have measured financial harm by the personal and financial circumstances of the employee alleging forced labor.  Dann, 652 F.3d at 1171 (sustaining forced labor conviction against an immigrant who's financial and living conditions relied on defendant's payment of wages); United States v. Kalu, 791 F.3d 1194, 1212 (10th Cir. 2015) (sustaining conviction of defendant who threatened financial ruin, deportation, and legal action against victims).  Reputational harm includes threats to the employee's character.  Dann, 652 F.3d at 1171 (affirming guilty verdict under Section 1589 where the defendant threatened victim's honest and trustworthiness through false accusations and character assassination if she left the defendant's employment).

The serious harm analysis centers on a finding that the employer intended to cause serious harm to the victim.  See Barrientos v. CoreCivic, Inc., 951 F.3d 1269, 1276–77 (11th Cir. 2020) ("the clear and ambiguous language of [18 U.S.C. §§ 1589

3:22-cv-00174-CRK-PDB

and 1595] limits liability only by reference to the actions taken by a would-be violator:
it applies to anyone who knowingly obtains the labor or services of a person through
one of the four illegal coercive means explicitly in the statute") (internal quotations
omitted). The focal point of the analysis is a finding "not just that serious harm was
threatened but that the employer intended the victim to believe that such harm would
befall her." <u>Dann</u>, 652 F.3d at 1170. However, mere warnings of unfavorable but
legitimate consequences do not rise to the TVPRA's requirements. <u>See</u> <u>Headley v.
Church of Scientology Int'l</u>, 687 F.3d 1173 (9th Cir. 2012) (stating that warnings of a
consequence are not a threat for the purposes of Section 1589); <u>Dann</u>, 652 F.3d at
1170 (explaining the congressional intent of Section 1589 illustrates the statutes
focus on dire threats and serious harm).

Courts interpreting Section 1589 have construed the statute to contain two
distinct elements: a mens rea and an actus reus. <u>See</u> <u>Martinez-Rodriguez v. Giles</u>, 31
F.4th 1139, 1149 (9th Cir. 2022) (defining the elements of Section 1589(a)); <u>Mallela
v. Cogent Infotech Corp.</u>, No. 2:19-CV-01658-NR, 2020 WL 2541860, at *4 (W.D. Pa.
May 19, 2020) (accord); <u>Dann</u>, 652 F.3d at 1169–73 (accord). The defendant's scienter
must be shown—that the defendant "knowingly" employed one of the enumerated
methods to force the victim's service or labor. <u>Barrientos</u>, 951 F.3d at 1276–77; <u>see
also, e.g.</u>, <u>Giles</u>, 31 F.4th at 1149; <u>Mallela</u>, 2020 WL 2541860 at *4; <u>Headley</u>, 687 F.3d
at 1180 (explaining the elements of the statute); <u>Muchira</u>, 850 F.3d at 618
(articulating the mens rea requirement). In other words, the employer violates the
TVPRA if it "intended the coercive pressure and its effects on the employee." <u>Giles</u>,

**OPINION AND ORDER – 35**

3:22-cv-00174-CRK-PDB

31 F.4th at 1156; Dann, 652 F.3d at 1170 (delineating the intent requirement).  The actus reus requires a showing that the defendant provided or obtained the labor or services by one of the four methods contained in the statute.  Giles, 31 F.4th at 1149.

Here, the submissions by the parties create a material dispute of fact as to whether Plaintiff was forced to perform labor for Crowley by travelling to Jacksonville for the November training.  First, there is a material dispute over whether Crowley intentionally coerced Plaintiff into labor by threats of serious harm.  Plaintiff alleges that Najera was aware of Blanco's alleged assault in the elevator, and that she also was shown the marks that Blanco left on Plaintiff's body.  See Treminio Dep. at 90:4–6.  Plaintiff also contends that both Najera and Blanco knew of Plaintiff's personal issues and circumstances, including her marital status and that she had a son, which they then used as a basis to threaten and coerce Plaintiff into attending the training or else be terminated from employment.  See Pl.  Resp. (Crowley) at 23–24; Am. Compl. at ¶¶ 157–169.  Crowley denies any such knowledge and argues that Plaintiff was free to terminate her employment at any time.  Crowley Mot. at 26 (citing Bensan Decl. at Exhs. F, F-1 ¶ H).

Furthermore, there is a genuine dispute over whether Crowley possessed the requisite scienter required by the TVPRA to violate the statute and sustain a forced labor finding.   Crowley's argument that Plaintiff was free to terminate her employment is not dispositive of her claim, but rather is one factor for consideration. See Carter, 2023 WL 359559 at *10 (acknowledging that employment at will undermined Plaintiff's forced labor claims, but not denying summary judgment on

**OPINION AND ORDER – 36**

3:22-cv-00174-CRK-PDB

that fact alone); <u>Dinsay v. RN Staff Inc.</u>, No. 1:19-CV-00907-TWP-DML, 2022 WL
581033, at *6 (S.D. Ind. Feb. 25, 2022) (granting summary judgment for defendant
on plaintiff's forced labor claims, citing plaintiff's voluntary employment as a factor
for consideration in the court's determination).   Whether Plaintiff felt she could
terminate employment with Crowley at any time based on her precarious financial
position and considerations for her child is a fact for a jury to determine.   Accordingly,
summary judgment is improper on whether Crowley's possessed the necessary mens
rea.

There is also a genuine dispute over the actus reus employed against Plaintiff
to force her labor.   The parties disagree over the material fact of whether Plaintiff felt
exposed to harm above that of an ordinary employee facing termination and thus was
forced to travel to Jacksonville.   <u>See</u> <u>Roman</u>, 732 F. App'x at 817 (rejecting an
employee's claim against employer for threatening termination if he did not complete
an assignment that he thought was not safe).   Plaintiff alleges her future career
prospects were threatened by both Najera and Blanco if she did not attend the
training.  Pl. Resp. (Crowley) at 23–24; Treminio Dep. at 83–89.  Crowley denies that
any such threats were ever made, and even if they were, they do not rise to the level
required by statute.   Crowley Mot. at 22–26 (citing Treminio Dep. at 83, 84, 124).

Here, there is a material dispute over whether Crowley intended to coerce
Plaintiff to travel.  Plaintiff alleges Crowley's intent is embodied through Najera and
Blanco's threats to terminate and blacklist Plaintiff, effectively precluding her from
being able to provide for herself and child.  Treminio Dep. at 83:1–90:25.  The threats,

**OPINION AND ORDER - 37**

3:22-cv-00174-CRK-PDB

coupled with Blanco's alleged conduct in the elevator immediately prior, led Plaintiff to believe that if she were to attend the November training, she would be subjected to the same unwelcomed sexual advances by Blanco. See id.; Pl. Resp. (Crowley) at 24. A jury could find Plaintiff's financial and personal circumstances and any threats to such circumstances led her to believe she had no other option but to travel to Jacksonville. Therefore, the parties have created a dispute of the material fact that Plaintiff may have been financially and psychologically coerced to travel for Crowley through threats to her professional reputation and well-being, as intended by Najera and Blanco, that must be determined by a jury. Accordingly, Crowley's motion for summary judgment is denied as to Claim V.

### III.    Claims III and IV Against Blanco: Statute of Limitations

Blanco asserts that he is entitled to summary judgment on Plaintiff's claims III and IV because they are barred by the applicable statute of limitations. Blanco Mot. at 18–20. Plaintiff's third and fourth claims allege causes of action against Blanco: Claim III alleges sexual battery; Claim IV alleges false imprisonment. See Am. Compl. at ¶¶ 140–152. Blanco does not challenge the merits of the claims, but rather alleges that they are not timely because Blanco maintained a residency in Jacksonville since March 2018, and therefore the statute of limitations cannot be tolled under Florida Statute § 95.051. Blanco Mot. at 18; see also Fla. Stat. § 95.051. According to Blanco, the four-year statute of limitations provided by Florida Statute § 95.11 has expired because the alleged events that gave rise to the causes of action transpired in November 2017, while Plaintiff's suit was filed on February 15, 2022.

**OPINION AND ORDER - 38**

3:22-cv-00174-CRK-PDB

See Blanco Mot. at 18; see also Compl. at 64, Feb. 15, 2023, ECF No. 1; Fla. Stat. §

95.11.   Plaintiff avers that the causes of action were tolled under Florida Statute §

95.051.   See Pl. Resp. (Blanco) at 16, 18.   Moreover, Plaintiff alleges that Blanco

offered a sham affidavit to defeat summary judgment.   See Pl. Resp. (Blanco) at 18.

The Court has jurisdiction over Plaintiff's state claims under supplemental

jurisdiction because they arise from the same common nucleus of operative fact as

the claims filed under 18 U.S.C. §§ 1589, 1591, and 1595.   See United Mine Workers

of Am. v. Gibbs, 383 U.S. 715, 725 (1966) ("[regarding supplemental jurisdiction

involving federal questions] [t]he federal claim must have substance sufficient to

confer subject matter jurisdiction on the court.   The state and federal claims must

derive from a common nucleus of operative fact") (internal citations omitted).   Where

state claims attach to federal claims through a common nucleus of operative fact, the

Court is "constitutionally obligated to apply state laws to state claims."   Felder v.

Casey, 487 U.S. 131, 151 (1988).   Therefore, Florida law governs Claims III and IV

against Blanco.

The statute of limitations for intentional torts and grounds for its tolling are

governed by two state statutes.   Florida Statute § 95.11 governs the statute of

limitations for "battery . . . false imprisonment . . . or any other intentional tort," and

suit must be filed within four years of the date that the last element of the cause of

action occurred, or else are time-barred.   Fla. Stat. § 95.11(3)(n); see City of Riviera

Beach v. Reed, 987 So. 2d 168, 170 (Fla. Dist. Ct. App. 2008) ("A cause of action

accrues when the last element constituting the cause of action occurs").   Florida

**OPINION AND ORDER - 39**

3:22-cv-00174-CRK-PDB

Statute § 95.051 controls when an action controlled under § 95.11's time limits may be tolled, including where there is an "[a]bsence from the state of the person to be sued." Fla. Stat. § 95.051(1)(a). Tolling is inapplicable where the defendant is amenable to service of process. See Fla. Stat. § 95.051; see also Fernon v. Itkin, 476 F. Supp. 1, 3 (M.D. Fla. 1977), aff'd, 604 F.2d 669 (5th Cir. 1979) (finding statute of limitations for medical malpractice claim was not tolled where the defendant was amenable to process by "doing business" in Florida despite being out of state). Disputes over the presence of a party within a jurisdiction are questions of fact that must be determined by a jury. See Cicurel v. Galton, 338 So. 2d 57, 58 (Fla. Dist. Ct. App. 1976) (reversing summary judgment for the plaintiff because there was a genuine dispute over the length of time the defendant was in Florida that had to be determined by the factfinder); Walder v. Paramount Publix Corp., 132 F. Supp. 912, 920 (S.D.N.Y. 1955) (applying Florida tolling law to defendant's statute of limitations claim and denying summary judgment because it created a dispute of a material fact); Treminio v. Crowley Mar. Corp., 649 F. Supp. 3d 1223, 1236 (M.D. Fla. 2023) (denying motion to dismiss in the instant action because the dispute over Blanco's presence was a material fact).

Here, summary judgment in Blanco's favor for Claims III and IV based on his argument that § 95.11 should not be tolled under § 95.051 is improper because there is a genuine dispute of a material fact. Plaintiff contends that Blanco was absent from Florida between March 2018 and when she filed suit, based upon his employment by Crowley in El Salvador until his termination in 2018, and therefore

**OPINION AND ORDER – 40**

3:22-cv-00174-CRK-PDB

§ 95.11 was tolled under § 95.051(a).  See Pl. Resp. (Blanco) at 17; see also Am. Compl. at ¶¶ 140–152;  King Dep. at 185:19–24.  Blanco disputes Plaintiff's claim as to his presence in the state, instead claiming that he divided his time between Jacksonville and El Salvador between November 2017 and March 2018, and has lived in Florida permanently since March 2018.[14]  See Blanco Mot. at 20; Blanco Reply at 6–7; Blanco Decl. at ¶ 5.  To support his claims, Blanco offers his Florida lease agreement between November 24, 2017 and May 30, 2018.  See Fla. Res. Lease Agreement. at 1, Aug. 2, 2023, ECF No. 90-1 ("Blanco Lease").

The submissions by the parties create a triable issue of fact as whether and when Blanco was absent from the state.  Even accepting that Blanco lived in Florida during the time indicated on the lease agreement, and therefore was not absent during that time, the toll may have still operated to permit Plaintiff to file suit until November 9, 2024.[15]  Blanco offers no additional supporting evidence—such as lease extensions, continued rent payments beyond the terms governed by the lease, or

---

[14]  In his declaration, Blanco asserts:

> My wife and I signed the [Jacksonville lease agreement] for an apartment in St. Augustine, Florida beginning on November 24, 2017. From November 24, 2017 through April 2018, my wife and I equally contributed to the expenses associated with our apartment located in St. Augustine, Florida.  I purchased a vehicle in Florida titled in my name in December 2017 and keep my personal belongings at our apartment in St. Augustine, Florida.  From November 2017 through March 2018 I divided my time between living in Florida and El Salvador, and in March 2018 I returned to Florida where I have resided ever since.

Blanco Decl. at ¶ 5.

[15]  Plaintiff would have until November 9, 2024, if Blanco was given the benefit of living in Florida for a year, and would have until May 9, 2025, if the statute ran only for the actual six months of the lease as defined on the face of the agreement.

**OPINION AND ORDER - 41**

3:22-cv-00174-CRK-PDB

utility bills—to establish that he continued to live in Florida past the May 30, 2018, termination date of the lease or that he was amenable to service of process.  See generally Blanco Decl.  Moreover, even if the Court accepted Blanco's claim that he lived in Jacksonville permanently since March 2018,  Plaintiff's suit may still be timely, as Plaintiff would have until March 2022 to file her suit under § 95.11 and § 95.051.[16]  Accordingly, there is a genuine dispute of fact as to where Blanco resided for the purposes of § 95.051 and Claims III and IV.[17]  Thus, Blanco's motion for summary judgment on the state law claims is denied.[18]

---

[16]  In his motion, reply, and declaration, Blanco claims he divided his time from November 2017 to March 2018 as he transitioned to fulltime residency in Florida. See Blanco Mot. at 19–20; Blanco Reply at 6–7; Blanco Decl. at ¶ 5.  Blanco claims he "returned to Florida" in March 2018 where he has "resided ever since." Blanco Decl. at ¶ 5.  It is unclear to what extent Blanco divided his time between Florida and elsewhere, and he offers no evidence to suggest how many days he resided in Florida between November 2017 and March 2018.

[17]  Plaintiff claims that Blanco's declaration, appended to his motion for summary judgment, is a sham affidavit. See Pl. Resp. (Blanco) at 18–19; see generally Blanco Decl.  However, nothing offered in the declaration contradicts his position that he has permanently lived in Florida since sometime in 2018.  See Blanco Reply at 6; see also Answer and Affirmative Defenses to Am. Compl. at ¶ 5, Feb. 14, 2023, ECF No. 40; Mot. to Dismiss at 4, Jun. 16, 2022, ECF No. 31.  Thus, the declaration is not a sham because Blanco submits documents that he claims supports his position.  See Bornstein v. Marcus, 169 So. 3d 1239, 1242 (Fla. Dist. Ct. App. 2015) (stating that a party's supporting document is "considered a sham only when it is palpably or inherently false, and from the plain or conceded facts in the case, must have been known to the party interposing it to be untrue") (internal quotations and citations omitted).

[18]  In her response to Crowley's motion, Plaintiff invites the Court to enter summary judgment in her favor on her claims against Crowley.  Pl. Resp. (Crowley) at 24.  For the reasons consistent with the denial of Crowley's motion for summary judgment, the Court declines Plaintiff's invitation.

**OPINION AND ORDER - 42**

3:22-cv-00174-CRK-PDB

## CONCLUSION

Thus, Plaintiff has shown disputed material facts regarding her claims of sex trafficking, forced labor, and state tort actions against Defendants, and it is

**ORDERED** that Defendant Crowley's Motion for Summary Judgment, <u>see</u> ECF No. 88, is denied; and it is further

**ORDERED** that Defendant Blanco's Motion for Summary Judgment, <u>see</u> ECF No. 90, is denied.


<u>/s/ Claire R. Kelly </u>
Claire R. Kelly, Judge[*]

Dated:     December 13, 2023
          New York, New York

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

**OPINION AND ORDER - 43**