UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VANESSA TREMINIO,

       Plaintiff,                        Case No. 3:22-cv-00174-CRK-PDB

v.

CROWLEY MARITIME
CORPORATION, and JUAN EMILIO
BLANCO,

       Defendants.
_____/

## DEFENDANT CROWLEY MARITIME CORPORATION'S
## THIRD MOTION FOR SANCTIONS

Defendant, Crowley Maritime Corporation ("Crowley"), by and through undersigned counsel, hereby files this Third Motion for Sanctions against Plaintiff for failure to comply with her mandatory discovery obligations and with this Court's Orders, and for spoliation of evidence in this case. Crowley states the following in support thereof:

## INTRODUCTION

Aside from perhaps perjury, no act serves to threaten the integrity of the judicial process more than the concealment or spoliation of discoverable evidence. Plaintiff has done both in this case. Nearly two years after Plaintiff filed her lawsuit, Crowley has discovered that Plaintiff intentionally withheld a potential "smoking gun" in the form of Facebook messages she exchanged with a former Crowley employee,

Fernando Giron, wherein they were discussing her alleged assault and in which she appears to admit that her former supervisor, Defendant, Juan Emilio Blanco, did not sexually abuse her as she has alleged in this case:

**Giron:**   **Don't tell me it was...Emilio....**

                                    **\*\*\***

**Treminio:**   **Look, I'm in a legal situation that I can't confirm or deny if it was him . . . . But in my case it wasn't Emilio . . . . But yes there are a lot of people who have written to me about him . . . . Since I made that post.**[1]

Given the egregious nature of Plaintiff's willful disregard for her mandatory discovery obligations, dismissal of her lawsuit with prejudice is the only appropriate sanction.

### Background & Procedural History

On February 15 and March 30, 2022, Plaintiff filed her initial and Amended Complaints ("Complaint") in which she asserted multiple claims against Crowley and Defendant Blanco for alleged violations of the Trafficking Victim's Protection Reauthorization Act.[2] As reflected in its Scheduling Orders, the Court imposed several important deadlines governing the parties' discovery obligations in the case, including those pertaining to service of mandatory initial Rule 26(a)(1) disclosures (Jun. 17, 2022) and completion of discovery (Jul. 3, 2023).[3] On June 18, 2022, Plaintiff served Crowley with her initial Rule 26 disclosures and identified several individuals likely possessing discoverable information, upon which Crowley foreseeably relied when

---

[1] **Exhibit A**, Facebook messages between Plaintiff and Fernando Giron.
[2] (Doc. 1) Complaint; (Doc. 14) Amended Complaint.
[3] *See* (Doc. 21) Case Management and Scheduling Order; (Doc. 39) January 19, 2023 Order.

crafting its written discovery requests and setting depositions.[4]

On January 30, 2023, Crowley served Plaintiff with its First Request for Production ("RFP") and First Set of Interrogatories.[5] Importantly, Interrogatory No. 2 specifically requested that Plaintiff identify "each person who has knowledge or information of the facts alleged in Plaintiff's Amended Complaint and any defenses thereto . . . .," and Interrogatory No. 13 further requested that Plaintiff identify all current and former Crowley employees with whom she had communicated "since the time of her separation of employment with Crowley through the present."[6]

On March 10, 2023, Plaintiff served Crowley with her Responses to Crowley's First Set of Interrogatories.[7] In response to Interrogatory No. 2, Plaintiff identified Genovia Matute, Erick Ramirez, Lennys Campos, and Wendy Fecie (Ponce) in addition to the individuals that she previously identified in her initial Rule 26 disclosures.[8] In response to Interrogatory No. 13, Plaintiff specifically stated under oath that she corresponded with the following current and former employees of Crowley via text or social media networks: her husband (unnamed), her sister (unnamed), Ayesha Diaz, Marlon Miranda, Karen Chicas, Nelson Martinez, and Jose Galdames.[9] At no point has Plaintiff either supplemented or amended her interrogatory responses.

---

[4] **Exhibit B,** Plaintiff's Initial Rule 26 Disclosures.
[5] (Doc. 105-1) Plaintiff's Responses to Crowley's First Request for Production; **Exhibit C**, Plaintiff's Responses to Crowley's First Set of Interrogatories.
[6] **Exhibit C**, Plaintiff's Responses to Crowley's First Set of Interrogatories at 2-6, 12-13.
[7] *See* **Exhibit C**, Plaintiff's Responses to Crowley's First Set of Interrogatories.
[8] **Exhibit C**, Plaintiff's Responses to Crowley's First Set of Interrogatories at 2-5.
[9] **Exhibit C**, Plaintiff's Responses to Crowley's First Set of Interrogatories at 12-13.

On March 27, 2023, Crowley took Plaintiff's deposition.[10] During her deposition, Plaintiff confirmed that her Responses to Crowley's First Set of Interrogatories were accurate, and she had been requested by her counsel to provide copies of all communications she had with Diaz during the prior 10 years.[11] In addition, the undersigned asked Plaintiff a series of questions to confirm that she had not withheld or deleted any additional communications, including Facebook messages, that she had with Diaz during the aforementioned time period:

> **Q.** **How else have you kept in touch with her other than through WhatsApp?**
>
> **A.** **Maybe she liked a photo on Facebook or Instagram, but our conversations are -- most of them are through WhatsApp.**
>
> ***
>
> **Q.** **Okay. So you've produced all of them. You don't have any messages with Ayesha Diaz before . . . [January 16, 2021]?**
>
> **A.** **Not in my cell phone.**
>
> **Q.** **Do you have them anywhere else?**
>
> **A.** **Not that I recall . . . .**
>
> ***
>
> **Q.** **Did you delete any messages between you and Ayesha Diaz?**
>
> **A.** **I haven't.[12]**

Following her deposition, Plaintiff again confirmed under oath in her Responses to Crowley's Second Set of Interrogatories that "**I did not delete any social media communications to or from employees or former employees of Crowley.**"[13]

---

[10] *See* (Doc. 89-1) March 27, 2023 Deposition of Vanessa Treminio (hereinafter, "Treminio Depo.").

[11] (Doc. 89-1) Treminio Depo. at 274, 308-310.

[12] (Doc. 89-1) Treminio Depo. at 273-275 (emphasis added).

[13] **Exhibit D,** Plaintiff's Responses to Crowley's Second Set of Interrogatories (emphasis added).

4

On May 15, 2023, Crowley served Plaintiff with its Second RFP seeking all documents not previously produced that are responsive to Crowley's First RFP and all information from Plaintiff's Facebook account from January 1, 2017, through the present.[14] On June 2, 2023, Crowley served Plaintiff with its Third RFP that sought all formal and informal statements from current and former Crowley employees and any other third party related to the allegations of Plaintiff's claims.[15]

On June 16, 2023, Crowley filed its First Motion to Compel responses to its First RFP after it learned during the deposition of Blanca Hernandez that Plaintiff had conducted examinations under oath of certain witnesses earlier in discovery.[16] The Court subsequently granted Crowley's Motion, in part, by ordering Plaintiff to produce the transcript of Hernandez's examination.[17]

On June 27, 2023, Plaintiff took the deposition of Ayesha Diaz.[18] During cross examination, counsel for Crowley asked Diaz a series of questions similar to those previously posed to Plaintiff during her deposition regarding whether Plaintiff and Diaz had communicated in any manner other than WhatsApp.[19] In response, Diaz testified as follows:

**Q.    Is that -- would you say that you regularly communicate with [Plaintiff] via WhatsApp?**

**A.    It would be WhatsApp or maybe a comment in the social media**

---

[14] (Doc. 105-2) Plaintiff's Responses to Crowley's Second Request for Production.

[15] (Doc. 105-4) Plaintiff's Responses to Crowley's Third Request for Production.

[16] (Doc. 66) Crowley's Motion to Compel Responses to Defendant's First Request for Production and to Expert Witness Request for Production to Plaintiff.

[17] (Doc. 96) August 14, 2023 Endorsed Order; (Doc. 106) August 30, 2023 Order.

[18] (Doc. 89-7) June 27, 2023 Deposition of Ayesha Diaz-Munoz (hereinafter, "Diaz Depo.").

[19] Diaz Depo. at 46-53.

4880-6451-5233, v. 1

> **or something like that.**
>
> ***
>
> **Q.   So in addition to WhatsApp, in what other ways have you communicated with [Plaintiff] since, let's say, you know, the time that you left Crowley [December 31, 2018]?**
>
> **A.   It could be -- I don't know, maybe Facebook, if she has Facebook, or -- I don't know if even she have (sic) Facebook or Instagram. And, I mean, it could be on an iPhone or in a picture, or, "Hope everything is well," or something like that.**
>
> **Q.   Have you had phone calls with her?**
>
> **A.   No.[20]**

On June 30, 2023, Crowley filed its Second Motion to Compel requesting, among other things, that the Court compel Plaintiff to produce her Facebook account information as previously requested by Crowley.[21] The Court subsequently granted Crowley's Motion and ordered Plaintiff to produce her Facebook account information by no later than September 15, 2023.[22]

Over a year after serving her initial Rule 26 disclosures and only after the close of discovery, on July 13, 2023, Plaintiff supplemented her initial disclosures by identifying an additional six witnesses that were omitted from her initial Rule 26 disclosures including: Luis Santamaria, Blanca Hernandez, Lya Santamaria, Jenny Muniz, Elsa V. Castro, and Heitzel Monroy.[23] Moreover, Plaintiff indicated for the first time that Ponce had knowledge of Ethics Point 280, Blanco's alleged ongoing

---

[20] Diaz Depo. at 47 (emphasis added).
[21] (Doc. 76) Crowley's Motion to Compel Responses to Defendant's Second Request for Production.
[22] (Doc. 106) August 30, 2023 Order.
[23] (Doc. 105-5) Plaintiff's Second Supplemental Rule 26 Disclosures.

6

sexual misconduct; alleged threats from HR to Plaintiff and others and HR's failure to stop Blanco's misconduct; Crowley's response to employee complaints and alleged coverup; and Plaintiff's damages.[24]

On August 28, 2023, Crowley filed its First Motion for Sanctions seeking to prohibit Santamaria from testifying at trial and excluding his sworn examination from being considered by the Court when deciding the pending Motions for Summary Judgment and award Crowley's its attorneys' fees and costs incurred in bringing said Motion.[25] The Court granted Crowley's Motion and the relief requested therein based on the Court's finding that Plaintiff violated Rules 26(a) and 26(e) by intentionally and continuously failing to disclose to Crowley Santamaria's contact information, his examination under oath, and Plaintiff's intent to use him as a witness.[26]

On December 27, 2023, Crowley filed a Second Motion for Sanctions based on Plaintiff's failure to comply with this Court's August 30, 2023, Order directing her to produce her Facebook account information.[27] On January 5, 2023, the Court entered an Order directing the Parties to meet and confer to try to resolve the disputed issues regarding the production of Plaintiff's Facebook account and leaving the request for sanctions open.[28]

---

[24] (Doc. 105-5) Plaintiff's Second Supplemental Rule 26 Disclosures. Previously, Plaintiff only disclosed that Ponce had knowledge of bruises on Plaintiff's arm and that Ponce learned about Plaintiff's alleged assault after Blanco's termination. *See* **Exhibit C,** Plaintiff's Responses to Crowley's First Set of Interrogatories.
[25] (Doc. 105) Crowley's Motion for Sanctions.
[26] (Doc. 130) November 22, 2023 Order.
[27] (Doc. 106) August 30, 2023 Order; (Doc. 134) Crowley's Second Motion for Sanctions.
[28] (Doc. 143) January 5, 2024 Order.

4880-6451-5233, v. 1

**Improperly Withheld Discoverable Information & Spoliation of Evidence**

Upon reviewing the belated production of Plaintiff's Facebook account which contains thousands of pages of previously unproduced documents and information, Crowley discovered alarming evidence indicating that Plaintiff completely disregarded her mandatory discovery obligations and this Court's Orders by improperly withholding and even destroying responsive and material documents and providing false testimony regarding the existence of said documents. Further, Plaintiff committed a fraud on the Court by repeatedly and affirmatively misrepresenting to the Court that Plaintiff had produced all documents and information in her possession that were responsive to Crowley's discovery requests.[29] Given that this case is scheduled for trial soon and time is therefore of the essence, summarized below for the Court's consideration are the most damning of the withheld or deleted documents and information contained in the Facebook production which clearly demonstrate the egregious nature of Plaintiff's conduct in this case:

a.      Notwithstanding Plaintiff's and Diaz's deposition testimony to the contrary, between January 14, 2021, and July 19, 2022, Plaintiff and Diaz exchanged numerous Facebook messages and had several phone calls regarding Plaintiff's separation from employment and the claims she has asserted against Crowley in this lawsuit.[30] Disturbingly, Plaintiff also appears to have permanently deleted two

---

[29] (Doc. 72) Plaintiff's Response in Opposition to Crowley's Motion to Compel; (Doc. 82) Plaintiff's Response in Opposition to Crowley's Motion to Compel (ECF No. 76); (Doc. 115) Plaintiff's Response to Order to Show Cause.
[30] **Exhibit E,** Facebook messages between Plaintiff's and Diaz.

messages that she sent to Diaz on June 10, 2021, as part of a deliberate effort to deprive Crowley of discovering the information contained within them:



It is unclear when the messages were deleted, only that Plaintiff deleted them on or after June 10, 2021, the date they were sent.  Despite the fact that she had already been served with Crowley's First, Second, and Third RFPs and provided sworn testimony via her interrogatory responses and deposition testimony, Plaintiff continued her efforts to conceal these messages from discovery by removing Diaz as a Facebook friend on June 15, 2023.[32]

b.    On September 6, 2021, Plaintiff exchanged numerous Facebook messages with former Crowley employee, Fernando Giron, relating to the allegations in her lawsuit.[33] Remarkably, these messages reflect that in response to an apparently now-deleted post to either Facebook or Plaintiff's LinkedIn page in which she publicly complained of sexual abuse by a "company leader," Giron contacted her to inquire

---

[31] **Exhibit E,** Facebook messages between Plaintiff's and Diaz.  Once a Facebook user "unsends" a message that is contained in a private chat with another person, the message is permanently deleted and cannot be recovered. Facebook's Help Center advises: "If you or someone in your chat downloads a copy of their Facebook data, you'll both be able to see that messages were unsent in the chat, but not what those messages said." See *Remove or unsend a message on Messenger,* Facebook.com (last accessed on January 3, 2024) (https://www.facebook.com/help/messenger-app/194400311449172/?helpref=uf_share).
[32] **Exhibit F,** a list of friends Plaintiff has removed on Facebook.
[33] **Exhibit A**, Facebook messages between Plaintiff and Fernando Giron.

whether the identity of the individual she referred to in her post was "**Emilio Blanco**."[34] Plaintiff ultimately responded to Giron's inquiry about her alleged assault by admitting that:

> **But in my case it wasn't Emilio . . .**
> **But yes there are a lot of people who have written to me about**
> **him . . .**
> **Since I made that post.**[35]

This potentially exculpatory evidence was only recently provided after being ordered by the Court multiple times.

     c.    On November 7, 2017, in the midst of her trip to Jacksonville, Plaintiff exchanged numerous Facebook messages with Damaris Rivas, which, in relevant part, reflect that Plaintiff provided Rivas with the address of her hotel in Jacksonville for Rivas to drive into town and meet with Plaintiff on November 8 or 9, 2017. November 9 was the date of the alleged assault.[36]



[37]

---

[34] **Exhibit A**, Facebook messages between Plaintiff and Fernando Giron (emphasis added).
[35] **Exhibit A**, Facebook messages between Plaintiff and Fernando Giron (emphasis added).
[36] **Exhibit G,** Facebook messages between Plaintiff and Damaris Rivas.
[37] **Exhibit G,** Facebook messages between Plaintiff and Damaris Rivas.

4880-6451-5233, v. 1

However, if and when this meeting took place cannot be gleaned from Plaintiff's subsequent messages with Rivas, and Rivas was never identified as a witness.

  d. On the night of the alleged assault, November 9, 2017, Plaintiff also exchanged numerous Facebook messages with former Crowley employee, Evelyn Vasquez, who accompanied Plaintiff during her trip to Jacksonville from November 5-10, 2017, and stayed in a hotel room next to Plaintiff during that trip.[38] These messages reflect that between 10:29 and 10:48 p.m., Plaintiff consulted Vasquez regarding a separate conversation that she was simultaneously having with Defendant Blanco via WhatsApp during that time and even sent Vasquez a screenshot of a message she received from Blanco.[39] Despite the fact that these messages are indisputably material to the alleged sexual assault that Plaintiff claims occurred that same night and were responsive to Crowley's RFPs, Plaintiff nonetheless failed to produce them until this late date thereby depriving Crowley of the opportunity to obtain further discovery regarding this new evidence.  Moreover, Plaintiff's testimony of the events that night made no mention of the foregoing messages.[40]

  e. On November 10, 2017, at 7:16 a.m., only several hours after Plaintiff alleges Defendant Blanco sexually assaulted her, Plaintiff published the following post on her Facebook page:

> **Counting the hours to be in my house and enjoy 48 hours with my family, chubby, my sweetheart and my friends.**

---

[38] **Exhibit H,** Facebook messages between Plaintiff's and Evelyn Vasquez.
[39] **Exhibit H,** Facebook messages between Plaintiff's and Evelyn Vasquez at 3.
[40] *See* (Doc. 89-1) Treminio Depo. at 144-145.

**Next stop: PUERTO RICO** 😊.[41]

Later that day, Plaintiff posted the following video on her Facebook page from the Jacksonville airport:



[42]

Such evidence has a direct bearing on the veracity of Plaintiff's claims and Crowley should have been permitted to depose Plaintiff on the evidence.

f.   After each of the two alleged incidents involving Defendant Blanco between September 4 and November 9, 2017, including the alleged groping and sexual assault, Plaintiff remarkably exchanged Facebook messages with numerous friends regarding an available job position within her department at Crowley and encouraged each of them to send their resumes so she could review them with Defendant Blanco.[43]

g.   In August 2021 and January 2023, Plaintiff exchanged numerous Facebook messages with former Crowley employee, Chad Yarbrough, relating to the allegations in her Complaint in which Plaintiff shared with him specific details regarding the alleged sexual assault and complained that Crowley refused to pay her

---

[41] **Exhibit I,** Plaintiff's Facebook posts on November 10, 2017.
[42] **Exhibit I,** Plaintiff's Facebook posts on November 10, 2017.
[43] **Exhibit J,** composite of Plaintiff's messages with three of her Facebook friends.

4880-6451-5233, v. 1

as much as she (erroneously) believed the Company offered another woman who had filed a previous lawsuit alleging unrelated claims of retaliation.[44] On October 18, 2021, similar to Diaz, Plaintiff also removed Yarbrough as a Facebook friend, Yarbrough was never disclosed as a witness, and the messages were not produced.[45]

       h.      Between July 26 and August 31, 2021, Plaintiff exchanged several Facebook messages with an apparent family friend, Alejandra Moreno, regarding a referral for a U.S.-based attorney.[46] However, in what appears to be another deliberate attempt to deprive Crowley of likely relevant and material evidence, Plaintiff deleted no fewer than 16 messages that she sent to Moreno between August 24-27, 2021.[47]  It is unclear when the deletions occurred, only that they happened sometime on or after the dates the messages were sent, August 24-27, 2021.

      Throughout 2017 to the present, Plaintiff consistently utilized her Facebook account to interact and communicate with friends, family, and acquaintances regarding her employment with Crowley, separation therefrom, and allegations of her Complaint as demonstrated by her account activity and the private messages, in both written and audio format, that she sent and received during this time. Notwithstanding, she knowingly and intentionally frustrated Crowley's right to discovery by repeatedly failing to produce her complete Facebook account information as demonstrated by her omission of all data other than her Facebook messages in her

---

[44] **Exhibit K,** Facebook messages between Plaintiff and Chad Yarbrough.
[45] **Exhibit F,** list of "Friends" Plaintiff has removed on Facebook.
[46] **Exhibit L,** Facebook messages between Plaintiff and Alejandra Moreno.
[47] **Exhibit L,** Facebook messages between Plaintiff and Alejandra Moreno.

first production on December 22, 2023, and second production of Facebook data on December 23, 2023, that only captured September 12, 2020, to September 13, 2023.

Plaintiff's pattern of contumacious and bad faith conduct has not only inhibited the Court's administration of justice, but also unfairly prejudiced Crowley by depriving it of key evidence that goes to the heart of Plaintiff's claims as well as the opportunity to put on a complete defense in this case. Given the late hour of this litigation and Plaintiff's apparent indifference to the sanctions that the Court has already twice imposed on her, Crowley submits that the prejudice at issue here cannot be cured by any lesser sanction other than the dismissal of Plaintiff's case with prejudice.

## MEMORANDUM OF LAW

### I.   Plaintiff's Disregard for this Court's Orders and her Discovery Obligations Warrants the Imposition of Severe Sanctions

It is well-settled that courts have inherent authority to police the cases before them, which includes imposing sanctions on parties and their counsel for litigation misconduct. *Stimson v. Stryker Sales Corp.*, 835 F. App'x. 993, 998 (11th Cir. 2020); *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006). Such sanctions are appropriate where the court finds a party or attorney acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). The court's inherent power permits a broad spectrum of sanctions ranging from striking frivolous pleadings and defenses, awarding attorney's fees and costs, and outright dismissal of a lawsuit. *Stonecreek-AAA, LLC v. Wells Fargo Bank N.A.*, 2014 WL 12514900, at *2 (S.D. Fla. May 13, 2014) (citing *Chambers*, 501 U.S. at 41). Dismissal

with prejudice is warranted if (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the court specifically finds that lesser sanctions would not suffice. *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337-38 (11th Cir. 2005). For example, dismissal of an action is appropriate upon a finding that a party has willfully deceived the court and engaged in conduct that inhibited the court's ability to fairly and efficiently administer justice. *Jones v. Life Care Centers of Am., Inc.*, No. 3:20-cv-488-TJC-PDB, 2022 WL 4389727, at *34 (M.D. Fla. Aug. 11, 2022), *report and recommendation adopted*, 2022 WL 4384175 (M.D. Fla. Sept. 22, 2022).

In addition to the Court's inherent power, the Rules prescribe certain remedies for a party's non-compliance with court orders, discovery obligations, and the Federal and Local Rules. *Soto v. Miami-Dade Cnty.*, 281 F. Supp. 3d 1320, 1322 (S.D. Fla. 2017), *aff'd*, 760 F. App'x. 855 (11th Cir. 2019). Rule 37(b) empowers the Court to impose "just" sanctions against a party that violates a discovery order, including a dismissal with prejudice where the offending party's conduct is willful or undertaken in bad faith and lessor sanctions would not suffice. Fed. R. Civ. P. 37(b)(2)(A); *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993). Similarly, Rule 26(g) affords the Court the authority to impose sanctions for violations of the certification requirements applicable to Rule 26(a)(1) disclosures and discovery responses, requests, and objections.[48]

---

[48] Importantly, "[f]ailure to comply with discovery obligations constitutes a violation of the Federal Rules and triggers the Court's authority to impose sanctions under, either or both, Rules 26(g) and

However, Plaintiff in this case completely disregarded these Rules by engaging in a willful pattern of bad faith conduct intended to frustrate Crowley's right to discovery and mount its defenses as evidenced by the following concerted acts:

- Providing false testimony during Plaintiff and Diaz's depositions regarding the existence of relevant and material evidence contained within her Facebook account;

- Intentionally deleting certain Facebook messages that Plaintiff exchanged with at least two individuals, Diaz and Moreno, during which she was discussing her claims and that likely contained evidence adverse to her claims;

- Falsely representing to Crowley, its counsel, and the Court that Plaintiff had produced all responsive documents to Crowley's RFPs despite either intentionally withholding or failing to perform an adequate search for such documents as demonstrated by the numerous Facebook messages she exchanged with both current and former Crowley employees and third parties regarding the allegations of her lawsuit, all of which constitute clear violations of Rules 11 and 26(g) and this Court's Local Rules;

- Failing to properly respond to Crowley's RFPs by failing to indicate she was withholding responsive documents and information;

- Providing intentionally incomplete and evasive information in her sworn interrogatory responses and Rule 26 disclosures;

- Failing to supplement her Rule 26(a) disclosures and interrogatory responses - misconduct that Plaintiff has previously been sanctioned for by the Court; and

- Failing to timely produce a complete production of her Facebook account data in accordance with this Court's Order and only at the eleventh hour, producing the information.

This clear pattern of willful contempt clearly establishes that it is impossible for

---

37(b)." *B-K Cypress Log Homes v. Auto-Owners Ins. Co.*, 2011 WL 13227992, at *2 (N.D. Fla. May 13, 2011).

Crowley to know whether Plaintiff has produced, or will ever produce, all discoverable information. *See First Coast Energy, L.L.P. v. Mid-Continent Cas. Co.*, 2015 WL 5159140, at \*21 (M.D. Fla. Sept. 2, 2015). Further, Plaintiff's improper withholding of discoverable information contained in her Facebook account logically leads to a conclusion that she has likely withheld similar documents and information contained within other sources, such as her other social media accounts, including WhatsApp, LinkedIn, Instagram, and TikTok.

Plaintiff has not and cannot reasonably provide any substantial justification for withholding this discoverable information until this late stage of the litigation. On the contrary, much of the information contained in her Facebook production should have been disclosed and produced at the outset of this proceeding. The fact that she recently elected to finally produce her Facebook account data is "insufficient to restore the evidentiary balance because it is impossible to know what [Crowley] would have found if [Plaintiff] and her counsel had complied with their discovery obligations from the commencement of the action." *Id*. at \*22. Further, Crowley has been unjustifiably deprived of any opportunity to use the documents and information to develop strategy, conduct discovery, use them in depositions, support a dispositive motion, and adequately prepare for trial. Crowley also incurred unnecessary costs and expenses associated with performing an expedited review of this belated evidence, including the costs of expedited translation, filing motions to compel and for sanctions, and taking now-incomplete depositions that will likely have to be repeated should a default judgment not be entered. Thus, Plaintiff has deliberately and incurably hindered the

17

fair administration of justice in this case. *See Jones*, 2022 WL 4389727, at *34.

Based on the foregoing, dismissal of Plaintiff's claims with prejudice is warranted. Lesser sanctions have already proven to be ineffective and would only reward Plaintiff's bad faith and dilatory tactics. This is not a situation where Plaintiff was merely negligent. Instead, the record in this case demonstrates that Plaintiff has no intention to comply with her mandatory discovery obligations. Sanctions shy of dismissal would simply be inadequate to cure the damage caused by Plaintiff's discovery failures and the false sworn testimony she and Diaz provided during their depositions regarding facts that had a direct bearing on the Court's decision-making process. *See Jones*, 2022 WL 4389727, at *34 (citing *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 323 (1994) ("False testimony in a formal proceeding is intolerable. We must neither reward nor condone such a 'flagrant affront' to the truth-seeking function of adversary proceedings.")). Moreover, lesser sanctions would not change or actually punish Plaintiff's egregious behavior nor deter other parties contemplating a similar course of action in the future. *See In re Sunshine Jr. Stores, Inc.*, 456 F.3d at 1306 (affirming default against defendant where its failure to participate in discovery amounted to bad faith and no other sanctions would have resulted in compliance); *First Coast Energy, L.L.P.*, 2015 WL 5159140, at *22. Dismissal with prejudice of Plaintiff's claims is the only sanction that "fit[s] the interests jeopardized, and the harm caused by the violation." *See Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006); *see also Jones*, 2022 WL 4389727, at *35 (dismissing plaintiff's claims with prejudice); *First Coast Energy, L.L.P.*, 2015 WL 5159140, at *22 (same). Lastly, Crowley requests that

the Court award it its reasonably attorney's fees and costs incurred as the result of Plaintiff's misconduct. *See, e.g., Hornady v. Outokumpu Stainless USA*, 572 F. Supp. 3d 1162 (N.D. Ala. 2021) (entering default judgment for discovery violations and awarding fees and costs to opposing party).

## II.   Sanctions are Warranted for Plaintiff's Spoliation of Crucial Evidence

Spoliation is "the destruction of evidence or the significant and meaningful alteration of a document or instrument." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020). Though spoliation sanctions are often imposed under the broad discretion and inherent power of a district court, Rule 37(e) expressly delineates the procedures and sanctions available when a party spoliates electronically stored information ("ESI"). *See Skanska USA Civil Southeast Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1311 (11th Cir. 2023); *Alabama Aircraft Industries, Inc. v. Boeing Company*, 2022 WL 433457, at *13 (11th Cir. Feb. 14, 2022) (unpublished). The foregoing sanctions are intended to "prevent unfair prejudice to litigants" and ensure "the integrity of the discovery process." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005).

Both Rules 37(e)(1) and 37(e)(2) share the following preconditions: (1) "[ESI] that should have been preserved in the anticipation or conduct of litigation" was "lost because a party failed to take reasonable steps to preserve it" and (2) that information "cannot be restored or replaced through additional discovery." *Bagelheads, Inc.*, 75 F.4th at 1312. The duty to preserve arises when litigation is "pending or reasonably foreseeable" at the time of the alleged spoliation. *Boeing Company*, 2022 WL 433457, at *14 (collecting cases). Further, a party may not unilaterally decide which evidence

in his or her possession, custody, or control is relevant to the litigation and discard the remainder. *Doe v. Willis*, 2023 WL 2918507, at *8 (M.D. Fla. Apr. 12, 2023) (citing *Ahrens Enters., Inc. v. Winning*, 2019 WL 12520080, at *4 (S.D. Fla. Apr. 18, 2019) (finding that a party did not meet his reasonable preservation obligations where he deleted emails prior to a forensic review)).

Under Rule 37(e)(2), if the court finds that a party acted in bad faith (i.e., for the purpose of hiding adverse evidence) or with the intent to deprive the opposing party of the ESI use during the litigation, the imposition of more severe sanctions, ranging from a rebuttable presumption to dismissal of the case with prejudice, is justified. *Id.* However, even in the absence of such a finding, courts may still impose sanctions against the party responsible for the loss of the ESI that may be necessary to cure the resulting prejudice to the opposing party under Rule 37(e)(1). *Id.* Judges are afforded broad discretion in fashioning an appropriate sanction under Rule 37(e)(1) that may include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument . . . ." *Jones*, 2022 WL 4389727, at *31 (quoting Rule 37(e) advisory committee's note to 2015 amendment).

Assessing the prejudice caused by the spoliated ESI foreseeably requires courts to evaluate the importance of the information to the litigation. *Willis*, 2023 WL 2918507, at *10 (citing Rule 37(e), advisory committee notes to 2015 amendment). "Evidence has been found to be crucial when it goes to the heart of a party's ability to

20

prove its claim or defense." *Kimbrough v. City of Cocoa*, 2006 WL 3500873, at *5 (M.D. Fla. Dec. 4, 2006) (citing *Flury*, 427 F.3d at 941, 943). However, courts recognize that "it can often never be proved what was contained in destroyed evidence…[because] [t]ypically, only the spoliator knows how much prejudice has been caused by the destruction." *Nationwide Life Ins. Co. v. Betzer*, 2019 WL 5700288, at *10 (M.D. Fla. Oct. 28, 2019). Accordingly, some courts place the burden of proof on the nonmovant to show a lack of prejudice to the moving party based on the principle that spoliators should not be permitted to profit from the destruction of evidence. *See Jones*, 2022 WL 4389727, at *31*; Coward v. Forestar Realty, Inc.*, 2017 WL 8948347, at *8 (N.D. Ga. Nov. 30, 2017) (collecting cases).  In several recent cases, this court has held the nonmoving party need only tender "plausible, concrete suggestions as to what the destroyed evidence might have been that could have bolstered its case" to establish prejudice. *See, e.g. Willis*, 2023 WL 2918507, at *14; *Nationwide*, 2019 WL 5700288, at *10; *Classic Soft Trim, Inc. v. Albert*, 2021 WL 720435, at *6 (M.D. Fla. Feb. 10, 2021).

Here, Plaintiff's intentional and permanent deletion of her Facebook messages with Diaz on or after June 10, 2021, and Moreno on or after August 24-27, 2021, leads to the conclusion that the evidence was likely unfavorable to her claims of sex trafficking and forced labor she has asserted against Crowley, and conversely, that the messages were favorable to Crowley. The Court need look no further than the Facebook messages that Plaintiff exchanged with Giron in which she appears to have admitted that Defendant Blanco was not the harasser referenced in her social media post in which she publicly alleged that she had been the victim of sexual abuse during

her employment with Crowley.[49]

In a remarkably similar case before this Court, *Doe v. Willis*, the plaintiff brought a lawsuit against her employer and former supervisor alleging that her supervisor sexually assaulted her while training her to be a truck driver. 2023 WL 2918507, at *1. Her supervisor denied the assault occurred and instead asserted that he and the plaintiff were in a consensual relationship. *Id*. Despite retaining an attorney and subsequently filing her lawsuit, Plaintiff took screenshots of selections of her text messages contained on her existing phone that she deemed relevant, but then proceeded to cause the permanent loss of the bulk of the remaining ESI on her phone by dropping it several times. *Id*. at *12. The Court ultimately imposed spoliation sanctions against the plaintiff regarding the lost ESI and found that the employer had demonstrated prejudice by tending the following plausible, concrete suggestions to what the evidence might have been:

> The ESI lost in this case is critical evidence of [plaintiff's] claims and her credibility. A single text message alone could have been "smoking gun" evidence, reflecting [plaintiff's] admission she was in a voluntary relationship with [her supervisor] (which she has denied), [a] picture or communication showing [the plaintiff] and [her supervisor] socialized outside of work (which she has denied), or communications by [the plaintiff] reflecting any jealousy for [her supervisor's] believed paramour Houston whom she contacted just days before she retained counsel.

*Id*. at *14.

Crowley asserts that Plaintiff's destruction of her messages establishes the same prejudice suffered by the employer in *Willis*. Plaintiff's messages with Diaz and

---

[49] **Exhibit A**, Facebook messages between Plaintiff and Fernando Giron.

Moreno clearly establish that at the time she sent the destroyed messages, she was already planning to file a lawsuit against Crowley and thus she had a duty to take reasonable steps to preserve, and certainly not delete, her Facebook messages relating to this case. Moreover, she may have deleted the messages after the lawsuit was filed, it is impossible to know. It is difficult to conceptualize a case where the evidence destroyed would prove more critical than this one given that Plaintiff's allegations date back over six years ago. A finding is therefore warranted that Plaintiff destroyed this crucial evidence in bad faith with the intent to deprive Crowley of the opportunity to put on a complete defense and as such, dismissal of her case with prejudice is warranted. Any lesser sanction would allow Plaintiff to benefit from her improper acts rather than deter similar conduct in the future.

In the absence of dismissal of Plaintiff's claims, Crowley requests that the Court reopen discovery for the purpose of unilaterally allowing Crowley to:

1. Re-depose Plaintiff regarding the new evidence that was revealed in Plaintiff's Facebook production and the content of the messages she intentionally and permanently deleted;

2. Take additional discovery regarding the evidence contained in Plaintiff's Facebook production, including a limited number of additional depositions of individuals such as Giron and others who readily appear to possess critical evidence regarding Plaintiff's claims and Crowley's defenses;[50] and

3. Obtain a forensic examination, the cost of which shall be incurred by

---

[50] *See NuVasive, Inc. v. Kormanis*, 2019 WL 1171486, at *11 (M.D.N.C. Mar. 13, 2019) (permitting plaintiff to take post-discovery-deadline depositions as a curative measure under Rule 37(e)(1)), *report and recommendation adopted*, 2019 WL 1418145 (M.D.N.C. Mar. 29, 2019); *Spencer v. Lunada Bay Boys*, 2018 WL 839862, at *1 (C.D. Cal. Feb. 12, 2018) (permitting plaintiff to conduct additional deposition of defendant as a sanction), *aff'd*, 806 F. App'x. 564 (9th Cir. 2020).

23

> Plaintiff, of her electronic devices, including any cell phones, computers, and tablets, that she utilized between January 1, 2017, and the present, to access her Facebook, WhatsApp, LinkedIn, Instagram, TikTok, and other social media accounts to verify that no additional responsive documents and information has been improperly withheld.[51]

To the extent the Court determines that an evidentiary hearing is necessary, Crowley requests that Plaintiff and Diaz be ordered to appear and provide testimony at the hearing with respect to the spoliation issues.

In addition, Crowley requests the Court to instruct the jury that it must presume the destroyed messages Plaintiff sent to Diaz and Moreno contained evidence that was unfavorable to her claims and certain facts are deemed admitted and must be accepted as true, including but not limited to, her statements to Giron in which she admitted that Defendant Blanco was not the individual that she was referring to in her social media post following her separation from employment with Crowley. Plaintiff should also be precluded from calling Diaz or Moreno as witnesses at trial and making references to any communications Plaintiff may have had with Diaz during her employment in front of the jury.

Finally, in the event the Court finds that dismissal is not warranted, Crowley asks that this Court impose a monetary sanction against Plaintiff under Rule 37(e)(1) or (2) for the time and resources Crowley was required to expend as a result of Plaintiff's spoliation of evidence, including its reasonable attorneys' fees and costs associated with the filing of this Motion. *See, e.g., Bagelheads, Inc.*, 75 F.4th at 1314.

---

[51] *See Jones*, 2022 WL 4389727, at *19 (following an evidentiary hearing, court suggested the parties obtain a forensic examiner to examine plaintiff's cell phone).

## CONCLUSION

The record before this Court unquestionably supports a finding that Plaintiff engaged in a pattern of willful misconduct and bad faith warranting the dismissal of her claims with prejudice. There is no sanction short of a complete dismissal that would adequately address the resulting prejudice to Crowley and Plaintiff's concerted attempts to abuse the judicial system or deter similar conduct in the future. For these reasons, Crowley respectfully requests that its Third Motion for Sanctions be granted, this case be dismissed with prejudice, and it be awarded its reasonable attorneys' fees and costs for having to bring these disturbing matters before the Court and any other relief the Court deems just and proper.

Dated this 31st day of January, 2024.

Respectfully submitted,

ALEXANDER DEGANCE BARNETT, P.A.

By: _____

Kelly DeGance
Florida Bar No. 0606022
E-mail: kelly.degance@adblegal.com
Samantha Giudici Berdecia
Florida Bar No. 0058667
E-mail: samantha.giudici@adblegal.com
E-mail: mailbox@adblegal.com
1500 Riverside Avenue
Jacksonville, FL 32204
(904) 345-3277 Telephone
*Attorneys for Crowley Maritime Corporation*

4880-6451-5233, v. 1

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 3.01(g), Local Rules, United States District Court, Middle District of Florida, and as set forth in the Motion, counsel for Crowley conferred in good faith with counsel for Plaintiff regarding the issues raised in this Motion via electronic mail on January 9, 29, and 30, 2024, and counsel for Plaintiff indicated that she opposes the Motion.

_____
ATTORNEY

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to counsel of record: Adria G. Notari, Notari Law, P.A., 1820 SW 14th Court, Fort Lauderdale, Florida 33312 (anotari@NotariLaw.com); Spencer T. Kuvin, Law Offices of Craig Goldenfarb, P.A., 1641 Worthington Road, Suite 300, West Palm Beach, FL 33409 (treminiovanessa11940712@goldlaw.filevineapp.com) (skuvin@800goldlaw.com) (snewall@800goldlaw.com); C. Michael Williams, Law Office of C. Michael Williams, P.A.; 1710 Shadowood Ln, Ste. 220, Jacksonville, Florida 32207 (seemichaelwilliams@gmail.com); Kristyne Kennedy and Kelsey Ortiz, Esq, Cole, Scott & Kissane, P.A, Tower Place, Suite 400, 1900 Summit Tower Boulevard, Orlando, Florida 32810 (Kelsey.Ortiz@csklegal.com) (Celia.Cates@csklegal.com) (Kristyne.Kennedy@csklegal.com).

_____
ATTORNEY

4880-6451-5233, v. 1