**UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF FLORIDA**

**JACKSONVILLE DIVISION**

| | |
|---|---|
| **VANESSA TREMINIO,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CROWLEY MARITIME CORPORATION, and JUAN EMILIO BLANCO,**<br><br>**Defendants.** | **3:22-cv-00174-CRK-PDB** |

## INTRODUCTION

Before the Court are three motions in limine filed by Plaintiff Vanessa Treminio ("Plaintiff") seeking to exclude evidence she anticipates Defendant Crowley Maritime Corporation ("Crowley") and Defendant Juan Emilio Blanco ("Blanco") (collectively "Defendants") will seek to introduce.[1] Plaintiff moves to exclude evidence of four termination agreements signed by Plaintiff while employed by Crowley, evidence concerning the resignation of Ayesha Diaz-Munoz ("Diaz"), a former Crowley employee, who is anticipated to testify at trial, and evidence that Plaintiff trained for a press conference. See Pl. Mot. Lim. Excl. Ev. Term. Agrmts. at 1, Dec. 28, 2023, ECF No. 137 ("Term. Mot."); Pl. Mot. Lim. Excl. Ev. Circs. Re Ayesha Diaz Resign. at

1 Defendant Blanco did not file his own response or join any of Crowley's responses to Plaintiff's motions in limine.

1, Dec. 28, 2023, ECF No. 138 ("Diaz Mot."); Pl. Mot. Lim. Excl. Ev. Training For Press Conf. at 1, Jan. 2, 2024, ECF No. 139 ("Training Mot."). For the following reasons, Plaintiff's motions are granted in part and denied in part.

**BACKGROUND**

The three motions before the Court concern Plaintiff's lawsuit against Crowley and Blanco. Plaintiff alleges violations of 18 U.S.C. §§ 1589, 1591, and 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPRA") against Crowley for sex trafficking and forced labor, and violations of the TVPRA for sex trafficking and state tort claims against Blanco.[2] See Am. Compl. at ¶¶ 101–69. Plaintiff's motions seek to exclude certain evidence she anticipates Crowley will seek to introduce. See Term. Mot. at 1; Diaz Mot. at 1; Training Mot. at 1.

The first motion moves to exclude four termination agreements, each signed by Plaintiff sometime in December from 2017 to 2020, while she was employed by Crowley. Term. Mot. at 1; see [Crowley] Answer at Exh. A, Jan. 19, 2023, ECF No.

---

[2] The Trafficking and Victim's Protection Act ("TVPA") has been reauthorized and amended numerous times since its implementation in 2000. See Human Trafficking: Key Legislation, U.S. Dep't of Just. (Aug. 23, 2023), https://www.justice.gov/humantrafficking/key-legislation#:~:text=The%20TVPRA%202008%20expanded%20the,potential%20victims%20of%20human%20trafficking (last visited Jan. 27, 2024). In 2003, Congress reauthorized and amended the TVPA with the Trafficking Victims Protection Reauthorization Act of 2003, which refined the criminal provisions against trafficking and included a civil remedy actionable by victims against their traffickers in federal court. See id.; see also Pub. L. No. 108-193. Because Plaintiff's sex trafficking and forced labor claims rest upon the civil action remedy created by the 2003 amendment, see Am. Compl. ¶¶ 102, 115, 155, the applicable statute will be referred to as the Trafficking and Victims Protection Reauthorization Act ("TVPRA").

38-1 ("Answer"). Plaintiff argues that the agreements are invalid, that the scope of release contained in the agreements is irrelevant to any material issue for trial under Federal Rule of Evidence 401, and that admission of the agreement will confuse the jury under Rule 403. Term. Mot. at 1–6. Crowley responds by arguing that (1) Plaintiff's motion to exclude the termination agreements is a motion for summary judgment in disguise; (2) the agreements are valid under federal law and are thus affirmative defenses to Plaintiff's claims; and (3) Plaintiff's Rule 401 and 403 challenges are without merit. [Crowley] Resp. Opp'n [Term. Mot.] at 3–14, Jan. 11, 2024, ECF No. 150 ("Term. Resp.").

The second motion seeks to exclude evidence regarding the circumstances surrounding the resignation of Diaz, a former Crowley employee. Diaz Mot. at 1. Plaintiff argues that introduction of the matters regarding Diaz's resignation would be irrelevant, prejudicial, inadmissible and confuse the jury under Rules 401 and 403, and further that it would constitute inadmissible character evidence under Rule 404. Id. at 2–7. Crowley argues that Diaz's testimony would be relevant to show her potential bias against Crowley and one of Crowley's anticipated witnesses. [Crowley's] Resp. Opp'n [Diaz Mot.] at 3–5, Jan. 11, 2024, ECF No. 149 ("Diaz Resp."). Further, Crowley argues any concerns of prejudice against Plaintiff are outweighed by the probative value of this evidence and the potential bias that it may reveal. Id. at 7.

The third motion seeks to exclude anticipated testimony from Diaz that Plaintiff trained for a press conference "in order to get Crowley's attention." Training Mot. at 1. Plaintiff contends that the testimony should be excluded under Rules 401 and 403 because it is irrelevant to any material issue of her claims, that it would result in substantial prejudice, that it would confuse and mislead the jury, and that it would deprive Plaintiff of her right to a fair trial. Training Mot. at 2–3. Crowley opposes the motion, arguing the testimony is relevant to Plaintiff's credibility and that any unfair prejudice Plaintiff may suffer does not substantially outweigh the testimony's probative value. [Crowley] Resp. Opp'n [Training Mot.] at 2–4, Jan. 16, 2024, ECF No. 153 ("Training Resp.").

## DISCUSSION

### I. Motion to Exclude Termination Agreements

Plaintiff' seeks to exclude termination agreements she signed when employed by Crowley because they are irrelevant, prejudicial, and would confuse the issue and mislead the jury. Term. Mot. 5–6. Plaintiff relies upon a report provided by Crowley's expert on El Salvadoran Law, attorney Teresa Beatriz Merino Benitez. Id. at 2–4. Crowley argues that the releases constitute an affirmative defense to Plaintiff's allegations, that her motion to exclude the agreements is an impermissible motion for summary judgment, and that her challenges under the Federal Rules of Evidence are without merit. Term. Resp. at 3–14. For the following reasons, Plaintiff's motion is granted.

A motion in limine moves the Court "to exclude anticipated prejudicial evidence before the evidence is actually offered." Luce v. United States, 469 U.S. 38, 40 n.2 (1984); see Barfield v. CSX Transportation, Inc., No. 3:14-CV-1031-J-PDB, 2017 WL 662012, at *3 (M.D. Fla. Feb. 17, 2017). The party moving the Court in limine maintains the burden of demonstrating the inadmissibility of the evidence on any theory it believes relevant. United States v. Gonzalez, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010); Barfield, 2017 WL 662012, at *3.

The parties dispute the relevance of the agreements under Federal Rules of Evidence 401 and 402. Term. Mot. at 5; Term. Resp. at 12–13. Evidence is relevant if it tends to make a fact of consequence more or less probable in determining a claim in an action. Fed. R. Evid. 401. Only relevant evidence is admissible under Rule 402. Fed. R. Evid. 402. Thus, the settlement agreements are relevant only if they purport to release Crowley from sex trafficking liability in this case under Section 1591 of the TVPRA or forced labor liability under Section 1589.

Settlement agreements and releases are contracts, and the interpretation of contract terms is a question of law for the Court to decide rather than a question of fact for the jury. Feaz v. Wells Fargo Bank, N.A., 745 F.3d 1098, 1104 (11th Cir. 2014). Settlement releases are to be strictly construed. Allapattah Servs., Inc. v. Exxon Corp., 188 F.R.D. 667, 681 (S.D. Fla. 1999), aff'd, 333 F.3d 1248 (11th Cir. 2003), aff'd sub nom. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005) ("general, all-encompassing releases must be narrowly construed, which dilutes their

efficacy").[3] A release that relinquishes a cause of action against a contracting party must be "expressly embraced [in the release] or falling within the fair import of the terms employed." Id. at 683 (citing Bilotti v. Accurate Forming Corp., 188 A.2d 24, 35 (N.J. 1963).[4] The underlying intent of the contracting parties governs the scope of the matters released, and the precise matter contemplated by the agreement's language should be afforded considerable focus. Id. at 684; see also, e.g., Mangini v. McClurg, 249 N.E.2d 386, 390 (N.Y. 1969) ("releases contain standardized, even

---

[3] Crowley argues that Plaintiff's motion to exclude evidence of the termination agreements is effectively an improper motion for summary judgment attempting to dispose of Crowley's affirmative defense of waiver. Term. Resp. at 3–5. Crowley's argument is unpersuasive. A party cannot seek a dispositive ruling on a claim through a motion in limine. Hana Fin., Inc. v. Hana Bank, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013), aff'd, 574 U.S. 418 (2015) (noting that a motion in limine which seeks to exclude relevant evidence by presupposing the ultimate legal issue is improper); Provident Life & Acc. Ins. Co. v. Adie, 176 F.R.D. 246, 250 (E.D. Mich. 1997) (finding it improper to exclude all evidence of a party's defense); Johnson v. Chiu, 199 Cal. App. 4th 775, 780 (Cal. Ct. App. 2011) (explaining that a "motion that seeks to exclude all evidence pertaining to part or all of a cause of action based on an argument that [the] plaintiff lacks evidence to support part or all of the cause of action is but a disguised motion for summary adjudication").

Here, Plaintiff's motion does not seek summary judgment on any claim because the motion does not attempt to exclude all evidence that would support Crowley's affirmative defense or to exclude Crowley's theory as a matter of law. The motion seeks to exclude evidence which, as a matter of law, cannot support Crowley's theory and is therefore irrelevant. The issue raised by this motion is purely one of law, i.e. whether the termination agreements constitute a valid waiver of Plaintiff's TVPRA claims, which the Court concludes they do not. Crowley is free to pursue its affirmative defense with other evidence, but the termination agreements are not relevant because they do not waive any TVPRA claims.

[4] The parties dispute whether El Salvadoran or federal common law apply to the releases. Crowley argues that the releases are controlled by and valid under federal common law, while Plaintiff argues that the law of El Salvador applies. Term. Mot. at 2–4; Term. Resp. at 6–7. The Court need not reach the issue of which law would apply as there in no conflict for the purposes of the issue before the Court. And as discussed more fully above, under the law of this Circuit the releases do not waive the claim at issue in the case.

ritualistic, language and are given in circumstances where the parties are sometimes looking no further than the precise matter in dispute that is being settled"); Victoria Bank & Tr. Co. v. Brady, 811 S.W.2d 931, 938 (Tex. 1991) ("In order to effectively release a claim . . . the releasing instrument must 'mention' the claim to be released. Even if the claims exist when the release is executed, any claims not clearly within the subject matter of the release are not discharged"); Vaughn v. Didizian, 648 A.2d 38, 40 (Pa. Super. Ct. 1994) ("it is crucial that a court interpret a release so as to discharge only those rights intended to be relinquished").

Here, the releases in pertinent part provide:

> That on this date, [Plaintiff] [has] been notified of the termination of the Individual Employment Agreement that [Plaintiff] [has] entered into with [Crowley], since the first of January of the year [2017], in the role of Transportation Coordinator, stating for the record that [Plaintiff] [is] receiving in this act to [her] full satisfaction from [Crowley], the sums of [940.00 USD], as compensation, vacation, end of the year bonus, salaries accrued from January 1, 2017, to December 31, 2017, as well as the other benefits by law, and therefore [Crowley] does not owe [Plaintiff] any sum of money as compensation, ordinary or extraordinary wages, vacations, end of year bonuses, vacation days, weekly rest or compensatory rest, overtime work, or any other benefits of an employment or employer nature, since all the amounts [Plaintiff] earned for these items while working in the service of [Crowley], were paid off to [Plaintiff's] full satisfaction in a timely fashion, having no present or future claim against [Crowley], therefore, [Plaintiff] declare that [Crowley] to be free and solvent of all employment liability in [Plaintiff's] favor, and herein [Plaintiff] extend to [Crowley] broad and absolute settlement. This settlement extends to all companies belonging to Crowley Business Group . . . [and] to all employees, agents, officers, directors, and/or administrators of any company belonging to [Crowley]. San Salvador, on [December 29, 2017].

2017 Release, Dec. 29, 2017, ECF No. 150-1.[5]

The plain wording of the employment releases pertains to sums of money Plaintiff earned through the course of employment as a Transportation Coordinator at Crowley. The contract language explicitly lists Crowley's release in actions disputing compensation attributable to her job position, including "compensation, vacation, end of year bonus, salaries accrued [during the annual year], as well as the other benefits by law." 2017 Release. The language also states that the listed compensation was earned by Plaintiff "while working in the service of [Crowley]" and was "paid off to [her] full satisfaction in a timely fashion." Id.

The text of the contract limits the scope of the agreement to disputes over work-related compensation found in an employment contract. Indeed, Crowley tendered consideration in the form of $940.00 for "compensation, vacation, end of the year bonus, salaries accrued [during the 2017 annual year] as well as other benefits by law" so that any claims arising from these expressly listed payments were deemed satisfied by execution of the contract. Id. Thus, the agreements expressly release Crowley from liability over disputes relating to compensation earned by Plaintiff while working in her capacity as a Transportation Coordinator, including bonuses, overtime work, benefits, and vacation days. Nothing in the text of the releases mentions or references causes of action for federal statutes, let alone any claims for

[5] The wording of the 2018, 2019, and 2020 termination agreements vary slightly but are the same as the 2017 release in all material respects. See 2018 Release, Dec. 28, 2018, ECF No. 150-2; 2019 Release, Dec. 30, 2019, ECF No. 150-3; 2020 Release, Dec. 30, 2020, ECF No. 150-4.

sex trafficking or forced labor under the TVPRA. Allowing Crowley to release itself of liability under the TVPRA under the language of the termination agreement would violate a strict interpretation of the four-corners of the contract. Allapattah Servs., Inc., 188 F.R.D. at 683 (reading releases that waive claims narrowly).

Because the release agreements are inapplicable to claims under the TVPRA, they do not render any material facts necessary for success under the TVPRA more or less probable. See Fed. R. Evid. 401 ("Evidence is relevant if it has any tendency to make a fact more or less probable . . . and the fact is of consequence in determining the action"). Accordingly, the releases are irrelevant because they do not pertain to any claim alleged in Plaintiff's suit. Because the releases are not relevant, analysis under Rule 403 is not necessary. Therefore, Plaintiff's motion is granted with respect to the termination agreements.

## II. Motion to Exclude Diaz Resignation

Plaintiff asserts that the inclusion of evidence pertaining to the termination of Diaz's employment with Crowley is irrelevant, inadmissible character evidence, and has very little probative value. Diaz Mot. at 2–7. Crowley counters that the evidence is relevant because it shows Diaz's potential bias, the Federal Rules of Evidence pertaining to character evidence are inapplicable, and that any potential prejudice does not outweigh the probative value of the evidence. Diaz Resp. at 3–9. For the following reasons, Plaintiff's motion to exclude the circumstances of Diaz's termination is denied.

### A. Relevance

Evidence is relevant if it tends to make a fact of consequence in determining the action more or less probable than without the evidence. Fed. R. Evid. 401. Relevant evidence is admissible unless barred by the Constitution, federal law, or evidence rules. Fed. R. Evid. 402.

The evidence pertaining to Diaz's departure is relevant under Rule 401 because it implicates a possible witness's potential bias against Crowley. See Fed. R. Evid. 401. Evidence that elucidates proof of bias is typically relevant. See ML Healthcare Servs., LLC v. Publix Super Markets, Inc., 881 F.3d 1293, 1302 (11th Cir. 2018) (citing United States v. Abel, 469 U.S. 45, 52 (1984)). Arthur LaMoureaux, Crowley's Vice President of Internal Audit, Ethics, and Compliance, was the employee that Diaz contacted when she first relayed Plaintiff's allegations to Crowley. See Dep. [Diaz] at 24:16–25:1, June 27, 2023, ECF No. 89-7 ("Diaz Dep."); Diaz Mot. at 2. LaMoureaux also led Crowley's investigation that resulted in Diaz's termination of employment. Diaz Dep. at 41; Diaz Mot. at 2; Diaz Resp. at 4. Diaz advised Plaintiff prior to and during Plaintiff's lawsuit against Crowley. See Pl. Resp. to RFP 43 at 2–9, 21–28, 47, 51–55, Jan. 11, 2024, ECF No. 149-1. Thus, it is possible that a jury could infer that the circumstances surrounding Diaz's resignation from Crowley, as investigated by LaMoureaux, are relevant to her advice to Plaintiff.

Although Diaz's termination of employment occurred separately from her involvement with Plaintiff's case, the testimony surrounding Diaz's termination of employment involves LaMoureaux as the investigator of Diaz's ethics violations.

Accordingly, the testimony regarding Diaz's termination of employment potentially speaks to bias that Diaz may or may not have towards LaMoureaux and Crowley given Diaz's involvement with Plaintiff's lawsuit. This testimony is relevant because it affects factual determinations of consequence in the action, such as the events surrounding Plaintiff's reporting of the allegations and the inception of her lawsuit. Therefore, the circumstances surrounding Diaz's resignation are admissible under Rule 401.

**B. Prejudice, Confusion of the Issues, Misleading the Jury**

The parties next dispute any prejudicial effect that would follow from introduction of the circumstances of Diaz's resignation. Plaintiff contends the prejudicial effect of introducing the circumstances outweighs any of its potential probative value. Diaz Mot. at 5. Plaintiff argues that any of Diaz's ethical violations while employed by Crowley "does not impart any probative value" to any of Plaintiff's claims or Defendants' related defenses. Id. at 6. Moreover, Plaintiff argues that any discussion of Diaz's resignation will confuse the issues and mislead the jury. Id. at 6–7. Crowley counters that the conversations between Diaz and LaMoureaux regarding her resignation from a position she had for nearly a decade coupled with Diaz's involvement with Plaintiff's lawsuit has significant probative value. Diaz Resp. at 7–9.

Evidence may be excluded if its "probative value is substantially outweighed" by the danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. The Court has broad discretion to weigh the probative value against a

danger within Rule 403 because of its unique ability "to view witnesses and assess the impact of evidence." United States v. King, 713 F.2d 627, 631 (11th Cir. 1983); United States v. Mitrovic, 890 F.3d 1217, 1226 (11th Cir. 2018) ("As the Supreme Court explained, 'the Constitution leaves to the judges who must make these [admissibility] decisions wide latitude to exclude evidence that . . . poses an undue risk of . . . confusion of the issues'"(quoting Crane v. Kentucky, 476 U.S. 683, 688–89 (1986))). However, because there are circumstances where probative evidence will nonetheless be excluded, Rule 403 "is an extraordinary remedy that must be used sparingly." United States v. McGregor, 960 F.3d 1319, 1324 (11th Cir. 2020) (citing United States v. Cross, 928 F.2d 1030, 1051 (11th Cir. 1991)); see also King, 713 F.2d at 631.

With respect to unfair prejudice, Rule 403 is "limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." United States v. Meester, 762 F.2d 867, 875 (11th Cir. 1985) (internal quotations and citations omitted). Unfair prejudice is often embodied by "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Old Chief v. United States, 519 U.S. 172, 180 (1997) (internal quotations and citations omitted). The reviewing court must view the contested evidence in a lens favoring admission, "maximizing its probative value and minimizing its undue prejudicial impact." McGregor, 960 F.3d at 1324 (citing Aycock v. R.J. Reynolds Tobacco Co., 769 F.3d 1063, 1069 (11th Cir. 2014)).

Here, the Court cannot say that any danger of prejudice outweighs the probative value. Plaintiff fails to explain how evidence concerning Diaz's ethical violations will prejudice Plaintiff. See Cauchon v. United States, 824 F. 2d 908, 914 (11th Cir. 1987) ("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403") (internal quotations, citations, and emphasis omitted); Old Chief, 519 U.S. at 180 (suggesting unfair prejudice is a tendency to base a decision on an improper basis, such as an emotional one). Such testimony tends to exhibit Diaz's possible bias against Crowley, a permissible ground for credibility impeachment as explained below. Fed. R. Evid. 608(b). Thus, its probative value outweighs the danger of any prejudice Plaintiff alleges. See Fed. R. Evid. 403. Additionally, any attempts by Crowley to "distort or hyperbolize" Diaz's relationship with the vendor that led to her resignation can be objected to and ruled upon at trial in proper context. See Arthrex, Inc. v. Parcus Med., LLC, No. 2:10-CV-151-FTM-38, 2014 WL 2700802, at *1 (M.D. Fla. June 13, 2014) ("The Court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine").

Plaintiff is free to renew her objection at trial, if trial developments give more support to such objection. See Arthrex, Inc., 2014 WL 27008002, *at 1 ("the district judge is free, in exercise of sound judicial discretion, to alter a previous in limine ruling"). The Court can ensure tangential issues to Plaintiff's claim do not reach the jury. See Barfield, 2017 WL 662012, at *3 ("If evidence is not clearly inadmissible for

any purpose, courts will deny or defer ruling on the motion in limine and decide issues of foundation, relevance, and prejudice in context at trial"). The Court can also mitigate any potential juror confusion at trial by limiting instruction. See Ebanks v. Great Lakes Dredge & Dock Co., 688 F.2d 716, 723 (11th Cir. 1982) (holding that limiting instruction can cure deficiencies in Rule 403 determinations); Gilson v. Indaglo, Inc., No. 6:12-CV-1423-ORL-I8GJK, 2013 WL 12394255, at *4 (M.D. Fla. Dec. 19, 2013) (stating that the defendant's "concerns under Rule 403 may be adequately addressed by appropriate, limiting instructions given to the jury at trial"). Moreover, there is a presumption that jurors can be relied upon to follow curative directives at the Court's instruction. See Samia v. United States, 599 U.S. 635, 646 (2023) ("[limiting instruction's] historical evidentiary practice is in accord with the law's broader assumption that jurors can be relied upon to follow the trial judge's instructions").

**C. Character Evidence**

Lastly, Plaintiff contends that Federal Rules of Evidence 608 and 404(a) preclude evidence of the circumstances of Diaz's resignation because it pertains to her character. Diaz Mot. at 3–4. Plaintiff argues that character evidence is permitted under Rule 609 to attack a "witness's character for truthfulness through prior felony convictions," and that there are no underlying felony convictions at issue here. Id. at 3. Plaintiff also argues that the circumstances surrounding Diaz's resignation constitute improper character and propensity evidence under Rule 404. Id. at 4–5.

The use of an individual's character or character trait is prohibited if it is used to show that in a particular situation the individual acted in accordance with that trait. Fed R. Evid. 404(a)(1). Moreover, evidence of a crime, wrong, or act is inadmissible to prove an individual's character to show that in a particular situation the individual acted according to that character. Fed. R. Evid. 404(b)(1). However, character evidence is permitted in certain contexts, including: (1) to impeach a witness under Rules 607, 608, and 609; and (2) to show an individual has "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." Fed. R. Evid. 404(a)(3), 404(b)(2). Rule 608(b) generally prohibits introduction of extrinsic evidence detailing specific incidents of conduct to attack or support a witness's credibility. See Fed. R. Evid. 608(b). The proscription contains exceptions subject to the trial court's discretion, including use of the extrinsic evidence during cross-examination if the specific acts in the proffered evidence are probative of the witness's credibility. Fed. R. Evid. 608(b)(1); see United States v. Burnette, 65 F.4th 591, 606–07 (11th Cir. 2023) (stating extrinsic impeachment evidence is permissible under Rule 608(b) to show bias against a party and thus a lack of credibility). Admission under an exception still requires a finding that the probative value is not substantially outweighed by the dangers contemplated in Rule 403. See Bryant v. Mascara, 800 F. App'x 881, 885 (11th Cir. 2020).

Here, Crowley is permitted to introduce reputation or character evidence to attempt to impeach the veracity of Diaz's character for truthfulness if it is shown that she had a reputation for untruthfulness in her dealings at Crowley or elsewhere. See

Fed. R. Evid. 607, 608(a); United States v. Thomas, 676 F.2d 531, 537 (11th Cir. 1982) ("Opinion and reputation evidence used for impeachment . . . 'may refer only to character for truthfulness or untruthfulness'" (quoting Fed R. Evid. 608(a))). Crowley can also offer specific acts to show bias against Defendants and impeach Diaz's credibility at trial on cross examination, including the circumstances of her resignation from Crowley, provided there is sufficient basis under Rule 608(b). See Abel, 469 U.S. at 56 (allowing extrinsic evidence demonstrating bias as a permissible means to undermine a witness's credibility under Rule 608(b)); Burnette, 65 F.4th at 608 (same).

Moreover, Crowley can introduce Diaz's character under Rule 404(b) to show any "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" to support a claim for her bias. Fed. R. Evid. 404(b)(2). The circumstances surrounding Diaz's resignation, including unethical dealings with vendors and interactions with LaMoureaux, could elucidate motive or intent for bias against Defendants that could implicate Diaz's credibility. Accordingly, Plaintiff's motion to exclude the circumstances of Diaz's resignation is denied, but she may renew any objection to the relevant evidence at trial for evaluation in its proper context, provided the objection has more substantial basis.

## III. Motion to Exclude Evidence of Plaintiff Training for a Press Conference

Plaintiff moves to exclude evidence that she "trained for a press conference in order to get Crowley's attention" under Federal Rules of Evidence 401 and 403. Training Mot. at 1–3. Plaintiff argues that Crowley may attempt to introduce text

messages between Diaz and Plaintiff that illustrate Plaintiff trained for press conferences in preparation of litigation with a media contact in India. Id. at 1. Plaintiff argues that the testimony is not relevant and would result in substantial unfair prejudice, confuse and mislead the jury, and deprive her of a right to a fair trial. Id. at 1–3. Crowley contends evidence that Plaintiff sought media training is relevant to credibility determinations by the jury for impeachment purposes under Rules 401 and 607, and that any unfair prejudice is not substantially outweighed by the probative value of the evidence. Training Resp. at 2–4. For the following reasons, Plaintiff's motion is denied.

Evidence is relevant if it has any tendency to make a fact of consequence more or less probable. Fed. R. Evid. 401. Evidence that is relevant may nonetheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. "Any party, including the party that called the witness, may attack the witness's credibility." Fed. R. Evid. 607.

Here, exclusion of evidence that Plaintiff trained for press conferences is improper. In its response, Crowley claims the evidence demonstrates Plaintiff's motivations underlying her lawsuit that can be used to impeach her credibility at trial. Training Resp. at 2–3. In contrast, Plaintiff fails to specify how the anticipated testimony is irrelevant or why she will suffer substantial unfair prejudice. See id. at 1–3. Courts have found exclusion of similar evidence of a fact witness's preparation for trial is admissible unless certain privileges apply. See Duhn Oil Tool, Inc. v.

Cameron Int'l Corp., No. 1:05-CV-01411 OWW, 2011 WL 121547, at *1 (E.D. Cal. Jan. 13, 2011) ("Fact witnesses may be questioned regarding the nature of their preparation for trial or for deposition testimony, unless attorney-client privilege applies"); DataTreasury Corp. v. Wells Fargo & Co., No. 2:06-CV-72 DF, 2010 WL 11538713, at *23 (E.D. Tex. Feb. 26, 2010) (denying the defendant's motion in limine to exclude evidence fact witness preparation for trial and deposition because the Rule 403 claims were insufficient). Without additional support for why the text messages between Diaz and Plaintiff are irrelevant or substantially prejudicial, confusing, or misleading, the evidence should not be excluded. See Acevedo v. NCL (Bah.) Ltd., 317 F. Supp. 3d 1188, 1192 (S.D. Fla. 2017) ("Evidence is excluded upon a motion in limine only if the evidence is clearly inadmissible for any purpose") (internal quotations and citations omitted); Harris v. Wingo, No. 2:18-CV-17-FTM-29MRM, 2021 WL 5028201, at *1 (M.D. Fla. Oct. 29, 2021), aff'd, No. 22-10905, 2023 WL 3221640 (11th Cir. May 3, 2023) ("A denial of a motion in limine is not a ruling which affirmatively admits any particular evidence"); Barfield, 2017 WL 662012, at *3 (stating that a court may deny or defer ruling on any of the issues to see the evidence in context at trial). Accordingly, Plaintiff's motion to exclude evidence of her training for a press conference is denied.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's motion in limine to exclude evidence of termination agreements, see ECF No. 137, is granted; and it is further

**ORDERED** that Plaintiff's motion in limine to exclude the circumstances surrounding Diaz's resignation from Crowley, see ECF No. 138, is denied; and it is further

**ORDERED** that Plaintiff's motion in limine to exclude evidence of her training for a press conference, see ECF No. 139, is denied.

/s/ Claire R. Kelly
Claire R. Kelly, Judge*

Dated: February 1, 2024
New York, New York

* Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.